## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FLO TV INCORPORATED; MOBITV, INC.; U.S. CELLULAR CORPORATION; LG ELECTRONICS MOBILECOMM USA, INC.; MOTOROLA MOBILITY, INC.; SAMSUNG TELECOMMUNICATIONS AMERICA LLC; SPRINT NEXTEL CORPORATION; RESEARCH IN MOTION CORPORATION; HTC AMERICA INC.; PALM, INC; KYOCERA COMMUNICATIONS INC.; WIREFLY, CORP.; LETSTALK.COM, INC.; QUALCOMM, INC.; GOTV NETWORKS, INC.;  SPB SOFTWARE; and VERIZON COMMUNICATIONS INC. D/B/A VERIZON WIRELESS,<br><br>Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 1:10-CV-00812<br><br>JURY TRIAL REQUESTED |

## PLAINTIFF'S REPLY BRIEF ON MOTION TO DISQUALIFY
## LATHAM & WATKINS LLP AS COUNSEL FOR DEFENDANT MOBITV, INC.

*Of Counsel*:

Jeffery R. Johnson
Cabrach J. Connor
Daniel R. Scardino
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel: (512) 474-2449
jjohnson@reedscardino.com
cconnor@reedscardino.com
dscardino@reedscardino.com

*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel:  (302) 622-4200
Fax:  (302) 656-8920

**ATTORNEYS FOR PLAINTIFF**
**EON CORP. IP HOLDINGS, LLC**

Date:  October 24, 2011

## TABLE OF CONTENTS

**Page(s)**

I.   Latham's Former Representation of EON and Its Current Representation
of MobiTV Are "Substantially Related."..............................................................................1

II.  EON Satisfies the "Former Client" Standard of Rule 1.9....................................................7

III. EON Did Not Waive Latham's Conflict.............................................................................8

IV.  Disqualification Is the Only Appropriate Remedy. ............................................................9

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                    **PAGES**

*Agsaver LLC v. FMC Corp.,*
    No. 11-997, 2011 WL 2274178 (E.D. Pa. June 9, 2011)............................................................5

*Amgen, Inc. v. Elanex Pharms., Inc.,*
    160 F.R.D. 134 (W.D. Wash. 1994) .......................................................................................10

*Avocent Redmond Corp. v. Rose Elecs.,*
    491 F.Supp.2d 1000 (W.D. Wash. 2007)..................................................................................8

*Baxter Diagnostics, Inc. v. AVL Scientific Corp.,*
    798 F.Supp. 612 (C.D. Cal. 1992) ...........................................................................................8

*Boston Scientific Corp. v. Johnson & Johnson Inc.,*
    647 F. Supp. 2d 369 (D. Del. 2009)........................................................................................10

*Cardona v. General Motors Corp.,*
    942 F. Supp. 968 (D.N.J. 1996) ...............................................................................................4

*Commonwealth Ins. Co. v. Graphix Hot Line, Inc.,*
    808 F. Supp. 1200 (E.D. Pa. 1992) ..........................................................................................7

*Conley v. Chaffinch,*
    431 F. Supp. 2d 494 (D. Del. 2006)......................................................................................2, 8

*Decora Inc. v. DW Wallcovering, Inc.,*
    899 F.Supp. 132 (S.D.N.Y. 1995) ............................................................................................4

*Emle Industries, Inc. v. Patantex, Inc.,*
    478 F.2d 562 (2d Cir. 1973).....................................................................................................8

*Fernandez v. St. Francis Hospital, Inc.,*
    No. 09C-03-008-JRS, 2009 WL 2393713 (Del. Super. Aug. 3, 2009).....................................4

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
    318 F.Supp. 1116 (S.D.N.Y. 1970) ..........................................................................................5

*Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.,*
    721 F.Supp. 534 (S.D.N.Y. 1989) ............................................................................................8

*In re Corn Derivatives Antitrust Litig.,*
    748 F.2d 157 (3d Cir. 1984)......................................................................................................1

*In re Meridian Automotive Sys.-Composite Operations, Inc.,*
    340 B.R. 740 (Bankr. D. Del. 2006) .........................................................................................9

*INA Underwriters v. Nalibotsky,*
  594 F. Supp. 1199 (E.D. Pa. 1984) ............................................................................................2

*Integrated Health Svcs. v. THCI, Company LLC,*
  327 B.R. 200 (D. Del. 2005)......................................................................................................4

*Intellectual Ventures I LLC v. Checkpoint Software Technologies,*
  No. 10-1067-LPS, 2011 WL 2692968 (D. Del. June 22, 2011) .........................................1, 4, 5

*Kabi Pharmacia AB v. Alcon Surgical, Inc.*,
  803 F. Supp. 957 (D. Del. 1992)............................................................................................1, 6

*Madukwe v. Del. State Univ.*,
  552 F. Supp. 2d 452 (D. Del. 2008)..............................................................................5, 6, 7, 10

