IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS LLC, | : | |
| Plaintiff, | : | |
| v. | : | Civil Action No. 10-812-RGA |
| FLO TV INCORPORATED, et al., | : | |
| Defendants. | : | |

MEMORANDUM OPINION

Gregory B. Williams, Esq., Fox Rothschild, Wilmington, Delaware; Daniel R. Scardino, Esq. (argued), Reed & Scardino LLP, Austin, Texas, Attorneys for Plaintiff.

Brian E. Farnan, Esq., Farnan LLP, Wilmington, Delaware; Ryan E. Hatch, Esq. (argued), Latham & Watkins LLP, Los Angeles, California, Attorneys for Defendant MobiTV.

September 24, 2012
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Before the Court is a Motion to Disqualify Counsel for Defendant MobiTV. (D.I. 162). In connection with this motion, the parties have filed four briefs on the merits (D.I. 163, 185, 195, 223), the Court held oral argument on July 9, 2012 (D.I. 245), and the parties submitted letters subsequent to the argument (D.I. 246, 248). In addition, the Plaintiff submitted *ex parte* a binder of documents at the argument, with a three-page letter dated July 9, 2012, and an additional three-page letter dated July 13, 2012, with additional *ex parte* documents. The motion is now ripe for decision.

Plaintiff (EON Corp. IP Holdings LLC) filed a patent lawsuit against about seventeen defendants on September 23, 2010. The operative complaint is now the Third Amended Complaint (D.I. 243, filed July 9, 2012), but each version of the complaint has asserted that all of the defendants have infringed one patent, for "Software Controlled Multi-Mode Interactive TV Systems," invented by Fernando Morales. The patent application was filed on March 25, 1991, and was a continuation-in-part of applications filed in 1989. The patent was issued on September 2, 1997. The patent lists Laurence R. Brown as the patent prosecution attorney. (D.I. 1-1, at 2). Bob Steinberg and Ryan E. Hatch, both attorneys from the law firm of Latham and Watkins, were admitted *pro hac vice*, pursuant to a motion filed November 24, 2010 (D.I. 67), to represent MobiTV in this case. Mr. Steinberg and Mr. Hatch are members of the California bar and practice out of Latham's Los Angeles office. (D.I. 67-1, 67-2). The Motion to Disqualify was filed on September 13, 2011. (D.I. 162).

During the period from about 1988 to 1995 (D.I. 185, p.5), attorneys from Latham represented TV Answer. TV Answer subsequently became EON Corp. (D.I. 195, Exh. A, ¶ 2).

The plaintiff, EON Corp. IP Holdings LLC, is a subsidiary of EON Corp., formed in 2008.[1] Latham is a national law firm. At least thirty-four of its attorneys billed time to EON during the earlier representation. (D.I. 163, p.4). Seven of those thirty-four remain active attorneys with Latham. (*Id.*). Neither Mr. Steinberg nor Mr. Hatch were at Latham during the time Latham represented EON. (D.I. 244, at 21). During this time, EON was based in McLean, Virginia. (D.I. 185, Exh. A, ¶ 6). The Latham attorneys who represented it were based in the Washington, D.C. office of Latham. (D.I. 244, at 33). Fernando Morales was "President and/or CEO" of EON from 1988-92. (D.I. 195, Exh. A, ¶ 2). He dealt directly with Latham attorneys. (*Id.*, ¶¶ 4-7). According to his declaration, he dealt with them at times as "an inventor" and not as the company's chief executive. (*Id.*, ¶ 5). Morales left EON in 1992. (Exh. 1, ¶ 6 to July 9, 2012, letter). Latham attorneys primarily represented EON in connection with "corporate and regulatory" (D.I. 186, Exh. A to Exh. 5) matters, which included representation before the FCC in connection with technology that was similar or the same as the technology that is described in the patent. Latham did not during the relevant time period represent anyone, including EON, in connection with patent prosecution. (D.I. 186, Exh. 3, ¶ 5).

Latham established an ethics wall in connection with this case on October 27, 2010. (D.I. 186, Exh. 5, ¶ 3).

This Court has recently summarized the relevant legal principles for analysis of the pending motion.

---

[1] For ease of reference, all three entities will be referred to as EON. Latham concedes it formerly represented EON Corporation. (D.I. 186, Exh. A to Exh.5). It had questioned whether the plaintiff is a subsidiary of EON Corporation. (D.I. 185, pp.15-16). After plaintiff submitted further documentation at oral argument, Latham withdrew the argument. (D.I. 244, at 32).

3

The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller,* 624 F.2d 1198, 1201 (3d Cir.1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int 'l Inc.,* 491 F.Supp.2d 510, 513 (D.Del.2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch,* 431 F.Supp.2d 494, 496 (D.Del.2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.,* 803 F.Supp. 957, 960 (D.Del.1992).

Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.,* 748 F.2d 157, 160 (3d Cir.1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d)(2). M.R.P.C. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.,* 660 F.Supp.2d 557, 561 (D.Del.2009).