*McNeill-PPC, Inc. v. L. Perrigo Co.*
  337 F.3d 1362 (Fed. Cir. 2003)..................................................................................................6

*Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington,*
  652 F. Supp. 1281 (D. Del. 1987)........................................................................................1, 2, 4

*Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*,
  491 F.Supp.2d 510 (D.Del. 2007)..........................................................................................7, 10

*Webb v. E.I. Du Pont deNemours & Co.*,
  811 F.Supp. 158 (D.Del. 1992)..................................................................................................6

**FEDERAL STATUTES**

35 U.S.C. § 102..................................................................................................................................7

## I.     Latham's Former Representation of EON and Its Current Representation of MobiTV Are "Substantially Related."

In its Response, Latham suggests that the appropriate inquiry for determining whether its prior representation of EON and its current representation of MobiTV are "substantially related" is whether it previously advised EON on "patent prosecution matters" or "validity, infringement, or non-infringement of any patents, including the '757 Patent." (Doc. No. 185, pg. 7; Exs. 1, 3) Latham then provides fourteen near-identical declarations from its lawyers who remain at the firm and formerly represented EON that they provided no such legal services. From this, Latham concludes that the two representations are not "substantially related," making disqualification improper under Model Rule 1.9. But Latham is wrong.

This Court has consistently (and recently) rejected the type of narrow interpretation of Rule 1.9 that Latham proposes. *Intellectual Ventures I LLC v. Checkpoint Software Technologies*, No. 10-1067-LPS, 2011 WL 2692968 at *8, 9 (D. Del. June 22, 2011) (finding "too narrow" defendants' contention that two representations were not substantially related because, in the first, no advice was given regarding patent infringement). Instead, when determining the existence of a "substantial relationship," Delaware courts consider the nature and scope of the former and current representations and whether during the prior representation the client might have disclosed confidences to his attorney that could be relevant to the subsequent action and potentially detrimental to the former client. *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987).

Since the purpose of Rule 1.9 is to prevent "even the potential that a former client's confidences and secrets may be used against him," *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984), Delaware courts have disqualified attorneys even for "failing to avoid [ ] the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F.

1

Supp. 957, 960 (D. Del. 1992). Moreover, any doubts regarding the existence of an ethical violation should be resolved in favor of disqualification. *INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199, 1207 (E.D. Pa. 1984). Applying the correct disqualification standard, it is clear that Latham's representation of EON and its representation of MobiTV are "substantially related."

In making this determination, the Court first must examine the nature and scope of Latham's prior representation of EON. *Satellite Fin. Planning*, 652 F. Supp. at 1283. In doing so, the Court "should focus upon the reasons for the retention of counsel and the tasks which the attorney was employed to perform." *Conley v. Chaffinch*, 431 F. Supp. 2d 494, 497 (D. Del. 2006). Here, for nearly a decade, thirty-four Latham lawyers represented EON in virtually all aspects of its business and in its efforts to protect, expand, and commercialize its interactive video technologies. In performing this work, Latham's lawyers had unfettered access to EON's employees, engineers, and to Fernando Morales, the inventor of the interactive video technologies that are the subject of numerous EON patents, including the '757 Patent.[1]

By Latham's own admission, almost half of these lawyers (fourteen) are still at the firm. (Doc. No. 185, pg. 5) The nature and scope of these attorneys' work for EON was identical to the work of the others who are no longer at Latham. Indeed, in their affidavits, none of the fourteen deny that they worked on any of the above-identified matters, that they had intimate knowledge of EON's interactive video technologies or its business, generally, or that they had full access to EON's employees and engineers. The exhibits to the Motion (Doc. No. 163) demonstrate that these current Latham lawyers represented EON in and had extensive knowledge of at least the following matters: valuations of EON's patents, including key considerations (J.

---

[1] None of the fourteen Latham lawyers who submitted affidavits deny this fact. Latham, though, in its Response, claims that its lawyers communicated with Mr. Morales only in his role as CEO of EON, not as inventor of EON's interactive video technologies. (Doc. No. 185, pgs. 8-9) Latham offers no evidence to support this statement, though, and with good reason—the statement is false. Mr. Morales specifically rebuts it and describes in detail his interactions with Latham attorneys in his role as inventor. *See* Ex. A, ¶¶ 3-7.