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp, v. First Nat'l Bank of Wilmington,* 652 F.Supp. 1281, 1283 (D.Del.1987) (internal quotation marks and citations omitted); *see also Talecris,* 491 F.Supp.2d at 514.

As the Third Circuit has explained, M.R.P.C. 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives,* 748 F.2d at 162. Therefore, in attempting to determine whether a "substantial relationship" exists, "disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.,* 942 F.Supp. 968, 973 (D.N.J.1996) (internal quotation marks and citations omitted). While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences. *See INA Underwriters v. Nalibotsky,* 594 F.Supp, 1199, 1207 (E.D.Pa.1984); *see also Buschmeier v. G & G Invs., Inc.,* 2007 WL 4150408, at *7 (E.D.Pa. Nov. 19, 2007).

To the extent that a motion to disqualify involves imputing an individual lawyer's representation to an entire firm, M.R.P.C. 1.10(a) is also relevant. Rule 1.10(a)(1) provides; While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Rule 1.10(a)(2) applies in circumstances in which a firm is conflicted due to a prior representation undertaken by an attorney while the attorney was at a different law firm. Rule 1.10 "imputes one attorney's conflicts to all other attorneys in his firm." *United States v. McDade,* 404 Fed. Appx. 681, 683 (3d Cir. Dec. 22, 2010); *see also Exterior Sys. v. Noble Composites, Inc.,* 210 F.Supp.2d 1062, 1068 (N.D.Ind.2002) ("Rule 1.10 addresses situations where a conflict of interest may be imputed to other lawyers associated in the same firm with the tainted lawyer.").

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.,* 632 F.Supp. 418, 428 (D.Del.1986) (internal citations and quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.,* 647 F.Supp.2d 369, 374 n. 7 (D.Del.2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning,* 652 F.Supp. at 1283 (internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB,* 944 F.Supp. 341, 345 (D.N.J.1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as

well as a precise picture of the underlying facts."). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27–28 (D.D.C.1984).

*Intellectual Ventures I LLC v. Checkpoint Software Technologies Ltd*, 2011 WL 2692968, *4-*6 (D.Del. June 22, 2011).

The primary point of dispute is whether this patent infringement suit is the same or "substantially related" as any of the work done by Latham for EON two decades ago. As noted above, this involves three questions:

> (1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?

Nature and Scope of Prior Representation. Latham was the primary outside counsel for EON between 1988 and 1995. The representation was broad.[2] Latham attorneys were certainly

---

[2] I have reviewed all of the privileged documents submitted in camera. I now summarize them. Submitted with the July 9, 2012 letter are: Exh. 2A, which is legal advice from Latham to EON on May 15, 1991, that includes proposed documents that would assign the patent application that resulted in the patent-in-suit from one entity to EON; Exh. 2B, which is a Latham attorney's memo on September 20, 1990, that includes a brief discussion of the novelty of EON's "service" in the context of FCC requirements [the exact nature of the "service" and therefore its relevance to the issues in this case is not clear]; Exh. 2C, which is a Latham attorney's memo on September 12, 1990, about the requirements for an FCC license for "interactive television service" providing "novel services"; Exh. 2D, which comes from Latham's files and appears to be a valuation for tax purposes performed by a third party as of October 1, 1991 of foreign patents including foreign patent applications that EON was going to be assigned; Exh. 2E, which is Latham advice to EON dated May 15, 1992, concerning the international expansion/exploitation of IVDS ("interactive video data service") technology in non-U.S. markets, primarily relating to spectrum frequency; Exh. 2F, which is a May 11, 1992, fax from Latham to EON enclosing a consulting contract relating to the same topic as Exh. 2E; and Exh. 2G, which is a June 10, 1992, memo from Latham to EON concerning the same topic as Exh. 2E but specifically relating to Japan. Submitted with the July 13, 2012 letter are: Exh. 1, which is a Latham memo dated July 23, 1992, concerning fifteen "thoughts and questions about

6

generally familiar with EON's business, and specifically familiar with many aspects of the business, including the technology that is at least partially reflected in the patent at issue. On the other hand, there is no evidence that Latham attorneys played any part in obtaining the patent at issue. Further, the patent issued well after Latham's representation ceased, and there is no evidence that Latham played any part in any licensing efforts involving this patent.

Nature of the Present Lawsuit. This is a patent lawsuit. The main issues will likely be construction of the patent's claims, whether MobiTV infringes the patent, and whether the patent is invalid. If the patent is valid and MobiTV infringes, then damages will be a significant issue. MobiTV's answer alleges every conceivable invalidity defense (other than inequitable conduct). (D.I. 256, pp. 11-16). At least one of EON's co-defendants has identified two former Latham lawyers as potential witnesses. *See* July 13, 2012, letter; Exh. A, p.10.