Sullivan; Ex. A, LATHAM000761-763 and LATHAM000764); sale of Mr. Morales' interactive video patent rights (J. Sullivan; Ex. A, LATHAM000788-792); creation of intellectual property licensing agreements, including determining the most appropriate method for calculating royalty payments (J. Sullivan, Ex. A, LATHAM00798-800); review of licensing agreements drafted by EON's patent prosecutor, Larry Brown (J. Sullivan, Ex. A, LATHAM000794-797); review of patent sale documents created by Mr. Brown (J. Sullivan, Ex. A, JW0037996-38000); assignment of EON's patent rights, to be coordinated with Mr. Brown (J. Janka, J. Sullivan, Ex. A, LATHAM000728-31 and LATHAM000603-06); the transfer of EON's patent rights (J. Sullivan, Ex. A, JW0070459-69); comparison of EON's interactive video technologies to those of its competitors (J. Barker, Ex. A, LATHAM001835-37); matters before the FCC in which Latham discussed in depth EON's interactive video technologies and business plan (R. Grochowski, Ex. A, LATHAM001833-34 and LATHAM001868-69); analysis of commercialization of EON's interactive video technologies (P. Winik, Ex. A, JW0055082-83); comments describing EON's technology and its novelty (K. Boyle, Ex. A, JW0046638); auction of FCC spectrum (E. Shapiro, R. Grochowski, Ex. A, JW0039521); FCC spectrum access agreements (R. Grochowski, Ex. A, LATHAM001953-54); licenses for testing EON's interactive video technologies (R. Grochowski, Ex. A, LATHAM001828); assignment of EON's patents, including the '757 patent (J. Janka, Ex. A, LATHAM000977-89); production of materials in the matter of *FTC v. Digital Interactive Associates*, which included videos regarding EON's interactive video technologies and its business (P. Winik, Ex. A, LATHAM000972-73); securing additional financing for the development of EON's interactive video technologies (J. Sullivan, Ex. A, LATHAM000746-50); securing multiple FCC spectrum licenses (R. Grochowski, Ex. A, LATHAM000050-59); competitive bidding for FCC spectrum (R. Grochowski, Doc. No. 163,

Ex. C); and intervention in lawsuits to protect EON's interactive video technologies (R. Grochowski, Doc. No. 163, Ex. F).[2] Thus, there can be no dispute that Latham's representation of EON was both broad in nature and extensive in scope and duration. *See, e.g., Checkpoint Software*, 2011 WL 2692968 at \*10 (disqualifying law firm whose "broad" and "extensive" representation of former client included twenty-one lawyers and six years).

The Court must next look to the nature and scope of the current litigation. *Satellite Fin. Planning*, 652 F. Supp. at 1283. Here, EON alleges infringement of the '757 Patent, which was filed in 1991 at the height of Latham's representation of EON and which embodies (and incorporates by reference other EON patents that embody) aspects of EON's interactive video technologies, the very matter that Latham's nearly decade-long legal representation concerned.

Finally, the Court must determine whether Latham might have acquired confidential information during its extensive prior representation of EON that may be relevant and harmful to EON in the current lawsuit. *See Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996); *see also* Rule 1.9(a) (focusing on the exchange of "confidential factual information as would normally have been obtained in the prior representation"). Consequently, according to the Rule itself, the Court "need not, nor should it, inquire into whether an attorney actually acquired confidential information during the prior representation related to the current representation." *Integrated Health Svcs. v. THCI, Company LLC*, 327 B.R. 200, 206 (D. Del. 2005).[3]

---

[2]   EON again offers to provide the Court for *in camera* review these specifically-referenced privileged documents, in addition to any other privileged documents the Court chooses to examine. This type of review is a proper way to determine a motion to disqualify. *See, e.g., Decora Inc. v. DW Wallcovering, Inc.*, 899 F.Supp. 132, 137-38 (S.D.N.Y. 1995) (finding court's *in camera* review of privileged documents proper to determine disqualification).

[3]   In its Response, Latham complains that Exhibits B-F to the Motion are not confidential and thus cannot support a motion to disqualify. (Doc. No. 185, pg. 8) But Latham misunderstands both EON's burden and its purpose in attaching those documents as exhibits. To support a motion to disqualify, EON is not required actually to produce the confidential information that was shared. *See Fernandez v. St. Francis Hospital, Inc.*,

Here, the only reasonable conclusion one can draw is that the similarity in the two representations is enough to raise the common sense inference that EON communicated to Latham confidential information with respect to its interactive video technologies, its business plan and attempts to commercialize and protect those technologies, and the value that it assigned to the technologies, among other matters, each of which is relevant to the present case. *See Checkpoint Software*, 2011 WL 2692968 at *11; *Madukwe v. Del. State Univ.*, 552 F. Supp. 2d 452, 458 (D. Del. 2008) (finding the length and breadth of the prior representation especially compelling to infer that counsel possessed confidential information).

More specifically, and merely by way of example, it is undisputed that Latham performed extensive work for EON regarding the valuation, licensing, and assignment of its intellectual property (most particularly its patents), as detailed above. In performing this work, common sense dictates that EON may have shared with Latham confidential information regarding such things as the factors that were important to it in valuing its patents, its policies on maintaining its patent monopoly, the circumstances under which it would license or assign its patents, if any, the royalty rate it would have agreed on, and the scope of licenses to which it would have been amenable. *See Agsaver LLC v. FMC Corp.*, No. 11-997, 2011 WL 2274178 at *4 (E.D. Pa. June 9, 2011) (looking to what an attorney and client ought to have talked about during the course of a representation to inform the issue of what confidences the client might have shared.). Each of these matters is relevant, at the very least, to the issue of damages here. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970) (factors 3, 4, and 15).