Analysis. Some of the invalidity defenses, if pursued, could involve factual inquiry into EON's activities in the relevant time period, and it is conceivable that information about related factual matters could have been shared with Latham attorneys. As to damages, it seems likely that the measure of damages would be a royalty analysis from when the infringement began.

---

relationships and agreements between [EON] and local IVDS licensees;" Exh. 2, which is a Latham memo dated July 29, 1992, to EON about "FCC Restrictions on Interest in Multiple IVDS Applications;" Exh. 3, which is EON's letter dated December 2, 1991, to Latham submitting a technology cross-licensing agreement drafted by patent counsel (Laurence R. Brown) for comment by Latham on tax issues; Exh. 4, which shows the request that Latham participate in discussion about an October 23, 1991, valuation of EON's patents; Exh. 5, which is a memo dated June 18, 1991, from Latham to EON which discusses in part issues relating to the sale of patents from a company related to EON to another company related to EON; Exh. 6, which is a January 16, 1992, memo from Latham to EON which describes ten issues that need to be addressed in an intellectual property cross-licensing agreement between EON and a related company; and Exh. 7, which is a June 23, 1992, memo from Latham to EON concerning FCC restrictions on its interactions with intended licensees of its "patented technology."

The complaint does not allege any such date. At argument, MobiTV represented that it did not make a relevant product until 2003. (D.I. 244, at 27). Thus, for purposes of this analysis, I assume that to be the case, and thus any royalty analysis would focus on a hypothetical negotiation in 2003. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012). Since Latham's representation ended two years before the patent was issued, it seems far-fetched to conclude that Latham could have been exposed to any confidential information related to licensing that could in any way be relevant to an issue in this case.

It seems to me that, due to the presence of the invalidity issues, the answer to the question, "might EON have disclosed to Latham confidences which could be relevant to the present action, and detrimental to EON in this action," is surely yes.[3] The conflict of interest is imputed to Mr. Steinberg and Mr. Hatch. *See Intellectual Ventures*, 2011 WL 2692968, at *12. In terms of the conflict analysis, it makes no difference that seventeen years have passed since Latham represented EON, when the lawsuit will in part concern events that occurred twenty years ago.

The above conclusion is not the end of the matter, however. The attorneys representing MobiTV never represented EON. Latham has instituted an ethics wall, and did so before doing any substantive work on the case. (D.I. 244, at 34). There is no challenge to the integrity of Mr. Steinberg and Mr. Hatch, nor to the efficacy of the ethics wall. This Court has "wide

---

[3] At argument, Latham noted that the PTO had rejected secondary considerations of non-obviousness while considering the application for the patent-in-suit. (D.I. 244, at 29). MobiTV has counterclaimed for a declaratory judgment of invalidity. (D.I. 256, p.16). Obviousness is in the case, and secondary considerations of non-obviousness can be raised even if the PTO previously rejected them.

8

discretion in fashioning appropriate remedies," including relying upon an ethics wall as a cure. *See id.*

There are a number of factors that I have considered, and, on balance, they suggest that an ethics wall is not the appropriate cure.

First, there is the passage of time. The specter of "switching sides" that is an important consideration in the application of the ethics rules is, on the one hand, reduced by the fifteen years that elapsed between the two representations. On the other hand, there is more than an abstract or theoretical possibility that Latham's prior representation would come before a jury. I am not concerned that the jury would see Latham on both sides of the same case, because I believe that could be dealt with simply by not having defense counsel identify their affiliation with Latham. The fact that some accommodation might have to be made, however, is the sort of thing that would give rise to the perception by the general public that the rules are designed to avoid.

Second, there is the distance between the Californian lawyers now representing MobiTV and the East Coast lawyers who formerly represented EON. This distance reduces, but does not eliminate, the "switching sides" specter.

Third, while it does not vitiate the concern about conflict of interest, the plaintiff was not the client. The plaintiff is a subsidiary of the client, and one that did not come into existence until thirteen years after the representation ended.

Fourth, there has been some argument about the timeliness of the Motion to Disqualify. I do not in any way criticize the Plaintiff for taking such time as it did to file the motion, although Plaintiff could have filed it more promptly. There has also been delay in resolving the

9

motion, which is attributable to neither party.  Nevertheless, the result is that Latham had represented MobiTV for nearly a year in this litigation at the time the motion was filed, and now for nearly another year while the motion has been briefed and decided.  On the other hand, due to the preliminary motion practice, and delay attributable to reexamination proceedings, the case is still young.  The Third Amended Complaint was filed little more than two months ago.  (D.I. 243).  The Court within the last month held a conference to resolve preliminary scheduling issues.  If the lawyers were disqualified now, the case against MobiTV probably need not be severed and put on a separate schedule.  MobiTV's defense should not in any way be prejudiced if it has to obtain new lawyers.

Thus, on balance, considering the rather unusual circumstances of the conflict of interest here, I believe the most appropriate exercise of my discretion is to disqualify Latham and Watkins from representing MobiTV.

A separate order will be entered.