---

No. 09C-03-008-JRS, 2009 WL 2393713 at *3 (Del. Super. Aug. 3, 2009) ("moving party need not reveal the specific facts communicated in the prior representation that will be relevant to the present case"). EON attached Exhibits B-F for the same reason it attached Exhibit A (which communications are, in fact, confidential)—to assist the Court in determining the scope and nature of Latham's prior representation of EON so that it could determine, using common sense, whether confidential information might have been communicated that may be harmful to EON in the current case.

In addition, in representing EON regarding nearly all aspects of its interactive video technologies for almost a decade, including EON's FCC petition for an allocation of spectrum upon which to operate its interactive video technologies, it is reasonable to infer that Latham acquired confidential information relating to those technologies that would be relevant to issues such as infringement and validity of the patents embodying those technologies and that may place EON at a disadvantage in the litigation. *See, e.g., Madukwe*, 552 F.Supp.2d at 462 (multiple consultations regarding employee handbook gave firm understanding of employer's interpretation of handbook that placed employer at disadvantage in subsequent litigation); *Webb v. E.I. Du Pont deNemours & Co.*, 811 F.Supp. 158 (D. Del. 1992) ("[a]dverse use of confidential information is not limited to disclosure. It includes knowing what to ask for in discovery, which witnesses to seek to depose, what questions to ask them, what lines of attack to abandon and what lines to pursue, what settlements to accept and what offers to reject, and innumerable other uses").

Disqualification will also further another key purpose of Rule 1.9, namely, the "maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice[.]" *Kabi Pharmacia AB*, 803 F.Supp. at 960. Latham formerly represented EON in its attempt to secure "pioneer's preference" status from the FCC.[4] (Doc. No. 163, Ex. B, pgs. 32-35) In pursuing pioneer's preference status for EON, Latham repeatedly lauded EON's interactive video technology, calling it a "new service and a new technology"

---

[4]    The FCC instituted its pioneer's preference rules in 1991 to "reduce the risk and uncertainty innovating parties face in [the FCC's] existing rulemaking and licensing procedures, and therefore to encourage the development of new services and new technologies." *See* Establishment of Procedures to Provide a Preference to Applicants Proposing an Allocation for New Services, 6 F.C.C.R. 3488, 3492 (1991). Under these rules, an applicant that develops an "innovative proposal" that leads to a novel service is guaranteed a license in the new service. *Id.* at 3492. The FCC's inquiry regarding whether to grant a preference is thus akin to the PTO's determination whether to grant a patent; that is, both hinge on the concept of novelty. *See In re Bilski*, 545 F.3d 943, 1011 (Fed. Cir. 2008) (focus of patentability is novelty). And the purpose of each is also the same. *See McNeill-PPC, Inc. v. L. Perrigo Co.* 337 F.3d 1362, 1367 (Fed. Cir. 2003) (purpose of patent laws to reward innovation).

(Doc. No. 163, Ex. B, pg. 33) and praising EON as an "innovating party" (Id.), a "pioneer" (*Id.* at Ex. A, JW0055334, 36), and its "original proponent" (*Id.* at JW0055370, 73). Now, representing a party adverse to EON in this litigation, Latham has abruptly reversed course and takes the opposite position, claiming that the '757 Patent, which embodies aspects of EON's "new" and "innovative" technology, is invalid and never should have been granted under 35 U.S.C. §102 (predicating patentability on, inter alia, the novelty of the invention). (Doc. No. 120, pg. 18, ¶¶ 12-15) It is precisely this type of "switching sides" that Rule 1.9 is designed to prevent. *Madukwe*, 552 F. Supp. 2d at 460.

## II.    EON Satisfies the "Former Client" Standard of Rule 1.9.

Latham also attempts to avoid its responsibilities to its former client by arguing that it represented TV Answer, Inc. (which then became EON Corporation), not EON Corp. IP Holdings, LLC, the Plaintiff in this action, and that Rule 1.9 therefore does not apply. This fails to acknowledge the simple reality that EON is a wholly owned subsidiary of EON Corp. and was assigned all of EON Corp.'s rights to the '757 Patent, facts that Latham does not dispute. (Doc. No. 81, ¶ 27) It also ignores the fact that allowing Latham to use EON Corp.'s confidential information to the detriment of its wholly owned subsidiary, EON, would also necessarily be harmful to EON Corp. This result would, at best, run counter to the spirit of the Rule and, at worst, entirely defeat its purpose of protecting a former client from having its confidential information used against it. *See Commonwealth Ins. Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1204 (E.D. Pa. 1992).

Recognizing this principle, this Court and others have extended the attorney-client relationship to close affiliates of a former client where appropriate to achieve the objectives of Rule 1.9. *See, e.g., Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F.Supp.2d 510, 514 (D. Del. 2007) (placing little weight on party distinctions for purposes of disqualification given

"familial and historical" ties between parent and subsidiary); *Emle Industries, Inc. v. Patantex, Inc.*, 478 F.2d 562, 570-71 (2d Cir. 1973) (affirming disqualification of attorney who had previously represented part owner of corporate defendant); *Avocent Redmond Corp. v. Rose Elecs.*, 491 F.Supp.2d 1000 (W.D. Wash. 2007) (disqualifying attorney from representing sister corporation of former client); *Baxter Diagnostics, Inc. v. AVL Scientific Corp.*, 798 F.Supp. 612 (C.D. Cal. 1992) (rejecting the argument that the relationship between a parent corporation and its subsidiary was insufficient on a disqualification motion for the subsidiary to be considered the former client of the attorney that previously represented the parent corporation); *Hartford Accident and Indemnity Co. v. RJR Nabisco, Inc.*, 721 F.Supp. 534, 539-40 (S.D.N.Y. 1989) (finding on a motion to disqualify that plaintiff's law firm that represented defendant corporation's subsidiary in prior representation would be deemed to have previously represented the defendant parent).

## III. EON Did Not Waive Latham's Conflict.

Latham next argues that EON waived its right to seek disqualification because of delay. Latham provides a footnote on page seventeen of its Response in an attempt to create the appearance that it is inextricably tied to MobiTV's defense such that disqualification is impossible at this point. But a closer look at that footnote reveals otherwise. For example, Latham cites such ministerial things as *pro hac vice* motions as one of several events weighing against disqualification. Contrary to Latham's assertion, this case is still in its infancy, and little has happened other than the resolution of Defendants' joint motions to dismiss.[5]

---

[5]    Latham's reliance on *Conley,* 431 F. Supp. 2d at 500, is misplaced.   In *Conley*, the movant sought disqualification after the parties had engaged in extensive discovery, only six months before trial, and the court decided the motion less than one month before trial.   *Id.*   The court was primarily concerned that disqualification on the eve of trial would have resulted in significant prejudice to the non-movant.   *Id.*   That concern does not exist here.

Latham fails to mention that EON's attorneys have been working behind the scenes to resolve this issue without bringing this motion before the Court. (Doc. No. 163, Ex. G)  Because motions to disqualify are generally disfavored, EON felt it necessary to give Latham every chance to withdraw without court intervention.  To that end, EON filed its motion to disqualify six days after the Court entered the Scheduling Order, when it became obvious that Latham had no intention of withdrawing as this case moves forward to the substantive discovery phase.[6]  Given the early nature of this case, MobiTV can easily secure new counsel that could be brought up to speed in a matter of a few days, if not hours.  This minor inconvenience to MobiTV is insignificant to the harm that will result by forcing EON to face its former law firm in this case.[7]

## IV.    Disqualification Is the Only Appropriate Remedy.

Finally, Latham contends that it can avoid the effects of Rule 1.10(a) by instituting an ethical wall around the current Latham attorneys that formerly represented EON.  But a plain reading of Rule 1.10(a) reveals that ethical walls are appropriate only where the conflict arises from a lateral attorney's representation of a former client at the attorney's *prior firm*.  Rules of Prof'l Conduct R. 1.10.  Screening mechanisms are never appropriate where, as here, attorneys from the *same firm* represented a former client in a substantially related, materially adverse matter.  The language of Rule 1.10(a) is clear:

---

[6]    Latham also argues that EON committed waiver by failing to seek disqualification of Latham in a prior patent litigation suit where Latham represented USA Mobility, Inc.  (Doc. No. 185, pg. 16)  Contrary to Latham's suggestion, EON settled its claims against USA Mobility while EON's attorneys were discussing voluntary withdrawal with Latham, and well before Latham became involved in substantive aspects related to USA Mobility's defense.  In the absence of settlement, EON was ready and willing to seek disqualification in that case had it appeared that Latham intended to continue representing USA Mobility's interests as the case progressed into the substantive discovery phase.  *See In re Meridian Automotive Sys.-Composite Operations, Inc.*, 340 B.R. 740, 750-51 (Bankr. D. Del. 2006) (eight-month delay did not result in waiver where movant's counsel worked diligently to resolve the issue and filed the motion only after those efforts failed).

[7]    Latham also suggests that disqualification would be prejudicial to MobiTV because it does not currently have other patent litigation counsel in place.  Latham, however, fails to mention that MobiTV is also represented in this case by Brian Farnan, a seasoned patent litigator with a wide range of experience in Delaware patent cases.  *See* http://www.farnanlaw.com/Brian-Farnan-Bio.html.  Certainly, Mr. Farnan's presence will allow MobiTV to secure new national counsel and bring them up to speed quickly and efficiently, without any delay in the proceedings.

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless. . .
>> (2) the prohibition is based upon Rule 1.9(a) or (b) *and arises out of the disqualified lawyer's association with a prior firm,* and
>>> (i) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; . . .

Model Rule of Prof'l Conduct R. 1.10 (emphasis added). Moreover, the drafters of Rule 1.10 added a special amendment in August of 2009 with the emphasized language above in order to clarify that screening mechanisms are never appropriate when the firm itself switches sides:

> To ensure that the Model Rule unambiguously establishes that screening is permitted only in situations where a lawyer moves from one firm to another, the Standing Committee on Ethics proposes the clarifying language contained in the attached Recommendation. . . . it is critical that new Rule 1.10 make it abundantly clear that it only applies to the laterally moving lawyer.

ABA Standing Comm. on Ethics and Prof'l Responsibility, Report 109 (Aug. 2009) (attached hereto as Ex. B).[8]

The application of Rule 1.10 is clear in this case. Fourteen current Latham attorneys formerly represented EON in substantially related matters. Those attorneys are not lateral attorneys that represented EON at a different firm before joining Latham. As a result, Rule 1.10 imputes their conflict of interest to the *entire* firm, and the screening mechanism contemplated by Rule 1.10(a)(2), and instituted by Latham, is unavailable and unavailing as a remedy to the conflict.[9] For these reasons, EON again respectfully requests that the Court grant the Motion and disqualify Latham from representing defendant MobiTV, Inc. in this action.

---

[8]    *See also Madukwe*, 552 F. Supp. 2d at 463 (applying Rule 1.10(a) to disqualify an entire firm based on former, substantially related representation by several attorneys from the firm); *see also Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1267 (7th Cir. 1983) (ethical walls are inapplicable where law firm itself switches sides); *Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134 (W.D. Wash. 1994) (same).

[9]    Latham cites *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 647 F. Supp. 2d 369, 373 (D. Del. 2009) and *Talecris*, 491 F. Supp. 2d at 513 for the general proposition that disqualification is never automatic because a court should consider the totality of circumstances. *Boston Scientific* and *Talecris*, however, did not involve substantially related representations or the application of Rule 1.10 and do not stand for the proposition that the Court should disregard the plain language and meaning of the Rules when deciding a motion to disqualify.

10

**FOX ROTHSCHILD LLP**

*/s/ Gregory B. Williams*

Gregory B. Williams (#4195)
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel: (302) 622-4200
Fax: (302) 656-8920

**ATTORNEYS FOR PLAINTIFF**
**EON CORP. IP HOLDINGS, LLC**

*Of Counsel:*

Jeffery R. Johnson
Cabrach J. Connor
Daniel R. Scardino
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel: (512) 474-2449
jjohnson@reedscardino.com
cconnor@reedscardino.com
dscardino@reedscardino.com

Date: October 24, 2011

11

## CERTIFICATE OF SERVICE

I herby certify that, on October 24, 2011, true and correct copies of Plaintiff's Reply Brief on Motion to Disqualify Latham & Watkins were filed with the Clerk of the Court via CM/ECF, which will send electronic notification of such filing to all counsel of record.

*/s/ Gregory B. Williams*

| *COUNSEL FOR FLO TV INCORPORATED* | **David Ellis Moore**<br>**Richard L. Horwitz**<br>POTTER ANDERSON & CORROON, LLP<br>1313 N. Market St., Hercules Plaza, 6th Flr.<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>dmoore@potteranderson.com<br> rhorwitz@potteranderson.com<br><br>**Henry B. Gutman**<br>**Victor Cole**<br>**Courtney Welshimer**<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>hgutman@stblaw.com<br>vcole@stblaw.com<br>cwelshimer@stblaw.com<br><br>**Harrison J. Frahn**<br>**Jeffrey E. Ostrow**<br>**Natasa Pajic**<br>**Sara G. Wilcox**<br>**Christopher J. Judge**<br>SIMPSON THACHER & BARTLETT LLP<br>2550 Hanover Street<br>Palo Alto, CA 94063<br>hfrahn@stblaw.com<br>jostrow@stblaw.com<br>npajic@stblaw.com<br>swilcox@stblaw.com<br>cjudge@stblaw.com |
|---|---|

| | |
|---|---|
| ***COUNSEL FOR MOBITV INC.*** | **Brian E. Farnan**      **(Lead Attorney)**<br>FARNAN LLP<br>919 North Market Street<br>12th Floor<br>Wilmington, DE 19801<br>bfarnan@farnanlaw.com<br><br>**Bob Steinberg**<br>**Ryan Hatch**<br>LATHAM & WATKINS LLP<br>355 South Grand Avenue<br>Los Angeles, CA 90071-1560<br>bob.steinberg@lw.com<br>ryan.hatch@lw.com |
| ***COUNSEL FOR U.S. CELLULAR CORPORATION*** | **Steven J. Fineman**      **(Lead Attorney)**<br>RICHARDS, LAYTON & FINGER, PA<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE 19801<br>fineman@rlf.com<br><br>**Richard J. O'Brien**<br>**Robert Leighton**<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, Illinois 60603<br>rleighton@sidley.com<br>robrien@sidley.com |
| ***COUNSEL FOR LG ELECTRONICS MOBILE COMM USA INC.*** | **Thomas Lee Halkowski**      **(Lead Attorney)**<br>FISH & RICHARDSON, P.C.<br>222 Delaware Avenue, 17th Floor<br>P.O. Box 1114<br>Wilmington, DE 19899-1114<br>halkowski@fr.com |
| ***COUNSEL FOR MOTOROLA MOBILITY INC.*** | **Jack B. Blumenfeld**      **(Lead Attorney)**<br>MORRIS, NICHOLS, ARSHT & TUNNELL<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>jblumenfeld@mnat.com |

| | |
|---|---|
| | **William H. Boice**<br>**Wilson L. White**<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1100 Peachtree St., NE, Ste. 2800<br>Atlanta, GA 30309<br>bboice@kilpatricktownsend.com<br>wwhite@kilpatricktownsend.com<br><br>**Steven D. Moore**<br>**Bret T. Winterle**<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>100 1 West Fourth Street<br>Winston-Salem, NC 27101<br>stmoore@kilpatricktownsend.com<br>bwinterle@kilpatricktownsend.com |
| ***COUNSEL FOR SAMSUNG***<br>***TELECOMMUNICATIONS AMERICA LLC*** | **Monte Terrell Squire**<br>**Adam Wyatt Poff**<br>YOUNG, CONAWAY, STARGATT &<br>TAYLOR<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>P.O. Box 391<br>Wilmington, DE 19899-0391<br>msquire@ycst.com<br>apoff@ycst.com<br><br>**Aaron Y. Huang**<br>**Jared Bobrow**<br>WEIL, GOTSHAL & MANGES LLP<br>201 Redwood Shores Parkway<br>Redwood Shores, CA 94065<br>aaron.huang@weilcom<br>jared.bobrow@weil.com<br><br>**Amber Rovner**<br>WEIL, GOTSHAL & MANGES LLP<br>700 Louisiana Street, Suite 1600<br>Houston, TX 77002-2784<br>amber.rovner@weil.com |

| *COUNSEL FOR SPRINT NEXTEL CORPORATION* | **Karen Jacobs Louden**<br>**Richard John Bauer**<br>MORRIS, NICHOLS, ARSHT & TUNNELL<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>kjlefiling@mnat.com<br>rbauer@mnat.com |
|---|---|
| *COUNSEL FOR RESEARCH IN MOTION CORPORATION.* | **Richard K. Herrmann**        **(Lead Attorney)**<br>**Mary B. Matterer**<br>MORRIS JAMES LLP<br>500 Delaware Avenue, Suite 1500<br>P.O. Box 2306<br>Wilmington, DE 19899-2306<br>rherrmann@morrisjames.com<br><br>**David T. Pritikin**<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, IL 60603<br>dpritikin@sidley.com<br><br>**Brian R. Nester**<br>SIDLEY AUSTIN LLP<br>1501 K Street, N.W.<br>Washington, D.C. 20005<br>bnester@sidley.com<br><br>**Philip W. Woo**<br>SIDLEY AUSTIN LLP<br>555 California Street<br>San Francisco, CA 94104<br>pwoo@sidley.com<br><br>**Paul D. Tripodi, II**<br>**Spencer W. Ririe**<br>SIDLEY AUSTIN LLP<br>555 West Fifth Street<br>Los Angeles, CA 90013<br>ptripodi@sidley.com<br>sririe@sidley.com |

| | |
|---|---|
| *COUNSEL FOR HTC AMERICA INC.* | **Karen Jacobs Louden**          (Lead Attorney)<br>**Richard John Bauer**<br>MORRIS, NICHOLS, ARSHT & TUNNELL<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>kjlefiling@mnat.com<br>rbauer@mnat.com<br><br>**Heidi L. Keefe**<br>**Kyle D. Chen**<br>**Mark R. Weinstein**<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA 94306<br>hkeefe@cooley.com<br>kyle.chen@cooley.com<br>mweinstein@cooley.com |
| *COUNSEL FOR PALM INC.* | **Francis DiGiovanni**          (Lead Attorney)<br>**Chad S.C. Stover**<br>CONNOLLY, BOVE, LODGE & HUTZ<br>The Nemours Building<br>1007 North Orange Street<br>P.O. Box 2207<br>Wilmington, DE 19899<br>fdigiovanni@cblh.com<br>cstover@cblh.com<br><br>**M. Elizabeth Day**<br>**David L. Alberti**<br>**Marc C. Belloli**<br>FEINBERG DAY ALBERTI & THOMPSON LLP<br>401 Florence Street, Suite 200<br>Palo Alto, CA 94301<br>eday@feinday.com<br>dalberti@feinday.com<br>mbelloli@feinday.com |

| | |
|---|---|
| ***COUNSEL FOR KYOCERA COMMUNICATIONS INC.*** | **Lauren E. Maguire** (Lead Attorney)<br>**Steven J. Balick** (Lead Attorney)<br>**Andrew Colin Mayo**<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>lmaguire@ashby-geddes.com<br>sbalick@ashby-geddes.com<br>amayo@ashby-geddes.com<br><br>**Patrick Park**<br>**Richard de Bodo**<br>**Robert J. Benson**<br>DLA PIPER LLP<br>2000 Avenue of the Stars, Suite 400<br>Los Angeles, CA 90067-4704<br>patrick.park@dlapiper.com<br>richard.debodo@dlapiper.com<br>robert.benson@dlapiper.com |
| ***COUNSEL FOR LETSTALK.COM INC.*** | **Lauren E. Maguire** (Lead Attorney)<br>**Steven J. Balick** (Lead Attorney)<br>**Andrew Colin Mayo**<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>lmaguire@ashby-geddes.com<br>sbalick@ashby-geddes.com<br>amayo@ashby-geddes.com<br><br>**Jaideep Venkatesan**<br>**Daniel J. Bergeson**<br>**Melinda M. Morton**<br>BERGESON, LLP<br>303 Almaden Blvd., Suite 500<br>San Jose, CA 95110-2712<br>jvenkatesan@be-law.com<br>dbergeson@be-law.com<br>mmorton@be-law.com |

| | |
|---|---|
| ***COUNSEL FOR QUALCOMM INC.*** | **Richard L. Horwitz**  (Lead Attorney)<br>**David Ellis Moore**<br>POTTER ANDERSON & CORROON, LLP<br>1313 N. Market St., Hercules Plaza, 6th Flr.<br>P.O. Box 951<br>Wilmington, DE 19899-0951<br>dmoore@potteranderson.com<br>rhorwitz@potteranderson.com<br><br>**Henry B. Gutman**<br>**Victor Cole**<br>**Courtney Welshimer**<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY 10017<br>hgutman@stblaw.com<br>vcole@stblaw.com<br>cwelshimer@stblaw.com<br><br>**Harrison J. Frahn**<br>**Jeffrey E. Ostrow**<br>**Natasa Pajic**<br>**Sara G. Wilcox**<br>**Christopher J. Judge**<br>SIMPSON THACHER & BARTLETT LLP<br>2550 Hanover Street<br>Palo Alto, CA 94063<br>hfrahn@stblaw.com<br>jostrow@stblaw.com<br>npajic@stblaw.com<br>swilcox@stblaw.com<br>cjudge@stblaw.com |

| **COUNSEL FOR GOTV NETWORKS INC.** | **Edmond D. Johnson**                (Lead Attorney)<br>**James G. McMillan, III**<br>PEPPER HAMILTON LLP<br>1313 Market Street, Suite 5100<br>P.O. Box 1709<br>Wilmington, DE 19899-1709<br>johnsone@pepperlaw.com<br>mcmillan@pepperlaw.com<br><br>**Maura L. Rees**<br>**Dylan J. Liddiard**<br>**Holly B. Baudler**<br>WILSON SONSINI GOODRICH & ROSATI<br>650 Page Mill Road<br>Palo Alto, CA 94304<br>mrees@wsgr.com<br>dliddiard@wsgr.com<br>hbaudler@wsgr.com |
| **COUNSEL FOR SPB SOFTWARE INC.** | **Brian Michael Gottesman**        (Lead Attorney)<br>**David B. Anthony**<br>BERGER HARRIS, LLC<br>1201 N. Orange St., 3rd floor<br>Wilmington, DE 19801<br>bgottesman@bergerharris.com<br>danthony@bergerharris.com<br><br>**Catherine I. Rajwani**<br>THE HARBOR LAW GROUP<br>300 West Main Street, Bldg. A., Unit 1<br>Northborough, MA 01532<br>crajwani@harborlaw.com |

| | |
|---|---|
| ***COUNSEL FOR CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS ("VERIZON")*** | **John G. Day** (Lead Attorney)<br>**Andrew Colin Mayo** (Lead Attorney)<br>**Lauren E. Maguire** (Lead Attorney)<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>jday@ ashby-geddes.com<br>amayo@ashby-geddes.com<br>lmaguire@ashby-geddes.com<br><br>**Kevin P. Anderson**<br>**Karin A. Hessler**<br>WILEY REIN LLP<br>1776 K Street, NW<br>Washington, D.C. 20006<br>kanderson@wileyrein.com<br>khessler@wileyrein.com |
| ***COUNSEL FOR SIMPLEXITY, LLC D/B/A WIREFLY*** | **John G. Day** (Lead Attorney)<br>**Andrew Colin Mayo**<br>**Lauren E. Maguire**<br>ASHBY & GEDDES<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>jday@ ashby-geddes.com<br>amayo@ashby-geddes.com<br>lmaguire@ashby-geddes.com |