IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-812 (RGA) |
| | ) | |
| FLO TV INCORPORATED; MOBITV, INC.; | ) | |
| U.S. CELLULAR CORPORATION; LG | ) | |
| ELECTRONICS MOBILECOMM USA, INC.; | ) | |
| MOTOROLA MOBILITY LLC.; SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA LLC; | ) | |
| SPRINT NEXTEL CORPORATION; | ) | |
| RESEARCH IN MOTION CORPORATION; | ) | |
| HTC AMERICA INC.; PALM, INC.; | ) | |
| KYOCERA COMMUNICATIONS INC.; | ) | |
| WIREFLY, CORP.; LETSTALK.COM, INC.; | ) | |
| QUALCOMM, INC.; GOTV NETWORKS, | ) | |
| INC.; SPB SOFTWARE; and VERIZON | ) | |
| COMMUNICATIONS INC. d/b/a/ VERIZON | ) | |
| WIRELESS, | ) | |
| | ) | |
| Defendants. | ) | |

**APPENDIX TO
DEFENDANTS' OBJECTION TO THE SPECIAL MASTER'S
RULINGS AND RECOMMENDATIONS IN RESPONSE TO
REQUESTS FOR PROTECTIVE ORDERS [D.I. 542]**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

OF COUNSEL:

Steven D. Moore
Carl E. Sanders
James L. Howard
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
(336) 607-7300

*Attorneys for Motorola Mobility LLC*

August 13, 2013

## TABLE OF CONTENTS

**TAB**

Defendants' Opening Brief Regarding Protective Order Disputes filed June 19, 2013      1

EON Corp. IP Holdings, LLC's Answering Brief Regarding Protective Order Disputes
filed June 26, 2013      2

# TAB 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-812 (RGA) |
| | ) | |
| FLO TV INCORPORATED; MOBITV, INC.; | ) | **JURY TRIAL REQUESTED** |
| U.S. CELLULAR CORPORATION; LG | ) | |
| ELECTRONICS MOBILECOMM USA, INC.; | ) | |
| MOTOROLA MOBILITY LLC.; SAMSUNG | ) | |
| TELECOMMUNICATIONS AMERICA LLC; | ) | |
| SPRINT NEXTEL CORPORATION; | ) | |
| RESEARCH IN MOTION CORPORATION; | ) | |
| HTC AMERICA INC.; PALM, INC.; | ) | |
| KYOCERA COMMUNICATIONS INC.; | ) | |
| WIREFLY, CORP.; LETSTALK.COM, INC.; | ) | |
| QUALCOMM, INC.; GOTV NETWORKS, | ) | |
| INC.; SPB SOFTWARE; and VERIZON | ) | |
| COMMUNICATIONS INC. d/b/a/ VERIZON | ) | |
| WIRELESS, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DEFENDANTS' OPENING BRIEF REGARDING PROTECTIVE ORDER DISPUTES</u>

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Motorola Mobility LLC*

OF COUNSEL:

William H. Boice
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA  30309
(404) 815-6500

Steven D. Moore
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
(336) 607-7300

June 19, 2013

Defendants submit this Brief to address the two remaining protective order disputes between Defendants and Plaintiff EON Corp. IP Holdings, LLC ("EON").

## I.      INTRODUCTION

Defendants respectfully request that the Court adopt Defendants' proposed protective order, attached as Ex. A, which includes the two provisions in dispute: (1) Section 11(a), which provides Defendants' position that the agreed prosecution bar encompass patent prosecution activities related to reexamination and reissue proceedings, rather than just prosecution of new patent applications, and (2) the definition of "CONFIDENTIAL Material" in Section F of the Definitions section, which defines EON's settlement agreements as "confidential" so that in-house counsel may access those documents to permit informed settlement discussions and/or understanding of the potential scope of damages in the case.

## II.     ARGUMENT

### A.      The Prosecution Bar Should Apply to Reexamination and Reissue Proceedings

EON has agreed to a prosecution bar provision in the protective order that covers prosecution of new patent applications, but balks at that same provision covering reexamination and reissue proceedings.   The reason for the prosecution bar is to prevent the use of any Defendant's confidential information while amending patent claims.   Claim amendments can be made in each of these situations – new patent applications, reexamination proceedings, and reissue proceedings – and so the risk of confidential information being used for purposes of amending claims exists in each of these situations.   Therefore, the prosecution bar should cover them all.

The competing prosecution bar provisions are set forth below in context (Defendants' proposed provisions are in **bold**, EON's proposed provision is in *italics*):

1

    (a)  Any person who on behalf of Plaintiff receives Material designated as HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY, including Outside Consultants, shall not participate in any way (including, but not limited to, participating in a supervisory capacity) in:

        (1)  the prosecution or preparation of any application for patent, whether foreign or domestic, on behalf of any Party to this action (or any entity in privity with such Party) relating to the design, development, or manufacture of methods, systems, and/or components relating to the field of invention of the Patent-in-Suit or the accused instrumentalities, including mobile telecommunication devices and mobile television/content applications;

        **(2)  in any reexamination or reissue proceeding granted concerning any application or issued patent in such fields; or**

        **(3)  advising any client or counsel concerning prosecuting patent applications in such fields, from the time of receipt of such information through and including two (2) years following the complete termination of this action by either entry of a final, non-appealable judgment or order, the complete settlement of all claims against all Parties in this action, or any other means.**

        *(2)  advising any client or counsel concerning prosecuting patent applications in such fields, from the time of receipt of such information through and including one (1) year following the earliest of the entry of final judgment of the above-styled case in the United States District Court for the District of Delaware or the complete settlement of all claims against all Parties in this action, or final disposition of this case by any other means.*

Ex. A at 8.

       This Court has recognized that a prosecution bar extending to reexamination proceedings is appropriate to prevent a defendant's confidential information from being used, even inadvertently, to shape claim amendments:

    I can see circumstances, and it appears to me that they may be present here, in which a patentee, knowing the detailed technical information as to how an accused system or device works, knows that or has as much confidence as one can ever have that they have a strong infringement case against that accused product and knows that they can afford to narrow their patent scope and still have the strength of that infringement case and yet actually strengthen the patent claim against some prior art that it's facing in a reexam. . . . I think that [the amended] claims could run the risk of inadvertently being shaped in BT's mind by its knowledge of its case against Google, which is an ongoing case, and could give way to this concept that I have outlined and that we have discussed.

2

*British Telecomm'ns PLC v. Google, Inc.*, C.A. No. 11-1249, Tr. at 20-21 (D. Del Aug. 31, 2012) (Ex. B); *see also Edwards Lifesciences AG v. Corevalve, Inc.*, C.A. No. 08-91, Order at 1-2 (D. Del. Feb. 23, 2011) (denying request that plaintiff's trial counsel be permitted to participate in reexamination proceedings because the "the risk of the use of confidential information and the harm the defendants might suffer as a result far outweighs potential harm to [the plaintiff]") (Ex. C).

Defendants in this case are at risk of the same harm that this Court has recognized for the defendants in the above-referenced cases—claims amended during reexamination (or reissue) run the risk of being shaped by EON's knowledge of its case against Defendants.  Furthermore, Defendants do not merely seek their proposed prosecution bar provision in the event a reexamination proceeding were to arise.  To the contrary, a second reexamination of the patent asserted in this case is currently ongoing.  *See* Exhibit D (Reexamination Control No. 90/012,639).  Accordingly, there is an actual, present risk of harm to the Defendants if EON is permitted to use the Defendants' confidential information to shape claim amendments in the pending Reexamination.  Defendants' proposed prosecution bar simply seeks to minimize that risk of harm.[1]

Defendants and EON also disagree as to the appropriate duration of the prosecution bar and the wording of the duration provision.  Defendants propose that the prosecution bar remain in effect for "two (2) years following the complete termination of this action by either entry of a

---

[1] Limiting the prosecution bar to a prohibit participation in the drafting of claims, as EON proposes, does not obviate the prejudice to Defendants.  The advice that EON's trial counsel could provide to EON's reexamination counsel about claim scope, or disputes about infringement and/or validity could be equally damaging to Defendants, even if EON's trial counsel do not participate in the actual drafting of claims.

final, non-appealable judgment or order . . . ."  EON, however, proposes that the prosecution bar remain for "one (1) year following the earliest of the entry of final judgment of the above-styled case in the United States District Court for the District of Delaware . . . ."  Defendants seek a prosecution bar that remains in effect for two years following the termination of the case to minimize the risk of their respective confidential information being misused to shape claim amendments in any present or future patent applications or reexamination and/or reissue proceedings.  Further, Defendants' proposed language makes clear that the prosecution bar should remain in effect for a period of time following "complete termination" of a "final, non-appealable judgment or order."  By contrast, EON's proposed language proposes only that the one-year clock begin ticking upon a case dispositive decision in this Court, regardless of any further proceedings, including any appeals.  It is inappropriate for EON to have the ability to amend its patent claims at any time while it has access to Defendants' confidential information, which includes while this case remains pending.

For the foregoing reasons, Defendants respectfully request adoption of their proposed prosecution bar provision.

**B.      Settlements Should be Afforded No More than a "Confidential" Designation**

To properly evaluate settlement possibilities and potential damages, Defendants' in-house counsel needs access to settlement and licensing information related to the patent-in-suit, U.S. Patent No. 5,663,757 ("the '757 patent").  Defendants' proposed definition of "CONFIDENTIAL material" reflects that need by specifying that settlement and licensing materials between EON and any prior defendant in earlier litigations that relate to the '757 patent ("EON Settlement Agreements") be treated as Confidential material.  *See* Exhibit A at 1 (Defendants' proposed language in the definition of "CONFIDENTIAL" Material).

Permitting EON Settlement Agreements to be marked "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" would only serve to preclude Defendants' in-house counsel from receiving necessary information for evaluating and potentially resolving this case, while affording the EON Settlement Agreements more protection than is appropriate. By their nature, the EON Settlement Agreements do not include any proprietary technical information, product specifications, or similar information, but rather, set forth the terms of a settlement and/or license pertaining to the patent asserted in this case or related patents. The agreed upon language of the protective order provides that all designated materials, including those designated as "CONFIDENTIAL," "shall be used by a Receiving Party solely for the purpose of this litigation and not for any other purpose, including, without limitation, any business or commercial purpose, or dissemination to the media or public." *See* Exhibit A at 3. Accordingly, the content of the EON Settlement Agreements designated as "CONFIDENTIAL" would be adequately protected from disclosure to the public and/or third parties while promoting free-flow of relevant non-competitive information to Defendants' in-house counsel for efficiently resolving this litigation.

For the foregoing reasons, Defendants respectfully request adoption of their proposed provision affording EON Settlement Agreements no more than a confidential designation.

## III.    CONCLUSION

To minimize the risk that Defendants' confidential information is used to inform claim amendments during reexamination or reissue proceedings and to promote efficiency and free flow of pertinent non-technical and non-competitive information to in-house counsel, Defendants respectfully request adoption of their proposed protective order provisions outlined in Ex. A.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com

*Attorneys for Motorola Mobility LLC*

OF COUNSEL:

William H. Boice
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
(404) 815-6500

Steven D. Moore
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300

June 19, 2013

## CERTIFICATE OF SERVICE

I, hereby certify that on June 19, 2013, copies of the foregoing were caused to be served

upon the following in the manner indicated:

Gregory B. Williams, Esquire                                    *VIA ELECTRONIC MAIL*
Fox Rothschild LLP
919 North Market Street
Suite 1300
Wilmington, DE  19801
*Attorneys for Plaintiff*


Cabrach J. Connor, Esquire                                     *VIA ELECTRONIC MAIL*
Daniel R. Scardino, Esquire
Craig S. Jepson, Esquire
Chad P. Ennis, Esquire
Steven P. Tepera, Esquire
John L. Hendricks, Esquire
Rola Daaboul, Esquire
Mark Halderman, Esquire
Reed & Scardino LLP
301 Congress Avenue
Suite 1250
Austin, TX  78701
*Attorneys for Plaintiff*


Richard L. Horwitz, Esquire                                    *VIA ELECTRONIC MAIL*
David E. Moore, Esquire
Bindu A. Palapura, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for FLO TV Incorporated and
Qualcomm, Inc.*

Harrison J. Frahn, Esquire                    *VIA ELECTRONIC MAIL*
Jeffrey E. Ostrow, Esquire
Jeffrey E. Danley, Esquire
Michael A. Quick, Esquire
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, CA  94304
*Attorneys for FLO TV Incorporated and*
*Qualcomm, Inc.*

Henry B. Gutman, Esquire                      *VIA ELECTRONIC MAIL*
Victor Cole, Esquire
Courtney A. Welshimer, Esquire
Daniel L. Kaplan, Esquire
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
*Attorneys for FLO TV Incorporated and*
*Qualcomm, Inc.*

Brian E. Farnan, Esquire                      *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street
Wilmington, DE  19801
*Attorneys for MobiTV, Inc.*

Daralyn Durie, Esquire                        *VIA ELECTRONIC MAIL*
Laura E. Miller, Esquire
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA  94111
*Attorneys for MobiTV, Inc.*

Gregory P. Williams, Esquire                  *VIA ELECTRONIC MAIL*
Steven J. Fineman, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for U.S. Cellular Corporation*

Richard J. O'Brien, Esquire                           *VIA ELECTRONIC MAIL*
Robert D. Leighton, Esquire
SIDLEY AUSTIN, LLP
One South Dearborn
Chicago, IL  60606
*Attorneys for U.S. Cellular Corporation*

Thomas L. Halkowski, Esquire                          *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue
17th Floor
Wilmington, DE  19801
*Attorneys for LG Electronics MobileComm
USA, Inc.*

Jack B. Blumenfeld, Esquire                           *VIA ELECTRONIC MAIL*
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
*Attorneys for Motorola Mobility LLC*

William H. Boice                                      *VIA ELECTRONIC MAIL*
KILPATRICK TOWNSEND & STOCKTON, LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA  30309
*Attorneys for Motorola Mobility LLC*

Steven D. Moore, Esquire                              *VIA ELECTRONIC MAIL*
Carl Sanders, Esquire
KILPATRICK TOWNSEND & STOCKTON, LLP
1001 West Fourth Street
Winston-Salem, NC  27101-2400
(336) 607-7300
*Attorneys for Motorola Mobility LLC*

Edmond D. Johnson, Esquire                            *VIA ELECTRONIC MAIL*
James G. McMillan, III, Esquire
PEPPER HAMILTON LLP
1313 North Market Street, Suite 5100
Wilmington, DE  19801
*Attorneys for GoTV Networks, Inc.*

3

Maura L. Rees, Esquire                                          *VIA ELECTRONIC MAIL*
Dylan J. Liddiard, Esquire
Holly B. Baudler, Esquire
Anthony J. Weibell, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA  94304
*Attorneys for GoTV Networks, Inc.*

Karen Jacobs Louden, Esquire                                    *VIA ELECTRONIC MAIL*
Jennifer Ying, Esquire
MORRIS NICHOLS ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
*Attorneys for Sprint Nextel Corporation*

Philip A. Rovner, Esquire                                       *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE 19899
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Kyocera Communications Inc.*

Jose L. Patino, Esquire                                         *VIA ELECTRONIC MAIL*
Nicola A. Pisano, Esquire
Justin E. Gray, Esquire
FOLEY & LARDNER LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
jpatino@foley.com
npisano@foley.com
jegray@foley.com
*Attorneys for Kyocera Communications Inc.*

/s/ Jennifer Ying
Jennifer Ying (#5550)

4

# EXHIBIT A

**[STIPULATED] PROTECTIVE ORDER**

The Court finds that this action may involve trade secrets and other valuable research, development, commercial, financial, technical, and/or proprietary information for which special protection from public disclosure and from use for any purpose other than prosecuting this action is warranted.  Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information that the parties reasonably believe they are entitled to keep confidential, and to ensure that the parties are permitted reasonably necessary uses of such materials in preparation for and in the conduct of trial, pursuant to Federal Rule of Civil Procedure 26(c), and for good cause shown,

IT IS HEREBY ORDERED THAT:

**DEFINITIONS**

A.     "Party":  any party to this action, including all of its officers, directors, employees, consultants, retained experts and consultants, and outside counsel (and their support staff).

B.     "Material":  all information, documents, items, and things produced, served, or otherwise provided in this action (whether paper, electronic, tangible, or otherwise) by the Parties or by non-parties, as well as all summaries, compilations, and other documents and things derived from same.

C.     "Producing Party":  a Party or non-party that produces Material in this action.

D.     "Receiving Party":  a Party that receives Material from a Producing Party.

E.     "Designating Party":   a Party or non-party that designates Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY.

F.     "CONFIDENTIAL" Material:  Material the Designating Party believes in good faith is not publicly available to others and which the Designating Party:  (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence due to an obligation of confidentiality to a third party or a Court, (ii) believes in good faith is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy, or (iii) believes in good faith to constitute or to contain trade secrets or other confidential research, development, or commercial information. **Defendants' Proposed Language:  Settlement and licensing materials of Plaintiff in resolution of any action involving the Patent-in-Suit or any related patents or applications shall be treated as CONFIDENTIAL Material under this Order.** CONFIDENTIAL Material shall include all Material referring or relating to the foregoing including, but not limited to, copies, summaries, and abstracts of the foregoing, and shall be designated as such in the manner described in Section 2.

1

G.     "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" Material: Material the Designating Party believes in good faith is not generally known to others and has significant competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury and which the Designating Party:  (i) would not normally reveal to third parties except in confidence or has undertaken with others to maintain in confidence due to an obligation of confidentiality to a third party or a Court; (ii) believes in good faith is protected by a right to privacy under federal or state law or any other applicable privilege or right related to confidentiality or privacy; and (iii) believes in good faith constitutes proprietary financial, technical, or commercially sensitive competitive information that the Producing Party maintains as highly confidential in its business.   HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material shall include all Material referring or relating to the foregoing including, but not limited to, copies, summaries, and abstracts of the foregoing, and shall be designated as such in the manner described in Section 2.

H.     "Designated Material":   Material that is designated CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY.

I.     "Outside Counsel":  attorneys (including contract attorneys and other litigation and clerical support staff) who are not employees, directors, or officers of a Party or a Party's parents, affiliates, or subsidiaries, but who are counsel of record for a Party.

J.     "Outside Consultant":  a person with specialized knowledge or experience in a matter pertinent to the action who has been retained by a Party or its Outside Counsel to serve as an expert witness or as a consultant in this action and who is not: (i) a current or anticipated employee of a Party or of a Party's competitor (unless expressly permitted by the affected Party), or (ii) a consultant involved in product and/or process design or development for a Party or for a Party's competitor (unless expressly permitted by the affected Party).   This term is to be construed within the meaning of Fed. R. Civ. P. 26(b)(4).

K.     "Designated In-House Counsel":  attorneys who are employees, directors, or officers of a Party or a Party's parents, affiliates, or subsidiaries, and who are members in good standing of the bar in at least one U.S. state, or any such personnel with an equivalent status in a foreign state, and designated on behalf of each Party to view CONFIDENTIAL information as set forth below.  Designated In-House Counsel may not include employees, directors, or officers involved in competitive or strategic business decision-making on behalf of the designating Party or the Party's parents, affiliates, or subsidiaries.  To facilitate the progress and management of this litigation, each Party to this action may designate two (2) Designated In-House Counsel who may have access to CONFIDENTIAL information subject to the provisions of this Protective Order.  This provision shall not be construed to allow Designated In-House Counsel access to information designated as HIGHLY CONFIDENTIAL-OUTSIDE COUNSEL EYES ONLY.

L.     "Professional Vendors":  persons or entities that provide litigation support services (e.g., photocopying, videotaping, court reporting (or other transcription services), translating, preparing exhibits or demonstrations, organizing or processing data) and their employees and subcontractors.  This definition includes a professional jury or trial consultant retained in connection with this action, as well as mock jurors retained by such a consultant to assist them in their work.  Professional Vendors do not include persons or entities that

2

substantively review Designated Materials and/or provide summaries of such Materials. Professional Vendors also do not include consultants who fall within the definition of Outside Consultant.

M.    "Source Code":  includes human-readable programming language text that defines software, firmware (collectively, "Software Source Code"), and electronic hardware descriptions of application-specific integrated circuits or ASICs ("Hardware Source Code") and technical design documentation, including specifications and schematics ("design documents"). Text files containing Source Code shall hereinafter be referred to as "Source Code Files." Software Source Code Files include, but are not limited to, files containing Source Code in "C," "C++," assembler, and digital signal processor (DSP) programming languages.  Software Source Code Files further include ".include files," "make" files, "link" files, and other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, micro-controller, or DSP.  Hardware Source Code Files include, but are not limited to, files containing Source Code in VHDL, Verilog, or other RTL language.  Nothing in this Stipulated Protective Order shall be deemed an admission by any Party that any Source Code need or should be produced in this action.

## TERMS AND CONDITIONS

1.    General Limitations on Disclosure and Use of Designated Material

Designated Material and the substance and content thereof, including any copies, notes, memoranda, summaries, excerpts, compilations, or other similar documents relating thereto, shall be used by a Receiving Party solely for the purpose of this litigation and not for any other purpose, including, without limitation, any business or commercial purpose, or dissemination to the media or public.  Any person in possession of Designated Material shall exercise reasonably appropriate care with regard to storage, custody, or use of such Material in order to ensure that the confidential nature of the Material is maintained.  If Designated Material is disclosed or comes into the possession of any person other than in the manner authorized by this Protective Order, any Party having knowledge of the disclosure must immediately inform the Producing Party (and, if not the same person or entity, the Designating Party) of all pertinent facts relating to such disclosure and shall make reasonable efforts to retrieve such Material and to prevent further disclosure.

2.    Procedure for Designating Materials

(a)    Documents and Other Tangible Materials.  The designation of Material in the form of documents, discovery responses, or other tangible materials (other than depositions or other pre-trial testimony) shall be made by the Designating Party by conspicuously affixing (physically or electronically) the legend CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY on each page of the document to which the designation applies (or, in the case of computer media, on the medium label and/or cover).  To the extent practical, the legend shall be placed near the Bates number identifying the Material.  To the extent the Receiving Party subsequently generates copies of Designated Material, whether electronic or hard copy, the Receiving Party shall mark such copies with the appropriate confidentiality designations.  In the event that the Receiving Party prints documents produced by

the Producing Party in electronic form, the Receiving Party shall mark each such page of the documents with the appropriate designation.  Documents or other tangible materials shall be designated at the time of production.  For declarations, written discovery responses, and pleadings, Designated Material shall be designated at the time of service or filing, whichever comes first.

(b)     <u>Non-Tangible Materials</u>.   All Designated Materials that are not reduced to documentary, tangible, or physical form or that cannot be conveniently designated in the manner set forth in Section 2(a) above shall be designated by the Designating Party by informing the Receiving Party in writing.

(c)     <u>Deposition Testimony and Transcripts</u>.   Any Party may designate as CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material that is disclosed at a deposition by indicating on the record at the deposition that the testimony is CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY and is subject to the provisions of this Protective Order.  Any Party may also designate Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY by notifying the court reporter and all of the Parties, in writing, within seven (7) business days after receipt of the final deposition transcript.  Each Party shall attach a copy of such written notice or notices to the face of the transcript and each copy thereof in his/her possession, custody, or control.  All deposition transcripts shall be treated as HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY for at least a period of seven (7) business days after receipt of the final transcript unless otherwise designated ahead of such time period.

(d)     <u>Non-Party Designations</u>.   Non-parties who produce Material in this action may avail themselves of the provisions of this Protective Order, and such Material produced by non-parties shall be treated by the Parties in conformance with this Protective Order.  A non-party's use of this Protective Order for production of its Material does not entitle that non-party to have access to Material produced by any Party in this action.

3.     <u>Inadvertent Production</u>

(a)     <u>Inadvertent Failures to Properly Designate</u>.  If a Party or non-party inadvertently produces Material without labeling or otherwise designating it in accordance with the provisions of this Protective Order, the Party or non-party may give written notice to the Receiving Party that the Material produced is designated CONFIDENTIAL or HIGHLY CONFIDENTIAL— OUTSIDE COUNSEL EYES ONLY and should be treated as such in accordance with the provisions of this Protective Order.  The Receiving Party must treat such Material according to its most recent designation of CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY from the date such notice is received, as well as undertake a good faith effort to correct any treatment of the information inconsistent with the new designation.

(b)     <u>No Waiver of Privilege</u>.   The production or inspection of Material that a Producing Party claims was inadvertent and should not have been produced or disclosed because of the attorney-client privilege, the work product immunity, or any other applicable privilege or immunity from discovery shall not be deemed to be a waiver of any such privilege or immunity to which the Producing Party would have been entitled had the Material not inadvertently been

produced or disclosed.  Upon request by the Producing Party, the Receiving Party shall immediately destroy all electronic copies of such inadvertently produced Material and return all physical copies of such inadvertently produced Material, including all media provided by the Producing Party containing the inadvertently produced Material.  Notwithstanding the foregoing, any electronic or physical copies containing privileged or work-product markings of the Receiving Party shall be destroyed.  The Producing Party shall promptly provide a privilege log including an entry or entries for the inadvertently produced Material.  If the Receiving Party challenges the propriety of the claim of attorney-client privilege, work product immunity, or other applicable privilege or immunity from discovery, the Receiving Party:  (i) shall not review and must terminate any ongoing review of inadvertently produced Material; (ii) shall delete and destroy all copies of the inadvertently produced Material maintained by the Receiving Party; and (iii) shall not assert as a ground for challenge the fact of the initial production or the later designation of attorney-client privilege, work product immunity, or any other designated privilege or immunity from discovery.

4.      Material Not Covered by this Protective Order

No Material shall be deemed CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY under this Protective Order if:

(a)      it is in the public domain at the time of disclosure;

(b)      it becomes part of the public domain as a result of publication not involving a violation of this Protective Order;

(c)      the Receiving Party can show it was in the Receiving Party's rightful and lawful possession at the time of disclosure (in which case any previously existing confidentiality obligations shall remain unchanged);

(d)      the Receiving Party lawfully received it from a non-party without restriction as to disclosure, provided such non-party has the right to make the disclosure to the Receiving Party; or

(e)      the Receiving Party can show it was independently developed by the Receiving Party after the time of disclosure by personnel who did not have access to the Producing Party's Designated Material.

5.      Challenges to Designations

(a)      Written Notice.  The Designating Party shall use reasonable care when designating Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY.  Nothing in this Protective Order shall prevent a Receiving Party from contending that any Material has been improperly designated.  If the Receiving Party disagrees with the designation of any Material, the Receiving Party may challenge such designation by providing the Designating Party with written notice of such challenge and by identifying the Material as specifically as possible.  The Parties shall engage in a good faith effort to try to resolve the dispute on an informal basis.  If within five (5) business days of having a requested meet and confer, the Parties do not resolve the dispute, the Receiving Party may file a motion

with the Court (or by email submission to the Special Master) challenging the designation as invalid as set forth below.  The Parties shall continue to confer on the challenged Material the designated level of protection until such dispute is resolved, either by the Parties or by the Court.

(b)     Meet and Confer.  A Receiving Party that elects to challenge a designation must do so in good faith and, in addition to the written notice, must confer directly with counsel for the Producing Party.  In conferring, the Receiving Party must explain the basis for its belief that the confidentiality designation was not proper and must give the Producing Party five (5) days to review the Material challenged and to reconsider the circumstances, and if no change in designation is offered, to explain the basis for the chosen designation.

(c)     Judicial Intervention.  The burden of persuasion in any such challenge proceeding shall be on the Producing Party to establish the propriety of the designation.  Until the Court rules on the challenge, all Parties shall continue to afford the Material in question the level of protection to which it is entitled under the Producing Party's original designation.

(d)     No Presumption of Protected Status.  This Order does not address discovery objections nor preclude either Party from moving for any relief cognizable under the Federal Rules of Civil Procedure or this Court's inherent power.  Nothing in this Order creates a presumption or implies that information designated as Designated Material actually constitutes a trade secret, is proprietary, or is otherwise protectable information.  If a Receiving Party believes that any information is improperly designated under this Order, it may, at any time, contest such designation.  Designated Material that is subject to such a dispute shall, under further order of this Court, be treated consistently with its designation by the Designating Party.

6.    Inspection of Materials

Material made available for inspection by Outside Counsel for the Receiving Party shall initially be considered to be HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY and subject to this Protective Order even though no formal designation has yet been made.  Thereafter, the Producing Party shall have a reasonable time to review and designate the inspected Material as CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY prior to furnishing copies to the Receiving Party.

7.    Access to CONFIDENTIAL Material

Unless otherwise ordered by the Court or permitted in writing by the Designating Party, CONFIDENTIAL Material shall not be disclosed, directly or indirectly, to anyone except the following (and those identified in Section 17 below regarding use of Designated Material at depositions):

(a)     The Court and its personnel, including jurors.

(b)     Outside Counsel for each Party whose functions require access to CONFIDENTIAL Material.

(c)     Outside Consultants and Professional Vendors, provided that each signs the Confidentiality Agreement attached hereto as Exhibit A, thereby declaring that he

or she has read and understands this Protective Order and agrees to be bound by its provisions, and subject to the provisions and limitations set forth in Section 14 herein.

(d)     Designated In-House Counsel for each Party who have responsibility for maintaining, defending, or evaluating this litigation (and their supporting personnel).  No CONFIDENTIAL Material shall be disclosed to Designated In-House Counsel until that individual has signed the Confidentiality Agreement attached hereto as Exhibit A, thereby declaring that he or she has read and understands this Protective Order and agrees to be bound by its provisions.  Such written agreement shall be retained by counsel for the Receiving Party.

8.     Access to HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material

Unless otherwise ordered by the Court or permitted in writing by the Designating Party, HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material shall not be disclosed, directly or indirectly, to anyone except the following (and those identified in Section 17 below regarding use of Designated Material at depositions):

(a)     The Court and its personnel.

(b)     Outside Counsel for each Party whose functions require access to HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material.

(c)     Outside Consultants and Professional Vendors, provided that each signs the Confidentiality Agreement attached hereto as Exhibit A, thereby declaring that he or she has read and understands this Protective Order and agrees to be bound by its provisions, and subject to the provisions and limitations set forth in Section 14 herein.

Access to HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material shall be subject to the Prosecution and Development Bars of Section 11 below.

9.     Source Code

Nothing in this Stipulated Protective Order shall be deemed an admission by any Party that any Source Code need or should be produced in this action.  In the event Source Code is produced, such production shall be subject to the Prosecution and Development Bars of Section 11 and a separate Source Code Access Protective Order to be negotiated by the Parties.

10.     Defendants' Access to Designated Material Produced by Another Defendant

No Defendant is required to produce or make available its Designated Material to any other Defendant or Defendants, but nothing in this Order shall preclude such disclosure, in which case Designated Material disclosed to a Defendant from another Defendant shall be maintained pursuant to this Order.  Notwithstanding the provisions of this Protective Order, except for Defendants' Designated Material used by Plaintiff in any Court filings, Plaintiff shall not disclose a Defendant's Designated Material to any other Defendant without the express prior

written consent of the Defendant that produced the Designated Material.  Without the express prior written consent of the Defendant that produced the Designated Material, no expert or consultant retained by a Defendant in this matter shall have access to "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" Discovery Material produced by another Defendant in this matter.

11.    Prosecution and Development Bars

        (a)    Any person who on behalf of Plaintiff receives Material designated as HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY, including Outside Consultants, shall not participate in any way (including, but not limited to, participating in a supervisory capacity) in:

                (1)    the prosecution or preparation of any application for patent, whether foreign or domestic, on behalf of any Party to this action (or any entity in privity with such Party) relating to the design, development, or manufacture of methods, systems, and/or components relating to the field of invention of the Patent-in-Suit or the accused instrumentalities, including mobile telecommunication devices and mobile television/content applications;

                **Defendants' Proposal:**

                **(2)    in any reexamination or reissue proceeding granted concerning any application or issued patent in such fields; or**

                **(3)    advising any client or counsel concerning prosecuting patent applications in such fields, from the time of receipt of such information through and including two (2) years following the complete termination of this action by either entry of a final, non-appealable judgment or order, the complete settlement of all claims against all Parties in this action, or any other means.**

                *Plaintiff's Proposal:*

                *(2)    advising any client or counsel concerning prosecuting patent applications in such fields, from the time of receipt of such information through and including one (1) year following the earliest of the entry of final judgment of the above-styled case in the United States District Court for the District of Delaware or the complete settlement of all claims against all Parties in this action, or final disposition of this case by any other means.*

        The prosecution restriction described in this Section is personal to the person receiving such HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY information and shall not be imputed to any other person or entity.

        (b)    Unless otherwise permitted in writing between the Producing Party and the Receiving Party, any outside expert or Outside Consultant retained by the Receiving Party who is to be given access to materials designated as "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" produced by a Producing Party must agree in writing not to perform

hardware or software development work or product development work intended for commercial purposes substantially related to the particular technology or information disclosed in the Designated Material from the time of first receipt of such material for a period of two (2) years after the date the outside expert or Outside Consultant ceases to have access to any material designated "HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY" and/or to any materials that contain or disclose material so designated.

12.     Access by Professional Vendors

Despite the access restrictions set forth in Sections 7 through 10, but otherwise subject to the requirements set forth in this Protective Order, Designated Material, and such copies as are reasonably necessary for maintaining, defending, or evaluating this litigation, may be furnished and disclosed to Professional Vendors as defined in Definition L.  Hard copies of Designated Materials shall not be provided to mock jurors without the express written consent of the Producing Party.  Before disclosing any Designated Material to any person or service described in this paragraph, Outside Counsel for the Receiving Party shall first obtain from such person or service a written Confidentiality Agreement, in the form attached hereto as Exhibit A.  Such written agreement shall be retained by Outside Counsel for the Receiving Party but need not be disclosed to the Producing Party.

13.     Transmittal of Designated Material

No Designated Material designated as HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY may leave the territorial boundaries of the United States of America.  Without limitation, this prohibition extends to such Designated Material (including copies) in physical and electronic form.  The viewing of such Designated Material through electronic means outside the territorial limits of the United States of America is similarly prohibited.  Notwithstanding this prohibition, such Designated Material may be accessible to any Outside Counsel in non-U.S. offices of counsel of record for any Receiving Party to the extent that such access conforms with applicable export control laws and regulations.  The restrictions contained within this paragraph may be amended through the consent of the Producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations.

14.     Disclosure to Outside Consultants

        (a)     Confidentiality Agreement.  An Outside Consultant's access to Designated Material shall be subject to the terms in this section, including the notice-and-objection provisions below, and the requirement that the Outside Consultant execute the Confidentiality Agreement attached hereto as Exhibit A.  The Confidentiality Agreement shall be retained by Outside Counsel for the Party that retained the Outside Consultant, and a copy of the signed Confidentiality Agreement shall be provided to the Producing Party.

        (b)     Written Notice.  Before a Receiving Party may disclose, directly or indirectly, any Designated Material to an Outside Consultant, the Receiving Party must give written notice to the Producing Party of the following information as it relates to the Outside Consultant:

                (1)     current curriculum vitae, including the full name of the individual and the city and state of his or her primary residence;

9

(2)  business address and title;

(3)  nature of business or profession;

(4)  any previous or current relationship (personal or professional) with any of the Parties;

(5)  a listing of other actions (including case name, case number, and court/agency) in which the individual has testified (at trial, deposition, or in a hearing) in the last four (4) years;

(6)  the individual's current employer;

(7)  all companies for which the individual has consulted or by which the individual has been employed within the past four (4) years, the nature of such consulting or employment, and the years of such consulting or employment;

(8)  a listing of all papers or articles published by the individual within the ten (10) years prior to engagement as Outside Consultant; and

(9)  whether the individual is involved in or anticipates involvement in any aspect of prosecuting patent applications relating to mobile television or video-related technology.

(c)  Objection.  A Party that makes a written notice and provides the information specified in the preceding paragraph may disclose the Designated Material to the identified Outside Consultant unless, within seven (7) calendar days of the written notice (plus three (3) additional business days if notice is given other than by hand delivery, email, or facsimile transmission), the Producing Party objects in writing.

(d)  Judicial Intervention.  If an objection is made, the Parties shall meet and confer within five (5) business days of the written objection to try to resolve the dispute by agreement. If no agreement is reached, the objecting Party may, within five (5) business days of the meet and confer, move the Court for an order that access to CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY Material be denied to the designated individual, or other appropriate relief.  The objecting Party shall bear the burden of establishing that the proposed Outside Consultant should not be permitted access to Designated Materials. During that time and unless and until the Court determines otherwise, no disclosure of any such Designated Material shall be made by the Receiving Party to any Outside Consultant to whom an objection has been made.  If, however, the objecting Party does not move the Court within that five (5) day time period following the written notice, it waives its right to object and the Receiving Party may disclose Designated Materials to the Outside Consultant.

(e)  A party who has not previously objected to disclosure of Designated Material to an Outside Consultant or whose objection has been resolved with respect to previously produced information shall not be precluded from raising an objection to an Outside Consultant at a later time with respect to materials or information that are produced or obtained after the initial time for objecting to such Outside Consultant has expired. A party may also object after the time for

10

objecting to such Outside Consultant has expired based on previously produced information, however it must show good cause for failure to object within the prescribed time period. Any such objection shall be handled in accordance with the provisions set forth above in Section 14(b)-(d) above.

15.    Exceptions to Limitations on Disclosure

Nothing herein shall prevent disclosure of Designated Material:  (i) by the Producing Party to anyone else; (ii) by the Receiving Party to a past or present officer or employee of the Producing Party, if the Designated Material was created at a time when the individual was an officer or employee of the Producing Party; (iii) by a Party to any person, whether or not affiliated with the Producing Party at the time of disclosure, who either authored the Designated Material, in whole or in part, or who has independently received the Designated Material other than through a means constituting a breach of this Protective Order; or (iv) to any person who is reasonably identified as previously having had access to the Designated Material, which identification is made by the sworn testimony of another or unambiguously appears on the face of a document, other than through a means constituting breach of this Protective Order.

16.    Filing Under Seal

All transcripts, exhibits, discovery responses, pleadings, briefs, and other Material submitted to the Court that contain or disclose Designated Material shall be filed under seal in accordance with the Court's Revised Administrative Procedures Governing Filing and Service By Electronic Means.

17.    Limitations on the Use of Designated Material

       (a)    All Designated Material shall be held in confidence by each person to whom it is disclosed, shall be used only for purposes of this litigation, shall not be used for any business purpose or in connection with any other legal proceeding, and shall not be disclosed to any person who is not entitled to receive such information as herein provided. All produced Designated Material shall be carefully maintained so as to preclude access by persons who are not entitled to receive such information.

       (b)    Except as otherwise ordered by the Court, any deposition or trial witness may be examined and may testify concerning Designated Material of which such person has prior knowledge. Without in any way limiting the generality of the foregoing:

              (1)    A present director, officer, and/or employee of a Producing Party may be examined and may testify concerning all Designated Material that has been produced by that Party if that director, officer, or employee is (i) eligible to have access to the Designated Material by virtue of his/her employment with the Producing Party; (ii) identified in the Designated Material as an author, addressee, or carbon copy recipient of such Designated Material; or (iii) has seen such Designated Material in the ordinary course of business.

              (2)    A former director, officer, and/or employee of a Producing Party may be interviewed, examined, and may testify concerning all Designated Material that was

generated during the period of that witness's prior employment, provided that, for the time period or periods of such witness's employment or service, he or she meets the criteria set forth in Section 17(a)(1)(i)-(iii).

(3)     Non-parties may be examined or testify concerning any document containing Designated Material that appears on its face or from other documents or testimony to have been received from, or communicated to, the non-party as a result of any contact or relationship with the Producing Party.  Any person other than the witness, his or her counsel, and any person qualified to receive Designated Material under this Protective Order shall be excluded from the portion of the examination concerning such Material, absent the consent of the Producing Party.  If the witness is represented by an attorney who is not qualified under this Protective Order to receive Designated Material, then prior to the examination, the attorney shall provide a signed Confidentiality Agreement, in the form attached hereto as Exhibit A, declaring that he or she will comply with the terms of this Protective Order and maintain the confidentiality of Designated Material disclosed during the course of the examination.

(4)     An Outside Consultant may be examined or testify concerning all Designated Material.

(c)     In addition to the restrictions set forth in this Protective Order, when Designated Material is used at a deposition, witnesses may not retain copies of any Designated Material used or reviewed at a deposition and may not take out of the deposition room any exhibit that is marked CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY, except in the case of:  (i) an Outside Consultant serving as an expert witness and who is bound by the terms of the Protective Order, or (ii) a witness from a Producing Party that is otherwise authorized to see Designated Material from his/her own Producing Party.

(d)     All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court that have been designated as Designated Material, or which contain information so designated, shall be filed under seal in a manner prescribed by the Court for such filings.

(e)     Outside Counsel of record for the parties are hereby authorized to be the persons who may retrieve confidential exhibits and/or other confidential matters filed with the Court upon termination of this litigation without further order of this Court, and are the persons to whom such confidential exhibits or other confidential matters may be returned by the Clerk of the Court, if they are not so retrieved.  No material or copies thereof so filed shall be released except by order of the Court, to outside counsel of record, or as otherwise provided for hereunder.

(f)     Designated Material shall not be copied or otherwise produced by a receiving party, except for transmission to qualified recipients, without the written permission of the producing party, or, in the alternative, by further order of the Court.  Nothing herein shall, however, restrict a qualified recipient from making working copies, abstracts, digests and analyses of CONFIDENTIAL and HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY information for use in connection with this litigation and such working copies, abstracts, digests and analyses shall be deemed Designated Material under the terms of this Order.  Further, nothing herein shall

restrict a qualified recipient from converting or translating CONFIDENTIAL and HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY information into machine readable form for incorporation into a data retrieval system used in connection with this action, provided that access to that Designated Material, in whatever form stored or reproduced, shall be limited to qualified recipients.

 (g)    A Party shall provide a minimum of two business days' notice to the producing party in the event that a party intends to use any Designated Material during trial.  In addition, the parties will not oppose any request by the producing party that the courtroom should be sealed, if allowed by the Court, during the presentation of any testimony relating to or involving the use of any Designated Material.

18.    Stipulations or Additional Relief from the Court

The Parties may, by stipulation, provide for exceptions to this Protective Order.  Nothing in this Protective Order shall be deemed to preclude any Party from seeking and obtaining, on an appropriate showing, additional protection with respect to the confidentiality of Material or relief from this Protective Order with respect to particular Designated Material.

19.    Destruction or Return of Designated Material

Unless otherwise ordered or agreed in writing by the Producing Party, within sixty (60) days after a final, non-appealable judgment or order, or the complete settlement of all claims asserted against all Parties in this action, each Receiving Party must return all Designated Material to the Producing Party or certify as to their destruction.  As used in this section "Designated Material" includes Designated Material and any derivatives therefrom including, but not limited to, all copies, abstracts, compilations, summaries, notes, or any other form of reproducing, referring to, or capturing any portion of the Designated Material, as well as all work product, pleadings, motion papers, communications with clients, legal memoranda, correspondence, trial transcripts and trial exhibits containing information from Designated Material, and all copies thereof, with the exception of copies stored on back-up tapes or other disaster recovery media.  With respect to pleadings, motion papers, hearing transcripts, trial transcripts and trial exhibits, counsel shall be entitled to retain an archival copy of such material.  With respect to any copy of Designated Material of a Producing Party or derivation thereof that remains on back-up tapes and other disaster storage media of a Receiving Party, such copies shall remain subject to this Protective Order and neither the Receiving Party nor its consultants, experts, counsel, or other person or entity acting on its behalf shall make copies of any such information available to any person for any purpose other than back-up or disaster recovery unless compelled by law and, in that event, only after thirty (30) days' prior notice to the Producing Party or such shorter period as required by court order, subpoena, or applicable law.  The Receiving Party's obligation to return or destroy Designated Material received from another Party extends to Designated Material the Receiving Party disclosed to others pursuant to this Protective Order.  Notwithstanding this provision, any destruction obligations under this Order shall not apply to electronically-stored information in archival form that are created for disaster recovery purposes and not used as reference materials in the ordinary course of a Receiving Party's business operations.  Whether the Designated Material is returned or destroyed, the Receiving Party must submit a written certification to the Producing Party (and, if not the same person or entity, to the Designating

Party) by the sixty (60) day deadline that affirms the return or destruction of the Designated Materials.

20.     Injunctive Relief

The Parties acknowledge that any breach of this Protective Order may result in immediate and irreparable injury for which there is no adequate remedy at law.  If anyone violates or threatens to violate the terms of this Protective Order, the Parties agree that the aggrieved Party may immediately apply to obtain injunctive relief against any such violation or threatened violation, and if the aggrieved Party does so, any respondent who is subject to the provisions of this Protective Order may not employ as a defense that the aggrieved Party possesses an adequate remedy at law.

21.     Survival of Order

The terms of this Protective Order shall survive the final termination of this action to the extent that any Designated Material is not or does not become known to the public.  This Court shall retain jurisdiction over this action for the purpose of enforcing this Protective Order.  Each Party hereby consents to the personal jurisdiction of the Court for that purpose.

22.     Treatment Prior to Entry of Order

Each Party agrees to be bound by the terms of this Protective Order as of the date it executed the Order below, even if prior to entry of the Order by the Court.

23.     Designated Material Subpoenaed in Other Litigation

If a Receiving Party is served with a subpoena requesting disclosure of any Designated Material, the Receiving Party must so notify the Producing Party (and, if not the same person or entity, the Designating Party) in writing (by hand delivery, fax, or email) promptly and in no event more than ten (10) business days after receiving the subpoena.  Such notification must include a copy of the subpoena.  The Receiving Party also must immediately inform in writing the Party who caused the subpoena to issue that some or all of the material covered by the subpoena is subject to this Protective Order.  In addition, the Receiving Party must deliver a copy of this Protective Order promptly to the Party in the other action that caused the subpoena to issue.  The purpose of imposing these duties is to alert the interested parties to the existence of this [Stipulated] Protective Order and to afford the Producing or Designating Party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena issued.  The Designating Party shall bear the burdens and the expenses of seeking protection in that court of its Designated Material.  Nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

24.     Non-Party Use of This Protective Order

        (a)     A nonparty producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information as Designated Material pursuant to the terms of this Protective Order.

14

(b)      A nonparty's use of this Protective Order to protect its Designated Material does not entitle that nonparty access to the Designated Material produced by any party in this case.

25.      Other Proceedings

By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY pursuant to this Order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

26.      Post-Complaint Communications

No Party named in EON's original complaint in Civil Action No. 1:10-cv-00812 (RGA) shall be required to record on a privilege log any communication that occurred after September 23, 2010. No Party named in any subsequent complaint in Civil Action No. 1:10-cv-00812 (RGA) shall be required to record on a privilege log any communication that occurred after the filing of the complaint in which the Party was named.

27.      Outside Counsel's Communication with Client

Nothing in this Protective Order shall preclude or impede Outside Counsel's ability to communicate with or advise its client based on its review and evaluation of Designated Materials produced by another Party, provided that such communications or advice shall not disclose or reveal the substance or content of Designated Materials in violation of this Protective Order.

28.      Interpretation

Should the Parties have any issues concerning the interpretation of this Protective Order, before any Party moves for the Court's assistance, they shall first endeavor to promptly meet and confer to resolve the dispute.  The headings used in this Protective Order are supplied for convenience only and shall not be taken into account in the interpretation of this Protective Order.

29.      No Probative Value

The Protective Order shall not aggregate or diminish any contractual, statutory, or other legal obligation or right of any Party or person with respect to any Designated Material.  The fact that information is designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY under this Protective Order shall not be deemed to be determinative of what a trier of fact may determine to actually be CONFIDENTIAL or HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY information.  This Protective Order shall be without prejudice to the right of any Party to bring before the Court questions regarding (i) whether any particular material is or is not properly designated or (ii) whether any particular information or material is or is not entitled to a greater or lesser degree of protection under the terms of this Protective Order, provided that in doing so, the Party complies with the procedures

set forth herein.  The fact that any information is disclosed, used, or produced in any court proceeding in this case or cases between same Parties shall not be offered in any action proceeding before any court, agency, or tribunal as evidence of or concerning whether or not such information is admissible, confidential, or proprietary.

30.     Testifying Experts

Testifying experts shall not be subject to discovery of any draft of their reports in this case and such draft reports, notes, outlines, or any other writings leading up to an issued report(s) in this litigation are exempt from discovery.  In addition, all communications between counsel for a party and that party's testifying expert, and all materials generated by a testifying expert with respect to that person's work, are exempt from discovery unless they relate to the expert's compensation or identify facts, data or assumptions relied upon by the expert in forming any opinions in this litigation and such information is not already disclosed in the expert's report.

31.     Enforcement

The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Agreed Protective Order.  After termination of this litigation, the provisions of this Agreed Protective Order shall continue to be binding except with respect to those documents and information that become a matter of public record.  This Court retains and shall have continuing jurisdiction over the parties and recipients of the Designated Material for enforcement of the provision of this Agreed Protective Order following termination of this litigation.  All disputes concerning Designated Material produced under the protection of this Agreed Protective Order shall be resolved by the United States District Court for the District of Delaware.

**EXHIBIT A**

**AGREEMENT TO BE BOUND BY PROTECTIVE ORDER**

_____ declares that:

I reside at _____ in the city of _____,

county of _____, state of _____.

I am currently employed by _____ located at _____,

and my current job title is _____.  I have

read and understand the terms of the Stipulated Protective Order filed in Civil Action No. 1:10-

cv-00812 (RGA), pending in the United States District Court for the District of Delaware.  I

agree to comply with and be bound by the provisions of the Stipulated Protective Order.  I

understand that any violation of the Stipulated Protective Order may subject me to sanctions by

the Court, civil liability, criminal liability, or any combination of the above.  I submit myself to

the jurisdiction of the United States District Court for the District of Delaware for the purpose of

enforcing or otherwise providing relief relating to the Protective Order.

I agree to abide by the terms set forth as follows:

I shall not divulge any materials, or copies of materials, designated CONFIDENTIAL or

HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY obtained in accordance with

the Stipulated Protective Order, or the contents of such materials, to any person other than those

specifically authorized by the Stipulated Protective Order.  I shall not copy or use such materials

except for the purposes of this litigation and in accordance with the terms of the Stipulated

Protective Order.

As soon as is practical, but no later than thirty (30) days after final termination of this

litigation, I shall return any Materials in my possession designated CONFIDENTIAL or

17

HIGHLY CONFIDENTIAL—OUTSIDE COUNSEL EYES ONLY to the attorney from whom I

received such Materials.  I shall also return to that attorney, at that time, all copies, excerpts,

summaries, notes, digests, abstracts, and indices relating to such Materials.

I have read and understand the terms of the "Prosecution and Development Bar" section

of the Stipulated Protective Order, and I agree to be bound by the terms of the "Prosecution and

Development Bar" section of the Stipulated Protective Order.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on  _____        _____
                    Date                                Signature

EXHIBIT B

1

<pre>
09:14:13  1                 IN THE UNITED STATES DISTRICT COURT

          2                 IN AND FOR THE DISTRICT OF DELAWARE

          3                         - - -
              BRITISH TELECOMMUNICATIONS PLC,      :
          4                                        :     CIVIL ACTION
                        Plaintiff,                 :
          5   v                                    :
                                                   :
          6   GOOGLE INC.,                         :
                                                   :     NO. 11-1249-LPS
          7            Defendant.                  :
                                                 - - -
          8
                                       Wilmington, Delaware
          9                          Friday, August 31, 2012
                                       Telephone Conference
         10
                                            - - -
         11
              BEFORE:          HONORABLE LEONARD P. STARK, U.S.D.C.J.
         12
              APPEARANCES:                 - - -
         13

         14              YOUNG CONAWAY STARGATT & TAYLOR, LLC
                         BY:  MELANIE K. SHARP, ESQ.
         15
                              and
         16
                         PROSKAUER ROSE, LLP
         17              BY:  JOON R. YOON, ESQ., and
                              ROBERT MAYER, ESQ.
         18              (New York, New York)

         19                      Counsel for British
                                 Telecommunications, PLC
         20

         21              MORRIS NICHOLS ARSHT & TUNNELL, LLP
                         BY:  JACK B. BLUMENFELD, ESQ., and
         22                   PAUL SAINDON, ESQ.

         23                   and

         24

         25                          Brian P. Gaffigan
                                     Registered Merit Reporter
</pre>

2

```
1    APPEARANCES:  (Continued)

2

3              WHITE & CASE, LLP
          BY:  KEVIN X. McGANN, ESQ., and
4                JOHN P. SCHEIBELER, ESQ., and
               ROBERT E. COUNIHAN, ESQ.
5               (New York, New York)

6                      Counsel for Google, Inc.

7

8

9

10

11

12                         - oOo -

13               P R O C E E D I N G S

14          (REPORTER'S NOTE:  The following telephone

15    conference was held in chambers, beginning at 10:03 a.m.)

16          THE COURT:  Good morning, everybody.  This is

17    Judge Stark.  Who is on the line, please?

18          MR. SAINDON:  Good morning, Your Honor.  For

19    Google, this is Paul Saindon and Jack Blumenfeld from Morris

20    Nichols; and with us are John Scheibler, Kevin McGann and

21    Robert Counihan.

22          THE COURT:  Okay.

23          MR. SQUIRE:  Good morning, Your Honor.  This is

24    Monte Squire from Young Conaway.  I'm also joined by Melanie

25    Sharp.  We're for plaintiff British Telecommunications; and
```

3

```
1    my co-counsel is also on the line, Joon Yoon and Robert

2    Mayer of Proskauer Rose in New York.

3          THE COURT:  Okay.  Thank you very much.

4          I have my court reporter with me.  For the

5    record, it is our case of British Telecommunications PLC

6    versus Google Inc., Civil Action No. 11-1249-LPS.  We're

7    here to discuss just what I understand to be the one dispute

8    over the proposed protective order relating to prosecution

9    bar and the reexamination.  Since we received Google's

10    letter first, we'll hear first from Google.

11          MR. BLUMENFELD:  Your Honor, John Scheibler from

12    White & Case is going to do the presentation for Google.

13          THE COURT:  Okay.  That's fine.

14          MR. SCHEIBLER:  Thank you, Your Honor.  This is

15    John Scheibler from White & Case.  Thank you for taking the

16    time to discuss the issue that has been briefed in our

17    letter briefs.

18          First, let me start by saying Google acknowledges

19    it has the burden of showing good cause for the issuance of

20    a protective order with the particular prosecution bar that

21    Google seeks.  The parties here don't dispute that a protective

22    order is needed for the protection of confidential information

23    produced in the case.  The dispute, as he just said, concerns

24    the prosecution bar.

25          The protective order as currently drafted has a
```

4

```
1    provision that says confidential information produced in the

2    case "may be used only for purposes of this litigation."

3    That provision is agreed upon.

4          As Deutsche Bank states, there are certain

5    circumstances where not even the most rigorous efforts of an

6    attorney who receives confidential information can be enough

7    to protect that confidential information from inadvertent

8    use or inadvertent disclosure.

9          In other words, there are certain circumstances

10    where it is basically very difficult for the human mind to

11    compartmentalize and selectively suppress information that

12    runs during the course of the information, no matter how

13    well intentioned the effort is made to do so.

14          We think here that the circumstances in this

15    case are in line with this language that is from Deutsche

16    Bank.  We have here six patents in suit.  Three of the

17    patents are in reexam, reexam initiated by Google.

18          With the ideas of Deutsche Bank in mind, Google

19    proposed a protective order and a prosecution bar that we

20    believe is narrowly tailored to meet the risks associated

21    with this and also to address the concerns raised by BT.

22          First, let me say that the prosecution bar only

23    applies to documents that are marked "confidential nonpatent

24    prosecution counsel."  With respect to reexams of the patents

25    in suit, the prosecution bar as proposed by Google permits
```

5

```
1    BT's trial counsel to discuss with separate counsel any of

2    the prior art raised during the reexam.  The prosecution bar

3    raised by Google also permits BT's trial counsel to forward to

4    separate counsel any confidential prior art to that separate

5    counsel in order to satisfy the duty of disclosure before the

6    PTO.

7          Where we begin to differ is that Google's

8    proposal would not permit BT's trial counsel to participate

9    in a claim drafting or amendment to the claims involved in

10    reexam of the patents in suit.

11          Now, Google believes that its prosecution bar

12    is narrowly tailored to give BT's counsel the ability to

13    participate in the prior art aspects of the reexamination,

14    yet it still prevents the possible inadvertent use or

15    disclosure of that information in the reexam proceedings.

16          We are of the position that once a BT trial

17    counsel attorney reviews confidential information, it is

18    simply not possible for that attorney to compartmentalize

19    that information, that is, to send to the other side his or

20    her brain or desk and then work on claims involved in the

21    reexam.  We think, on behalf of Google, that the prosecution

22    bar is tailored to address this unacceptable risk, yet at

23    the same time it addresses the perceived prejudice alleged

24    by BT.

25          Now, BT argues a few points.  They argue
```

that Google's confidential information, that is its "not confidential nonpatent prosecution counsel" information would be basically irrelevant to the reexam.  If this were the case, and BT truly believed this, then BT should have no problem shielding certain attorneys from Google's information so those attorneys could work on the reexam.

BT also argues that Google's proposed prosecution bar is improper because during reexam, claims can only be narrowed with the limitations existing from the specification. Google disagrees.

While the statute admittedly prevents BT from enlarging scope during reexam, no doubt; here, however, BT alleges that the claims in suit are already infringed.  Even if BT narrows the claims during reexam, it would be impossible for the BT trial counsel attorney who has reviewed Google information to put such information to the side and then participate in that claim narrowing without referring to the knowledge he or she has gleaned from the Google confidential information.

In addition, BT argues that the prosecution bar is improper because BT will seek to preserve the broadest reason-able reading of the claims regardless of inside gleanings from Google's confidential information.

We disagree.  BT may well continue to seek broad claims in the reexam, maybe through some independent claims,

---

7

---

but it could also seek narrower claims, perhaps through some dependent claims where they add limitations to distinguish the prior art in the reexam, yet they do so in a strategic way based on information that they gained from the confidential information.

Now, we believe that the prosecution bar asserted by Google would not unfairly prejudice BT.  BT's trial counsel states in its correspondence to the judge that it is handling reexams for BT, and in that correspondence, the evidence is that it is working on response to an Office Action in one of the cases.

The file to the Patent Office seems to indicate something else.  While there is very little information or correspondence in the reexam currently, what I do see is that Nixon Vanderhye has received correspondence, and Nixon Vanderhye, in all three cases, has filed a change of address to update the Patent Office with Nixon Vanderhye's current address.  In one of the cases, Nixon Vanderhye has also participated in an interview with the examiner, albeit a very preliminary interview, asking whether the examiner was asking if BT wanted a preliminary response from one of the reexams.

Now, Nixon Vanderhye is the patent firm that prosecuted the patents in suit and is involved in, from what I can tell, the prosecution of numerous BT applications.  Of

---

the 200 or so that published in the last year, patented U.S. publications, it appears that Nixon Vanderhye is the agent of record on over 150 of those.

I also just want to point out that for reexams and reissues, I did some research to see if BT's trial counsel has, in fact, represented BT in any reexams or reissues.  I have been unable to find such.  I did find a reissue from 2009 where BT was represented by Nixon Vanderhye and several reexaminations from early in the 2000 time period where BT was represented by Nixon Vanderhye.

In any event, even if BT's trial counsel is participating in reexam, we believe that trial counsel Proskauer Rose is well resourced and can assign certain attorneys to handle the reexam without reviewing Google's confidential nonpatent prosecution material.

THE COURT:  Mr. Scheibler, let me ask you a few questions.

MR. SCHEIBLER:  Sure.

THE COURT:  Is it your contention that participating in drafting amendments to claims in reexams is competitive activity?

MR. SCHEIBLER:  We believe it is, Your Honor.

THE COURT:  In this particular case, is there any showing you can make or even any particular argument you can articulate that there isn't any incentive for BT

---

9

---

to engage in this type of narrowing of claims that you speculate they might try to do in the reexam?

MR. SCHEIBLER:  Certainly.  We think, Your Honor, that one possible example of this is they look at prior art raised in the reexam.  They will attempt to distinguish it and, in attempting to distinguish it, they will necessarily have in the back of their mind the information they've gleaned from Google's confidential documents and will thereafter strategically draft the claim so it distinguishes the prior art, yet still provides BT with an infringement allegation against Google's product.

THE COURT:  I understand the concept as a hypothetical matter, but I'm wondering if you can make any representation even as to why they might actually do that here because in doing that, they would, of course, be narrowing the scope of their property right in the patent claims.  While they still may have a valid case against you, presumably at least at the margins, they would be giving up some enforcement right against others that they might otherwise have.

MR. SCHEIBLER:  I envision a circumstance where they narrow one claim so they can assert it against us and protect it against the prior art, yet still possibly diffuse a noninfringement defense that we might otherwise have, yet they can continue to keep a broader claim in the reexam to

---

10

1    assert against the rest of the world.

2            THE COURT:  Do you know if they're currently

3    trying to enforce any of these claims against anybody else?

4            MR. SCHEIBLER:  I do not, Your Honor.

5            THE COURT:  They cite to this recent decision,

6    *Amaranth*, from the Southern District of California that

7    surveyed the law here and found "near unanimous support

8    against extending a prosecution bar to cover reexaminations."

9    What do you say to that?

10           MR. SCHEIBLER:  I believe the *Amaranth* case was

11   not limited to the protective order, and the prosecution bar

12   there was not limited to the patents in suit.

13           In any event, if I recall it correctly, Your

14   Honor, what proposing we're is not a total lockout of BT's

15   trial counsel on these reexams.  We just don't want the

16   circumstance where they are forced to break apart information

17   they get from our documents and try to break apart the

18   information they received from our documents in their efforts

19   in claim drafting during reexam, something that is possible.

20           THE COURT:  As you acknowledge, Google initiated

21   these reexams.  Is that a factor I should consider, that you

22   essentially opened up that second battlefront and you want

23   to be able to participate in it while your friends on the

24   other side will only have limited participation?

25           MR. SCHEIBLER:  Yes.  BT's trial counsel ends

11

1    their letter by saying there is a concern about policy that

2    would encourage defendant to file reexams while excluding

3    plaintiff's counsel from participating in the reexams; and

4    they point to the fact that Google filed the reexam here.

5            Again, Your Honor, we are not trying to exclude

6    them entirely from the reexams, which I think is the instance

7    in many of these cases.  We are permitting them -- excuse me.

8    We are permitting BT's trial counsel to consult with separate

9    counsel for the purpose of distinguishing the prior art.

10           THE COURT:  All right.  Thank you.  Let me hear

11   from British Telecommunications now, please.

12           MR. YOON:  Thank you, Your Honor.  This in Joon

13   Yoon from Proskauer Rose representing BT.

14           Basically, the way we see this is that this is

15   simply Google's litigating strategy to basically tie our

16   hands as much as possible to prevent us from effectively

17   prosecuting this lawsuit on the merits.  Google is trying to

18   do this even though it means causing harm to BT that far

19   outweighs any potential risk that may arise as a result of

20   BT's trial counsel having access to Google's confidential

21   information in the context of reexams.

22           Google argues that because BT's trial counsel

23   will be allowed to review prior art under its proposal, will

24   suffer only a little prejudice, but this is really not true.

25   In reexams, we'll first try to distinguish prior art to

12

1    preserve the claims so that we don't have to make any

2    amendments and come out of the reexams untouched.

3            But if we actually do find that certain claims

4    are invalid over cited prior art, then we'll be forced to

5    make amendments to preserve what is left in the claims in

6    the broadest way possible.

7            The fact that Google actually requested for the

8    reexam in the first place indicates to us that Google must

9    believe that at least some claims are invalid over prior art

10   that they cited, but it's probably more likely than not that

11   we'll be forced to amend the claims.  If we were prevented

12   from doing so, we'll be pretty much not participating in the

13   reexams in any meaningful way.  So we believe Google's

14   argument that will suffer only a little prejudice lacks much

15   merit because of that.

16           Also, Google tries to meet its burden to show

17   good cause by arguing that if we're given access to their

18   confidential information, then we will somehow voluntarily

19   and unnecessarily give up claim scope just to capture

20   Google's products although giving up claim scope would

21   otherwise be perfectly patentable.  Like you pointed out,

22   Your Honor, this is despite the near unanimous case law

23   across different jurisdictions that are against extending

24   prosecution bar to cover reexaminations period because

25   reexams only narrow claims and never broaden it.  Basically,

13

1    in other words, during reexams of the patents in suit, we're

2    only allowed to narrow the claim scope but never to broaden it.

3            So to the extent that Google is worried about

4    inadvertent disclosures of its confidential information

5    being used by BT to capture Google's products during reexam,

6    the fact is that Google's products that do not infringe the

7    original claims can never infringe claims that come out of

8    the reexam.  Also, any patentee, BT included, will most

9    always try to preserve the broadest possible claim scope

10   during reexam, irrespective of whatever information that may

11   be gained from looking at the defendant's documents.

12           In terms of the harm that can be caused to

13   BT, first of all, BT had already chosen trial counsel to

14   participate in the reexam that are filed by Google, to

15   handle the substantive aspects of them because BT's counsel

16   had the most knowledge and expertise about the patents and

17   also their prior art from the long time period that we spent

18   preparing for the current lawsuit.  To force BT to choose

19   alternate counsel to handle the reexam who are much less

20   knowledgeable about the patents, that will increase the

21   costs and also duplicates efforts.

22           More importantly, Google already filed for

23   this reexam some months ago, and the PTO had already issued

24   Office Action here.  Our response to the first Office

25   Action, the '515 patent, is actually due in less than two

14

1    weeks.  So although we have a little more time to respond
2    to the other Office Actions, they're coming up in a month or
3    two as well.
4            Of course, we've been already handling the
5    substantive aspects of the reexam so far, and we're doing
6    this even without having to see any documents from Google.
7    And to force BT to choose ultimate counsel to handle the
8    reexams at this point, it's almost impossible to effectively
9    handle the Office Actions in time.
10           THE COURT:  All right.
11           MR. YOON:  That is about it from the plaintiff,
12   Your Honor.
13           THE COURT:  Let me ask you a few questions.
14           First, on that current Office Action response that
15   your trial counsel is working on or at least involved in, I
16   think you just pointed out, of course, since there is no
17   protective order in place yet, none of you on the plaintiff's
18   side have received or reviewed any of defendant's confidential
19   information of the type that would, if I go with what Google
20   has proposed, prevent you from participating in some portions
21   of the reexamination.  Is that correct, factually?
22           MR. YOON:  That's correct, Your Honor.
23           THE COURT:  Let's talk about your contention
24   that if I go with what Google has proposed, trial counsel
25   will not be able to meaningfully participate in the reexam.

16

1    strong infringement case, and making a calculated assessment
2    that they could still go after others in the industry either
3    with their narrowed claim or with the ones that they choose
4    not to narrow.  At least conceptually, isn't that something
5    that could occur?
6            MR. YOON:  Right.  Your Honor, that could occur,
7    but still it's a very hypothetical situation.  BT would
8    certainly try to preserve the claims as broadly as possible
9    without any regards to what we see from Google's document.
10           To the extent that Google is worried about for
11   some reason us capturing their product through reexam, that
12   we're subject to infringement, there is this concept of
13   intervening rights that can kick in to prevent Google from
14   suffering any inequitable harm.  And my colleague Rob Mayer
15   may be better able to explain that aspect.
16           THE COURT:  Yes, let's have him do that.
17           MR. MAYER:  Thank you, Your Honor.  It's 35 U.S.C.
18   Section 307 which talks about reexamination.  Section B says
19   that the proposed amended or new claims determined to be
20   patentable will have the same effect as that specified in
21   Section 252 of this title.  That's a reference in the concept
22   of reexams back to the intervening rights which are applicable
23   in reissues.  For existing products, if a claim is changed and
24   winds up becoming valid, the intervening rights concept said
25   it would not apply to any existing product at that time.  Even

15

1    I tried to, of course, listen carefully to both sides and
2    as Google portrays it, you could have ongoing, it seems
3    like, meaningful participation by conferring with outside
4    prosecution counsel, as I understand it, even as BT may be
5    pursuing amendments but you could not participate in any
6    discussions about whether to pursue amendments or what type
7    of amendments they would be but you could provide your
8    ongoing expertise about the prior art itself.
9            Is that not your understanding, Mr. Yoon, of
10   what Google is proposing?
11           MR. YOON:  That is also my understanding, Your
12   Honor, but that is only the half of the process during reexam.
13   The other half only involve amendments if we do find that
14   certain claims are actually invalid over prior art.  What
15   Google proposes limits our ability to basically prosecute
16   half of the reexamination process at the minimum.
17           THE COURT:  Well, talk about this concept of
18   strategic narrowing and possibly a patentee might even, yes,
19   voluntarily give up some claim scope even, say, on just one
20   claim but not on others, knowing that they actually will or
21   at least believe they will strengthen their case, a current
22   ongoing case, by making the amended narrower claim less
23   vulnerable to an invalidity attack while knowing, because
24   in possession of the confidential information about how the
25   defendant's system works, knowing that they still have a

17

1    if you have this hypothetical problem, which is a very small
2    probability, there would be no harm for that class of product.
3            THE COURT:  That class being, again?
4            MR. MAYER:  The class of product being products
5    that exist, pre-existing product.  And even the concept of
6    equitable intervening rights for products going forward,
7    that would depend on the situation.
8            THE COURT:  Is there anything further from BT?
9            MR. YOON:  That's about it from us, Your Honor.
10           THE COURT:  Let me hear again from Google,
11   please.
12           MR. SCHEIBLER:  Your Honor, on the last point,
13   the intervening rights would not apply to products in
14   substantial preparation.  It could very well be the case
15   that Google's confidential information includes information
16   regarding ongoing research.  I don't know what all the
17   document production and other information or depositions will
18   lay out.  I don't know about the intervening rights with
19   respect to ongoing products and services under development.
20           THE COURT:  Mr. Scheibler, does that mean you
21   acknowledge that in the scenario that you have sketched out,
22   if it were to occur, this sort of strategic narrowing amendment,
23   that would get Google off the hook for all products that do
24   exist, indisputably exist prior to the amendment?
25           MR. SCHEIBLER:  I don't think so, Judge, because

18

1  intervening rights law is very variable.  Claims may be
2  narrowed in one way, broadened in other ways.  It's a case
3  by case basis.  You have to look at the claims and see
4  exactly what occurred during the reexam prosecution.  I can
5  envision instances where the claims are narrowed in such a
6  way that a court finds that BT alleges that intervening
7  rights don't apply.
8       THE COURT:  If I heard Mr. Yoon correctly, he
9  has asserted that his client will definitely attempt, if it
10  seeks amendments, it will definitely attempt to seek only
11  the broadest claims that it can possibly get.  Do I have any
12  reason that I could reject or even question that assertion?
13       MR. SCHEIBLER:  Well, my concern is that they will
14  narrow the claims in such a way so that it does not diffuse
15  their infringement allegations.  But the greater question, the
16  more important question is can they even work on amendments
17  to the claims and compartmentalize the information they've
18  learned from Google, Google's nonpatent prosecution counsel
19  documents?  And we believe that is simply not possible.  And
20  we believe that the prosecution bar we propose is really the
21  most meaningful way to address that situation, yet give trial
22  counsel the ability to discuss with reexam counsel the prior
23  art.
24       THE COURT:  Is there anything else you wanted to
25  respond to, Mr. Scheibler?

19

1       MR. SCHEIBLER:  I believe that is all.  I think
2  all the other points I responded to in my opening, Your
3  Honor.
4       THE COURT:  All right.
5       MR. SCHEIBLER:  Unless you have any specific
6  questions.
7       THE COURT:  No, I think you have answered them.
8  Thank you.
9       Well, here is where we are.  On the issue, I do
10  view it as a very narrow issue.  In my view, there is
11  authority on both sides of this issue.  In my view, that
12  shows that the Federal Circuit's *Deutsche Bank* test will
13  sometimes be met and sometimes not met and oftentimes it
14  will depend on the circumstances.
15       Here, in my view, after having carefully
16  considered what you all submitted and heard the argument
17  today, I do believe that the good cause standard is met and
18  the Court will adopt defendant Google's proposal here with
19  respect to the reexam prosecution bar.
20       I do agree with the defendants that what they
21  have proposed is very narrowly tailored.  While it limits
22  the participation of BT's trial counsel in the reexamination,
23  it still allows meaningful participation by BT's trial
24  counsel in the reexamination even during a time frame in
25  which, if it should happen, BT decides to pursue amendments

20

1  in the reexamination process.
2       BT will always have the option of having some
3  trial counsel not be exposed I suppose to the material that
4  Google produces that triggers this prosecution or reexamination
5  bar.  And even for those trial counsel that are exposed to
6  that material produced by Google, I believe the bar here is
7  narrowly tailored enough so there will still be some
8  possibility of meaningful participation by such BT trial
9  counsel in reexamination.  They just cannot participate in
10  the competitive decision making -- and I do view it as that,
11  under these circumstances, "the competitive decision making"
12  -- of pursuing amendments and devising what amendments those
13  would be.
14       As I say, good cause has been shown.  I do think
15  that this concept of strategic narrowing of patent claims at
16  last as a theoretical concept exists.  I can see circumstances,
17  and it appears to me that they may be present here, in which
18  a patentee, knowing the detailed technical information as to
19  how an accused system or device works, knows that or has as
20  much confidence as one can ever have that they have a strong
21  infringement case against that accused product and knows
22  that they can afford to narrow their patent scope and still
23  have the strength of that infringement case and yet actually
24  strengthen the patent claim against some prior art that it's
25  facing in a reexam.

21

1       So notwithstanding the assertion today that BT
2  intends to, it means to pursue amendments in the ongoing
3  reexaminations here, that it will only seek the broadest
4  reasonable claims available, I think that those broadest
5  reasonable claims could run the risk of inadvertently being
6  shaped in BT's mind by its knowledge of its case against
7  Google, which is an ongoing case, and could give way to this
8  concept that I have outlined and that we have discussed.
9       There is the strategic possibility also, as
10  defense counsel points out, of narrowing only some or seeking
11  to narrow through amendments only some claims while keeping
12  others, hoping that others emerge from the reexam as broad as
13  possible, preserving thereby the patentee's rights to pursue
14  actions against others as well.
15       I have, in reaching my conclusion, balanced the
16  risks that I have just described against the potential harm to
17  BT from the prosecution bar that I will be imposing, and that
18  balance does not alter the conclusion here.  I acknowledge
19  that there will be some real prejudice to BT as a result of
20  this ruling, but in my view it's not substantial and does not
21  alter the overall balance.
22       It may well be that BT has to hire some
23  additional prosecution counsel, and that may well drive up
24  the overall costs on the BT side, but I have no indication
25  that BT cannot afford it or that in the circumstances of

22

1   this case, that will unduly prejudice BT's ability to pursue
2   enforcement of its patent rights.  And as I have already
3   pointed out as weighing heavily here is I do think that the
4   prosecution bar that I am imposing as proposed by Google
5   does permit meaningful participation by BT's current trial
6   counsel.
7         The concept of intervening rights has come up on
8   the phone.  I don't believe it was addressed in the parties'
9   letters.  All I can say at this point is that it sounds like
10   it may well have some application here, but it sounds like
11   it's not immediately obvious exactly how it would impact the
12   circumstances specifically here.  Again, the issue I don't
13   believe came up in the letters, and I have done my best to
14   weigh what you have put in front of me in giving you the
15   ruling that I have given.
16         So with all that, let me say my order is that
17   Google, on behalf of both parties, submit to the Court by
18   next Wednesday a version of the protective order that
19   reflects my ruling here.
20         I don't want to have any further argument but if
21   you do have any questions about what I have ruled, I'll do
22   my best to see if I can help you out.
23         First, is there anything from Google?
24         MR. SCHEIBLER:  No questions, Your Honor.  Thank
25   you.

23

1         THE COURT:  And from BT?
2         MR. YOON:  No questions, Your Honor.
3         THE COURT:  We'll look for your submission next
4   week.  Thank you all for your time.  Good-bye.
5         (Telephone conference at 10:39 a.m.)
6
7     I hereby certify the foregoing is a true and accurate
    transcript from my stenographic notes in the proceeding.
8
9               /s/ Brian P. Gaffigan
            Official Court Reporter
10            U.S. District Court
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EDWARDS LIFESCIENCES AG and      )
EDWARDS LIFESCIENCES LLC,        )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )      C.A. No. 08-91-GMS
                                 )
COREVALVE, INC. and,             )
MEDTRONIC COREVALVE, LLC         )
                                 )
          Defendants.            )
                                 )

## ORDER

At Wilmington, this 23rd day of February, 2011, having considered the protective order
(D.I. 38), the letters filed by the parties (D.I. 423, D.I. 425, and D.I. 427), and the parties'
assertions during the January 12, 2011 teleconference;

IT IS HEREBY ORDERED that Edwards' request that the court determine "that the
Protective Order (D.I. 38) does not preclude its technical expert (Dr. Nigel Buller) or trial
counsel (Paul Weiss) from participating in two patent reexamination initiated by" the defendants
is DENIED. The court finds that permitting Dr. Buller and Paul Weiss attorneys to participate in
the reexamination would create a high risk that confidential CoreValve/Medtronic information
would be used or disclosed. Edwards' retained reexamination counsel is, of course, permitted to
use the public record relating to this case in its reexamination responses, just as the defendants
used the public record when instituting the reexamination. Edwards may also have its attorneys
provide an authenticating declaration with respect to non-confidential litigation documents, just

as an associate with the defendants' trial counsel provided an authenticating declaration for the

public records referenced in their reexamination request. Beyond that, however, the court finds

that the risk of the use of confidential information and the harm that the defendants might suffer

as a result far outweighs the potential harm to Edwards of enforcing the prosecution bar in the

reexamination.[1]

CHIEF, UNITED STATES DISTRICT JUDGE

---

[1] Indeed, since the defendants have limited themselves to the use of the public record in making their reexamination arguments, the court does not perceive any prejudice or undue burden that could result from Edwards being similarly restricted in making its reexamination arguments.

2

EXHIBIT D



**uspto.GOV**

The United States Patent and Trademark Office
an agency of the Department of Commerce

**Patent Application Information Retrieval**

| Home | Patents | Trademarks | Other |
|------|---------|------------|-------|



**Patent eBusiness**

- Electronic Filing
- Patent Application Information (PAIR)
- Patent Ownership
- Fees
- Supplemental Resources & Support

**Patent Information**

Patent Guidance and General Info
- Codes, Rules & Manuals
- Employee & Office Directories
- Resources & Public Notices

**Patent Searches**

Patent Official Gazette
- Search Patents & Applications
- Search Biological Sequences
- Copies, Products & Services

**Other**

Copyrights
Trademarks
Policy & Law
Reports

**Patent Application Information Retrieval**

ⓘ Order Certified Application As Filed   Order Certified File Wrapper   View Order List

| 90/012,639 | SOFTWARE CONTROLLED MULTI-MODE INTERACTIVE TV SYSTEMS | EON0003-RE |
|------------|-------------------------------------------------------|------------|

| Select New Case | Application Data | Transaction History | Image File Wrapper | Continuity Data | Address & Attorney/Agent | Display References |

### Bibliographic Data

| | | | |
|---|---|---|---|
| Application Number: | 90/012,639 | Customer Number: | - |
| Filing or 371 (c) Date: | 09-14-2012 | Status: | Reexam -- Request Ready for Ex Parte Action |
| Application Type: | Re-Examination | Status Date: | 04-05-2013 |
| Examiner Name: | KISS, ERIC B | Location: ⓘ | ELECTRONIC |
| Group Art Unit: | 3992 | Location Date: | - |
| Confirmation Number: | 4792 | Earliest Publication No: | - |
| Attorney Docket Number: | EON0003-RE | Earliest Publication Date: | - |
| Class / Subclass: | 725/005 | Patent Number: | - |
| First Named Inventor: | 5663757 | Issue Date of Patent: | - |
| Entity Status: | Undiscounted | AIA (First Inventor to File): | No |

| Title of Invention: | SOFTWARE CONTROLLED MULTI-MODE INTERACTIVE TV SYSTEMS |
|---|---|

*If you need help:*

- *Call the Patent Electronic Business Center at (866) 217-9197 (toll free) or e-mail EBC@uspto.gov for specific questions about Patent Application Information Retrieval (PAIR).*
- *Send general questions about USPTO programs to the USPTO Contact Center (UCC).*
- *If you experience technical difficulties or problems with this application, please report them via e-mail to Electronic Business Support or call 1 800-786-9199.*



- Accessibility
- Privacy Policy
- Terms of Use
- Security
- Emergencies/Security Alerts
- Information Quality Guidelines
- Federal Activities Inventory Reform (FAIR) Act
- Notification and Federal Employee Antidiscrimination and Retaliation (NoFEAR) Act
- Budget & Performance
- Freedom of Information Act (FOIA)

- Department of Commerce NoFEAR Act Report
- Regulations.gov
- STOPIFakes.gov
- Department of Commerce
- USA.gov
- Strategy Targeting Organized Piracy (STOPI)
- Careers
- Site Index
- Contact Us
- USPTO Webmaster

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/012,639 | 09/14/2012 | 5663757 | LON0003-RE | 4792 |

67050        7590        11/15/2012

KASHA LAW LLC
14532 Dufief Mill Road
North Potomac, MD 20878

| EXAMINER |
|---|
| KISS, ERIC B |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 11/15/2012 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER

LLP

901 NEW YORK AVENUE, NW

WASHINGTON, DC  20001-4413

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/012,639*.

PATENT NO. *5663757*.

ART UNIT *3992*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/012,639 | 5663757 |
| | Examiner | Art Unit |
| | ERIC B. KISS | 3992 |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>14 September 2012</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,  b)☒ PTO/SB/08,  c)☐ Other: _____

1. ☒  The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐  The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

a) ☐ by Treasury check or,

b) ☐ by credit to Deposit Account No. _____,  or

c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

cc:Requester ( if third party requester )
U S Patent and Trademark Office
PTOL-471 (Rev. 08-06)               **Office Action in *Ex Parte* Reexamination**               Part of Paper No. 20121022

## ORDER GRANTING *EX PARTE* REEXAMINATION

A substantial new question of patentability affecting claim 7 of United States Patent 5,663,757 is raised by the request for *ex parte* reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 5,663,757 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/012,639                                                Page 3
Art Unit: 3992

## I.      Printed Publications Cited in the Request

The request cites the following prior art patents and printed publications as raising a

substantial new question of patentability (SNQ):

1.      U.S. Patent 4,928,177 ("Martinez '177");

2.      U.S. Patent 4,905,280 ("Wiedemer");

3.      U.S. Patent 5,479,268 ("Young et al.");

4.      U.S. Patent 5,144,663 ("Kudelski et al.");

5.      Viewtron Magazine & Guide, Miami Herald, November 1983, (Special

        Advertising Section) ("Viewtron"); and

6.      Intelmatique, French Telecommns. Admin., Bank on TELETEL VIDEOTEX.

        TELEBANKING from Corporate to Home Clients, An Appraisal by Intelmatique

        (1983) ("Intelmatique").

## II.      Prosecution History

U.S. Patent 5,663,757 issued from application 07/674,169, filed March 25, 1991.

Reexamination Control No. 90/011,695 concluded with the issuance of an *ex parte*

reexamination certificate on August 14, 2012, determining claims 1 and 7-10 of the '757 patent

to be patentable as amended and also determining dependent claims 2-6 to be patentable.

Reexam. Control No. 90/011,695, NIRC, 6/22/2012.

The examiner provided the following detailed reasons for finding the reexamined claims

patentable:

3)      Claims 1-10 are patentable over the prior art that was explained in the request and
determined to raise a substantial new question of patentability in the order granting
reexamination and over the prior art that was applied and discussed by the examiner in
the present reexamination proceeding because the art of record does not teach:

*means controlled by said replaceable software means operable with said operation control system for reconfiguring the operating modes by adding or changing features and introducing new menus.* (claim 1)

*means under control of said replaceable software means for indicating acknowledging of shipment of an order from a remote station coupled into said network of interactive subscriber stations in real time in response to a manual control purchase authorization transaction at said local subscriber's station.* (claim 7)

*means controlled by replaceable software means operable with said operation control system for reconfiguring the operating modes by adding or changing features and introducing new menus* (claim 8)

*means controlled by replaceable software means operable with said operation control system for establishing and controlling a mode of operation that records historical operating data of a local subscriber's data processing station, and reconfiguring the operating modes by adding or changing features and introducing new menus* (claim 9)

*means controlled by replaceable software means operable with said operator control system for establishing and controlling fiscal transactions with a further local station in said network of interactive communications, and means for establishing an accounting mode of operation for maintaining and reporting fiscal transactions incurred in the operation of the local subscriber's data processing station, and reconfiguring the operating modes by adding or changing features and introducing new menus* (claim 10)

4)    With regard to the Martinez and Palazzi references, as discussed in the original prosecution and this reexamination, these references did not disclose the features of the claims regarding the replaceable software means. For this reason, the references had to be combined with other references to reject the claims. Thus, the amended features that deal with the replaceable software means are clearly not disclosed by the Martinez and Palazzi references as shown by PO.

With regard to the Bush reference, as discussed in the Order this reference did not disclose the limitations regarding the replaceable software means as found in the original claims. For this reason, the reference had to be combined with other references to reject the claims. Thus, the amended features that deal with the replaceable software means are clearly not disclosed by Bush as shown by PO.

With regard to the Kudelski reference, the reference disclosed replaceable software means located at the subscriber station for storing at least one replaceable software control program defining authorized operating conditions for that station, and operating

means for programming said computer with said software control program to establish optional operating mode conditions authorized to said subscriber at the local data processing station as defined by the software control program (discussion of "PTVC" - Page 6 of Kudelski)" as found in the original claim 1. However, an examination of the teachings of the reference (see discussion of "PTVC" - Page 6 of Kudelski) shows that the PTVC does not have the capability to reconfigure the operating modes by adding or changing features and introducing new menus as required by claims 1 and 8-10. Additionally, there is no discussion in Kudelski regarding indicating acknowledging of shipment of an order as required by claim 7. Thus, the rejections based on combinations including Kudelski have been withdrawn.

With regard to the Wiedemer reference, the reference discloses a replaceable software means. However, an examination of the teachings of the reference shows that the replaceable software means of Wiedemer does not have the capability to reconfigure the operating modes by adding or changing features and introducing new menus as required by claims 1 and 8-10. Additionally, there is no discussion in Wiedemer regarding indicating acknowledging of shipment of an order as required by claim 7. Thus, the amended features that deal with the replaceable software means are clearly not disclosed by Wiedemer as shown by PO.

With regard to the Young reference, this reference discloses the dictating display patterns of the menus according to a selected theme as found in original claim 8. However, an examination of the teachings of the reference shows that Young does not teach replaceable software means that have the capability to reconfigure the operating modes by adding or changing features and introducing new menus as required by claims 1 and 8-10. Additionally, there is no discussion in Young regarding indicating acknowledging of shipment of an order as required by claim 7. Thus, the amended features that deal with the replaceable software means are clearly not disclosed by Young as shown by PO.

With regard to the Fenwick reference, much like the Young reference this reference discloses the dictating display patterns of the menus according to a selected theme as found in original claim 8. However, an examination of the teachings of the reference shows that Fenwick does not teach replaceable software means that have the capability to reconfigure the operating modes by adding or changing features and introducing new menus as required by claims 1 and 8-10. Additionally, there is no discussion in Fenwick regarding indicating acknowledging of shipment of an order as required by claim 7. Thus, the amended features that deal with the replaceable software means are clearly not disclosed by Fenwick as shown by PO.

As PO has overcome the teachings of Martinez, Palazzi, Bush, Kudelski, Wiedemer, Young, and Fenwick, any proposed combinations utilizing Martinez, Palazzi, Bush, Kudelski, Wiedemer, Young, and Fenwick are also overcome.

'695 Reexam., NIRC at 2-6.

### III.    Substantial New Questions of Patentability (SNQs)

**A.    The SNQ Requirement**

The Office may only grant a reexamination request if an SNQ affecting any claim of the

patent concerned is raised by the request, with or without consideration of other patents or

printed publications.  35 U.S.C. §§ 303(a) and 304.

The court in *Swanson* evaluated the scope of the SNQ requirement in reexamination,

extensively citing the legislative history of the original reexamination statute and the 2002

amendment:

"[I]n passing the original reexamination statute, Congress stated that 'this new procedure

will permit any party to petition the patent office to review the efficacy of a patent, subsequent to

its issuance, on the basis of new information about preexisting technology which may have

escaped review at the time of the initial examination of the patent application,' and explained

that the substantial new question requirement bars 'reconsideration of any argument already

decided by the office, whether during the original examination or an earlier reexamination.'" *In

re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008) (quoting H.R. Rep. No. 96-1307 (1980))

(emphasis omitted).  "[T]he substantial new question requirement 'guard[s] against simply

repeating the prior examination on the same issues and arguments' and bars 'a second

examination, on the identical ground that had previously been raised and overcome." *Id.* at 1380

(quoting *In re Recreative Technologies Corp.*, 83 F.3d 1394, 1396-97 (Fed. Cir. 1996)).  Further,

"[t]he issue raised must be more than just questioning the judgment of the examiner." *Id.*

(quoting H.R. Rep. No. 107-120 (2002)).  "[T]o decide whether a reference that was previously

considered by the PTO creates a substantial new question of patentability, the PTO should

evaluate the context in which the reference was previously considered and the scope of the prior

consideration and determine whether the reference is now being considered for a substantially

different purpose." *Id.*

A prior art patent or printed publication raises a substantial question of patentability

where there is a substantial likelihood that a reasonable examiner would consider the prior art

patent or printed publication important in deciding whether or not the claim is patentable, unless

the same question of patentability has already been decided as to the claim in a final holding of

invalidity by the Federal court system or by the Office in a previous examination.  MPEP § 2242.

Application/Control Number: 90/012,639                                        Page 8
Art Unit: 3992

**B.    Viewtron**

The request asserts that a substantial new question of patentability as to claims 1-6 and 8-

10 of the '757 patent is raised by Viewtron, (Request at 21-26).  The examiner <u>disagrees</u>.

Regarding claims 1-6 and 8, the request alleges that Viewtron discloses a "means

controlled by said replaceable software means operable with said operation control system for

reconfiguring the operating modes by adding or changing features and introducing new menus,"

(Request at 22). Regarding claim 9 and 10, the request alleges that Viewtron discloses

"reconfiguring the operating modes by adding or changing features and introducing new menus,"

(*id.*).

In support of these allegations, the request cites Viewtron at 10, asserting that the

Golier's Academic American Encyclopedia feature disclosed in Viewtron corresponds to a

claimed operating mode, (Request at 25-26).  The request further cites the description of this

encyclopedia as being "updated twice a year" as corresponding to the claimed "adding or

changing features and introducing new menus," because the updated content includes new facts,

"and necessarily does so by introducing a new menu that permits access and selections related to

such updated content," (*id.* at 26).  However, this inherency argument is flawed in that Viewtron

does not disclose for the Grolier's Academic American Encyclopedia feature any particular form

of menu dependent on the information content (the screenshot shows two menu options: (1)

"Look up a subject", and (2) "Help with Encyclopedia"), Viewtron at 10, and therefore the

request fails to provide a sufficient basis in fact and/or technical reasoning to reasonably support

the determination that the allegedly inherent characteristics (*i.e.*, introduction of new menus)

necessarily flow from the teachings of Viewtron (*i.e.*, mere updating of facts).

Accordingly, the request does not sufficiently show that there is a substantial likelihood

that a reasonable examiner would consider Viewtron important in deciding whether or not claims

1-6 and 8-10 of the '757 patent are patentable.

**C.      Young et al.**

The request asserts that a substantial new question of patentability as to claims 1-6 and 8-

10 of the '757 patent is raised by Young et al., (Request at 26-28).  The examiner <u>disagrees</u>.

Regarding claims 1-6 and 8, the request alleges that Young et al. discloses a "means

controlled by said replaceable software means operable with said operation control system for

reconfiguring the operating modes by adding or changing features and introducing new menus,"

(Request at 22). Regarding claim 9 and 10, the request alleges that Young et al. discloses

"reconfiguring the operating modes by adding or changing features and introducing new menus,"

(*id.*).

In support of these allegations, the request cites the grid TV guide feature disclosed in

Young et al. as corresponding to the claimed menus, (Request at 28).  The request further cites to

the description of updating the television schedule information and asserts that new channels or

new programs would correspond to adding or changing features, (*id.*).  Regarding the claimed

feature of "introducing new menus," the request asserts that "a new program note for a new

program corresponds to introducing a new menu in Young et al.," (*id.*).  However, it is unclear

how the program note, which appears to be an overlaid display of informational text, can be

considered a "menu," particularly when it is described as moving out of the way of the area of

the screen occupied by the cursor. *See* Young et al. at col. 6, lines 25-54.

Application/Control Number: 90/012,639                                           Page 10
Art Unit: 3992

Accordingly, the request does not sufficiently show that there is a substantial likelihood

that a reasonable examiner would consider Young et al. important in deciding whether or not

claims 1-6 and 8-10 of the '757 patent are patentable.

**D.    Martinez '177 in view of Viewtron**

      **i.    Martinez '177 in view of Viewtron as to claims 1-6**

The request asserts that a substantial new question of patentability as to claims 1-6 of the

'757 patent is raised by Martinez '177 in view of Viewtron, (Request at 28-31). The examiner

disagrees.

Regarding claims 1-6, the request alleges that Martinez '177 teaches "replaceable

software means… for storing at least one replaceable software program" and "operating means

for programming [a] computer with said software control program," (Request at 29). Although,

as the third party requester has noted, these features were apparently important to the

determination of patentability of independent claim 1 during the original prosecution, (*see id.*),

these features were apparently not considered important to the determination of patentability of

claim 1 during the previous reexamination, where the examiner maintained throughout the prior

proceeding that these features were taught by the applied prior art. *See, e.g.*, '695 Reexam,

Advisory Action, 5/1/2012, pp. 4-10, 15.

Accordingly, the request does not sufficiently show that there is a substantial likelihood

that a reasonable examiner would consider Martinez '177 in view of Viewtron important in

deciding whether or not claims 1-6 of the '757 patent are patentable.

### ii.      Martinez '177 in view of Viewtron as to claim 7

The request asserts that a substantial new question of patentability as to claim 7 of the

'757 patent is raised by Martinez '177 in view of Viewtron, (Request at 31-32).  The examiner

agrees.

For reasons set forth in the request, Martinez '177 in view of Viewtron appears to teach

the features that were apparently important to patentability of claim 7 of the '757 patent at the

conclusion of the prior reexamination proceeding, *i.e.*, ""means under control of said replaceable

software means for indicating acknowledging of shipment of an order from a remote station

coupled into said network of interactive subscriber stations in real time in response to a manual

control purchase authorization transaction at said local subscriber's station," (*see* Request at 31-

32 (citing Martinez '177 at col. 5, lines 12-40; Viewtron at 2, 6)).  Accordingly, the request

sufficiently shows that there is a substantial likelihood that a reasonable examiner would

consider Martinez '177 in view of Viewtron important in deciding whether or not claim 7 of the

'757 patent is patentable.

### iii.     Martinez '177 in view of Viewtron and Young et al. as to claim 8

The request asserts that a substantial new question of patentability as to claim 8 of the

'757 patent is raised by Martinez '177 in view of Viewtron and Young et al., (Request at 32-37).

The examiner disagrees.

Regarding claim 8, the request alleges that Martinez '177 in view of Viewtron and Young

et al. teaches "means establishing a first menu directed to different interactively selectable

program theme subsets... and means for causing selected themes to automatically display a

second menu displaying available television programs relating to that selected theme. means

responsive to said subscriber manual control means for selecting a preferred theme from said

different themes presented when said first menu is displayed on said screen, and means in said

control system for identifying on said second menu said television programs available relating to

the selected theme," (Request at 32). Although, as the third party requester has noted, these

features were apparently important to the determination of patentability of independent claim 8

during the original prosecution, (*see id.*), these features were apparently not considered important

to the determination of patentability of claim 8 during the previous reexamination, where the

examiner maintained throughout the prior proceeding that these features were taught by the

applied prior art. *See, e.g.*, '695 Reexam, Final Rejection, 1/25/2012, pp. 3-4.

Accordingly, the request does not sufficiently show that there is a substantial likelihood

that a reasonable examiner would consider Martinez '177 in view of Viewtron and Young et al.

important in deciding whether or not claim 8 of the '757 patent is patentable.

**E.     Martinez '177 in view of Wiedemer**

**i.     Martinez '177 in view of Wiedemer as to claims 1-7**

The request asserts that a substantial new question of patentability as to claims 1-7 of the

'757 patent is raised by Martinez '177 in view of Wiedemer, (Request at 38-40). The examiner

disagrees.

Regarding claims 1-7, the request alleges that Martinez '177 in view of Wiedemer

teaches "replaceable software means... for storing at least one replaceable software control

program" and "operating means for programming [a] computer with said software control

program, (Request at 38-40). Although, as the third party requester has noted, these features

were apparently important to the determination of patentability of claims 1-7 during the original

prosecution, (*see id.*), these features were apparently not considered important to the determination of patentability of claims 1-7 during the previous reexamination, where the examiner maintained throughout the prior proceeding that these features were taught by the applied prior art. *See, e.g.*, '695 Reexam, Advisory Action, 5/1/2012, pp. 4-10.

Accordingly, the request does not sufficiently show that there is a substantial likelihood that a reasonable examiner would consider Martinez '177 in view of Wiedemer important in deciding whether or not claims 1-7 of the '757 patent are patentable.

**ii.    Martinez '177 in view of Wiedemer as to claim 9**

The request asserts that a substantial new question of patentability as to claim 9 of the '757 patent is raised by Martinez '177 in view of Wiedemer, (Request at 40-42). The examiner disagrees.

Regarding claim 9, the request alleges that Martinez '177 in view of Wiedemer teaches "means controlled by replaceable software means operable with said operator control system for establishing and controlling a mode of operation that records historical operating data of the local subscriber's data processing station, (Request at 40-42). Although, as the third party requester has noted, these features were apparently important to the determination of patentability of independent claim 9 during the original prosecution, (*see id.*), these features were apparently not considered important to the determination of patentability of claim 9 during the previous reexamination, where the examiner maintained throughout the prior proceeding that these features were taught by the applied prior art and instead emphasized the "adding or changing features" and "introducing new menus" elements as being important to patentability. *See, e.g.*, '695 Reexam, Final Rejection, 1/25/2012, pp. 4-5.

Accordingly, the request does not sufficiently show that there is a substantial likelihood that a reasonable examiner would consider Viewtron important in deciding whether or not claim 9 of the '757 patent is patentable.

**F.    Kudelski et al.**

The request asserts that a substantial new question of patentability as to claims 5-7 of the '757 patent is raised by Kudelski et al., (Request at 43-44).  The examiner <u>disagrees</u>.

Regarding claims 5-7, the request alleges that Kudelski et al. discloses that "at least one replaceable software means comprises credit authorization data for payment for purchases authorized by said manual control purchase authorization means," as required by claims 5-7. (Request at 43-44).  However, the request does not provide an adequate explanation of why, in view of the prosecution history of the '757 patent, such a teaching would be considered new and important to a reasonable examiner in determining the patentability of claims 5-7.  Instead, the request appears to acknowledge that the teaching of Kudelski et al. is old or at least cumulative to teachings considered previously by the Office, and attempts to rely on a blanket statement that other new teachings from different references may be combined with Kudelski et al. to form an SNQ, (*see* Request at 43).  In such a case, it would be the other new teachings from different references that would potentially raise an SNQ and not the cited teaching of Kudelski et al., and to the extent that such other teachings have been explained in a proposed SNQ in other parts of the request, they have been addressed in other corresponding parts of this order.

Accordingly, the request does not sufficiently show that there is a substantial likelihood that a reasonable examiner would consider Kidelski et al. important in deciding whether or not claims 5-7 of the '757 patent are patentable.

Application/Control Number: 90/012,639                                    Page 15
Art Unit: 3992

### G.    Intelmatique

The request asserts that a substantial new question of patentability as to claim 10 of the

'757 patent is raised by Intelmatique, (Request at 44-46).  The examiner <u>disagrees</u>.

Regarding claim 10, the request alleges that Intelmatique discloses "means controlled by

replaceable software means operable with said operator control system for establishing and

controlling fiscal transactions with a further local station in said network of interactive

communications, and means for establishing an accounting mode of operation for maintaining

and reporting fiscal transactions incurred in the operation of the local subscriber's data

processing station," (Request at 44-46).  Although, as the third party requester has noted, these

features were apparently important to the determination of patentability of independent claim 8

during the original prosecution, (*see id.*), these features were apparently not considered important

to the determination of patentability of claim 10 during the previous reexamination, where the

examiner maintained throughout the prior proceeding that these features were taught by the

applied prior art and instead emphasized the "adding or changing features" and "introducing new

menus" elements as being important to patentability.  *See, e.g.*, '695 Reexam, Final Rejection,

1/25/2012, pp. 4-5.

Accordingly, the request does not sufficiently show that there is a substantial likelihood

that a reasonable examiner would consider Intelmatique important in deciding whether or not

claim 10 of the '757 patent is patentable.

Application/Control Number: 90/012,639                                    Page 16
Art Unit: 3992

## IV.    Conclusion

Claim 7 of United States Patent 5,663,757 will be reexamined.

Claims 1-6 and 8-10 of United States Patent 5,663,757 will not be reexamined.

All correspondence relating to this ex parte reexamination proceeding should be directed:

By Mail to:        Mail Stop *Ex Parte* Reexam
                   Central Reexamination Unit
                   Commissioner for Patents
                   United States Patent & Trademark Office
                   P.O. Box 1450
                   Alexandria, VA 22313-1450

By FAX to:         (571) 273-9900
                   Central Reexamination Unit

By hand:           Customer Service Window
                   Randolph Building
                   401 Dulany Street
                   Alexandria, VA 22314

Registered users of EFS-Web may alternatively submit such correspondence via the

electronic filing system EFS-Web, at https://efs.uspto.gov/efile/myportal/efs-registered

Any inquiry concerning this communication should be directed to Central Reexamination

Unit at telephone number (571) 272-7705.


/Eric B. Kiss/
Primary Examiner, Art Unit 3992


Conferees:

/FOF/

/A. J. F./
Andrew J. Fischer
Supervisory Patent Examiner, Art Unit 3992

TAB 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 1:10-CV-00812-RGA |
| | § | |
| v. | § | JURY TRIAL REQUESTED |
| | § | |
| FLO TV INCORPORATED; MOBITV, INC.; | § | |
| U.S. CELLULAR CORPORATION; LG | § | |
| ELECTRONICS MOBILECOMM USA, | § | |
| INC.; MOTOROLA MOBILITY LLC; | § | |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA LLC; SPRINT NEXTEL | § | |
| CORPORATION; RESEARCH IN MOTION | § | |
| CORPORATION; HTC AMERICA INC.; | § | |
| PALM, INC; KYOCERA | § | |
| COMMUNICATIONS INC.; SIMPLEXITY, | § | |
| LLC D/B/A WIREFLY; LETSTALK.COM, | § | |
| INC.; QUALCOMM, INC.; GOTV | § | |
| NETWORKS, INC.;  SPB SOFTWARE; and | § | |
| CELLCO PARTNERSHIP D/B/A VERIZON | § | |
| WIRELESS, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## EON CORP. IP HOLDINGS, LLC'S ANSWERING BRIEF REGARDING PROTECTIVE ORDER DISPUTES

Dated:  June 26, 2013

*Of Counsel:*

Daniel R. Scardino
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com

FOX ROTHSCHILD LLP
*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel:  (302) 622-4211
Fax:  (302) 656-8920

**Attorneys for Plaintiff**
**EON Corp. IP Holding, LLC**

## I.    REEXAMINATION BAR

Defendants make no mention of their burden and the standards for imposition of a reexamination bar, and for good reason, they cannot meet them.  The party seeking a patent prosecution bar bears the burden to first show that there is an "unacceptable" risk of inadvertent disclosure of confidential information.  *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984).   Then the Court must weigh that risk against the harm that may occur from imposition of a prosecution bar, especially the prejudice from denying the patentee counsel of its choice.  *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1380-81 (Fed. Cir. 2010).

Plaintiff has already acceded to the demands of Defendants that there be a prosecution bar.  (*See* Sec. 11(a)(1)).  Note that this prosecution bar is only a burden on EON, and not on any of Defendants; thus, its inclusion is truly a concession by EON.  (*See* Sec. 11(a) "Any person who on behalf of Plaintiff receives Material designated as HIGHLY CONFIDENTIAL— OUTSIDE COUNSEL EYES ONLY . . . shall not participate. . . .") (emphasis added).  Instead of being content with this compromise position and EON's willingness to limit its actions in certain prosecution matters, Defendants seek to impose more burdens on Plaintiff.

Defendants' assertion that the risk to them of misuse of their information is the same regardless of whether it is in the context of a new application, reexamination or reissue is flat wrong.  New applications are unlimited in scope but amendments made in reexamination can only narrow existing claims.   37 C.F.R.  §1.552(b) ("Claim in an *ex parte* reexamination proceeding will not be permitted to enlarge the scope of the claims of the patent.").  Thus, any material that can be found infringing in a claim newly crafted in reexamination necessarily would have already infringed prior to reexamination.

In further distinction from new patent applications, it is Defendants' choice, not EON's, to have a reexamination.  EON had no say in the matter.  Upon filing suit, Defendant Kyocera

placed the patent-in-suit into reexamination.   *See* Request for Reexamination by Kyocera Communications, Inc., May 17, 2011.  EON is forced thereafter to defend its patent through the reexamination proceeding.  Defendants now attempt to have EON be an involuntary litigant in the reexamination proceeding and not even have counsel of its choice.

Defendants point to a hearing in *British Telecomm'ns PLC v. Google, Inc.*, C.A. No. 11-1249, Tr. at 20-21 (D. Del Aug. 31, 2012) ("Transcript") in which the Court recognized the "theoretical concept" that some harm could result from trial counsel participating in reexamination proceedings.  While the Court "acknowledge[d] that there will be some real prejudice" for entry of the bar, *id*. at 21, it nonetheless ordered the entry of the reexamination bar because the Court viewed the reexamination bar as "narrowly tailored."  It was narrowly tailored because it allowed "meaningful participation" in the reexamination by allowing discussions of prior art between trial counsel and reexamination counsel and permitting confidential prior art to be forwarded from the trial counsel to the reexamination counsel.  *Id*. at 4-5.  It was further limited because the bar only applied to documents with a designation that was explicit that it was for nonpatent prosecution counsel.  *Id*. at 4 ("[T]he prosecution bar only applies to documents that are marked 'confidential nonpatent prosecution counsel'").  Indeed, there was a level of designation in the protective order specifically designed to indicate which of the documents would be injurious if used in patent prosecution.

Here, the facts are the opposite.  The bar sought by Defendants is as broad as it could possibly be in restricting conduct:  "Any person [who receives highly confidential documents] shall not participate *in any way* (2) in any reexamination or reissue proceedings. . . ."  This does not have the hallmarks of a limited bar discussed in *British Telecommunications*.  The bar is also broad as to documents.  There is no designation available in this case that is limited to documents

that would be useful in reexamination proceedings as there was in *British Telecommunications*. This was important to the Court's decision in that case because the receiving party "will always have the option of having some trial counsel not be exposed [] to the material that [the producing party] produces that triggers this prosecution or reexamination bar." Transcript at 20. EON does not have this option here. There is no designation specific to patent prosecution in this case.[1]

As has been seen by the production in this case, Defendants are all too willing to abuse the system for designation by placing the "Highly Confidential" designation on documents that are not highly confidential.[2] Incredibly, this includes documents that are publicly available, *e.g.*, artwork for already released phones (HTCEON00350742), user guides for already released phones (KCI-EON-0017002), owner's guides on four-year old phones (S00010911), AND printouts of company webpages of instructions on phone use (LGEMU00034592). As a result, an overwhelming majority of documents have been produced with the "Highly Confidential" designation, regardless of their contents.

Defendants' continuous improper designation of documents has expanded the persons to whom the bar applies to virtually anyone that views production in this case; that is to say, *all attorneys that have touched this case*. This is a complete counter to the "narrowly tailored" justification for the ruling in *British Telecommunications*.

On the other hand, the prejudice to EON is real. As has been pointed out by the District of Delaware:

> [P]laintiff's trial counsel have acquired expertise in the patents-in-suit as well as the relationship between plaintiff's claim language and the prior art. Forcing

---

[1]   "Highly Confidential" documents are "proprietary financial, technical, or commercially sensitive competitive information." (See Definitions).

[2]   The designating party are required to make "reasonable care" when making the designations. (*See* Sec. 5(a)).

plaintiff to rely on less knowledgeable counsel during reexamination would thus increase costs and duplicate effort. Plaintiff also has a legitimate interest in formulating a coherent and consistent litigation strategy. While a parallel reexamination proceeding may not formally be part of this litigation, choices made before the PTO nonetheless have consequences in this court. The validity of reexamined and amended claims, for example, will ultimately have to be explained and defended before a jury in this litigation. Trial counsel are better suited to assess claim language to this end than reexamination counsel, who practice before the PTO and do not try cases to a jury.  Additionally, because reexamination (especially *inter partes* reexamination) is an increasingly important venue for challenging a patent's validity, preventing trial counsel exposed to defendants' confidential information from fully participating in reexamination proceedings would force plaintiff to split its resources between two fronts of the same war.

*Xerox Corp. v. Google*, 270 F.R.D. 182 (D. Del. 2010).

Here, the burdens are much the same.  EON has used the same trial counsel in numerous suits involving both the patent-in-suit and similar patents involving related technology.  That counsel has gained considerable expertise on the patents, and a reexamination bar that forced EON to rely on less knowledgeable counsel to protect the patent in reexamination increases costs because of duplicate efforts, denies EON its choice of counsel, and requires the plaintiff "to split its resources between two fronts of the same war."  Weighing the prejudice to EON versus harm to the Defendants if no bar were instituted (deemed by the courts as "theoretical"[3] and "speculative"[4]), it is clear the Defendants have not met the *Deutsche Bank* burden.

As to the length of the bar, Defendants' language applies the bar until appeals are concluded.  As has been noted, tying the bar to an appeal process of indefinite length is both onerous and nonsensical:

> "There is no logical reason for the time period to run from the exhaustion of all appeals in the litigation. It is not uncommon for patent litigation to last for many years  before all appeals are exhausted, which would result in a prosecution bar that is  effectively several times longer than its nominal one or two year duration.

---

[3]   *British Telecommunications, supra.*

[4]   *Helferich Patent Licensing, LLC. v. N.Y. Times Co.*, No. 10 C 4387 (N.D. Ill., June 21, 2013), see Ex. A.

> The potentially long duration of such a prosecution bar also could be prejudicial to the patent attorney as well as the client. The length of time to exhaust all appeals is not relevant to the technology or any patent prosecution concerns, and should not be a basis for extending the duration of a patent prosecution bar."

James Juo & David J. Pitman, *A Prosecution Bar in Patent Litigation Should Be the Exception Rather than the Rule*, 15 VA. J.L. & TECH. 43, 73 (2010).

This is especially true where, as here, the technology is as fast moving as that of smartphones. A potentially decades long bar is not justified.

## II.    LEVEL OF CONFIDENTIALITY OF SETTLEMENT AGREEMENTS

The settlement agreements at issue generally have confidentiality provisions often stating that the agreement shall only be disclosed only on prior written consent or as required during the course of litigation. EON's proposed language would allow the relevant agreements to be used in expert damages analysis in this case. As noted by the Defendants, the lower confidentiality level they seek is only to aid the Defendants' settlement strategies.[5]

It takes both settling parties to waive the confidentiality. EON has agreed to disclose settlement agreements to Defendants under the protective order as proposed and has affirmatively reached out to prior settling parties to waive confidentiality provisions in the settlement agreements and allow disclosure at the level requested by Defendants.

The settling parties have their negotiated-for right to expect confidentiality of the settlement agreements. Until a waiver of that right, the settling parties should get the benefit of that negotiation. Defendants have not advanced any reason why that right should be infringed here. Defendants' settlement abilities are not dependent on the prior agreements. Defendants are free to evaluate their risk and propose settlement offers under the facts of this case, and there is

---

[5]    Note that this is a new twist on the scope of discovery. Defendants do not want the agreements to prove their case, as discovery is designed to do. (See Fed. R. Civ. P. 26(b)(1), limiting discovery to materials "reasonably calculated to lead to the discovery of admissible evidence.").

no clear reason why Defendants desire to gain insight on what an acceptable offer would be

should outweigh prior settling parties' paid-for right of confidentiality.


*Of Counsel:*

Daniel R. Scardino
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com


Date:  June 26, 2013

FOX ROTHSCHILD LLP
*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel:  (302) 622-4211
Fax:  (302) 656-8920

**Attorneys for Plaintiff
EON Corp. IP Holding, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on June 26, 2013, true and correct copies of the foregoing were served on all counsel of record.

*/s/ Gregory B. Williams*
Gregory B. Williams

| COUNSEL FOR *FLO TV INC.* AND *QUALCOMM, INC.* | David Ellis Moore<br>Richard L. Horwitz<br>POTTER ANDERSON & CORROON, LLP<br>1313 N. Market Street<br>Hercules Plaza, 6th Flr.<br>Wilmington, DE  19899-0951<br>dmoore@potteranderson.com<br>rhorwitz@potteranderson.com |
| --- | --- |
| | Henry B. Gutman<br>Victor Cole<br>Courtney Welshimer<br>Daniel L. Kaplan<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY  10017<br>hgutman@stblaw.com<br>vcole@stblaw.com<br>cwelshimer@stblaw.com<br>dkaplan@stblaw.com |
| | Harrison J. Frahn<br>Jeffrey E. Ostrow<br>Jeffrey E. Danley<br>Michael A. Quick<br>SIMPSON THACHER & BARTLETT LLP<br>2475 Hanover Street<br>Palo Alto, CA  94304<br>hfrahn@stblaw.com<br>jostrow@stblaw.com<br>jdanley@stblaw.com<br>mquick@stblaw.com |
| COUNSEL FOR *MOBITV, INC.* | Brian E. Farnan                    (Lead Attorney)<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801<br>bfarnan@farnanlaw.com<br><br>Daralyn J. Durie |

| | |
|---|---|
| | Laura E. Miller<br>DURIE TANGRI<br>217 Leidesdorff Street<br>San Francisco, CA  94111<br>ddurie@durietangri.com<br>lmiller@durietangri.com |
| *COUNSEL FOR U.S. CELLULAR CORPORATION* | Steven J. Fineman                (Lead Attorney)<br>RICHARDS, LAYTON & FINGER, PA<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE  19801<br>fineman@rlf.com<br><br>Richard J. O'Brien<br>Robert Leighton<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, Illinois  60603<br>robrien@sidley.com<br>rleighton@sidley.com |
| *COUNSEL FOR LG ELECTRONICS MOBILECOMM USA, INC.* | Thomas Lee Halkowski        (Lead Attorney)<br>FISH & RICHARDSON, P.C.<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE  19899-1114<br>halkowski@fr.com |
| *COUNSEL FOR  MOTOROLA  MOBILITY LLC* | Jack B. Blumenfeld            (Lead Attorney)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE  19899<br>jblumenfeld@mnat.com<br><br>William H. Boice<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1100 Peachtree St., NE, Ste. 2800<br>Atlanta, GA 30309<br>bboice@kilpatricktownsend.com<br><br>Steven D. Moore<br>Carl Sanders<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>100 1 West Fourth Street<br>Winston-Salem, NC  27101<br>stmoore@kilpatricktownsend.com<br>csanders@kilpatricktownsend.com |

| | |
|---|---|
| *COUNSEL FOR SPRINT NEXTEL CORPORATION* | Karen Jacobs Louden<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE  19899<br>kjlefiling@mnat.com |
| *COUNSEL FOR HTC AMERICA, INC.* | Karen Jacobs Louden                        (Lead Attorney)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>kjlefiling@mnat.com<br><br>Heidi L. Keefe<br>Kyle D. Chen<br>Dena Chen<br>Mark R. Weinstein<br>Lam K. Nguyen<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA 94306<br>hkeefe@cooley.com<br>kyle.chen@cooley.com<br>mweinstein@cooley.com<br>lnguyen@cooley.com<br>HTC-EON@cooley.com<br>dchen@cooley.com |
| *COUNSEL FOR KYOCERA COMMUNICATIONS, INC.* | Philip A. Rovner<br>Jonathan A. Choa<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza<br>P.O. Box 951<br>Wilmington, DE  19899<br>Tel.:  (302) 984-6000<br>provner@potteranderson.com<br>jchoa@potteranderson.com<br><br>Jose L. Patino (*pro hac vice*)<br>Nicola A. Pisano (*pro hac vice*)<br>Justin E. Gray (*pro hac vice*)<br>FOLEY & LARDNER LLP<br>3579 Valley Center Drive, Suite 300<br>San Diego, CA  92130<br>jpatino@foley.com<br>npisano@foley.com |

| | |
|---|---|
| | jegray@foley.com |
| COUNSEL FOR *LETSTALK.COM*, INC. | Jaideep Venkatesan          (Lead Attorney)<br>Daniel J. Bergeson          (Lead Attorney)<br>BERGESON, LLP<br>303 Almaden Blvd., Suite 500<br>San Jose, CA  95110-2712<br>jvenkatesan@be-law.com<br>dbergeson@be-law.com<br><br>Lauren E. Maguire<br>Steven J. Balick<br>Andrew Colin Mayo<br>ASHBY & GEDDES, P.A.<br>500 Delaware Avenue, 8th Floor<br>Wilmington, DE  19899<br>lmaguire@ashby-geddes.com<br>sbalick@ashby-geddes.com<br>amayo@ashby-geddes.com |
| COUNSEL FOR *GOTV NETWORKS*, INC. | Edmond D. Johnson          (Lead Attorney)<br>James G. McMillan, III<br>PEPPER HAMILTON LLP<br>1313 Market Street, Suite 5100<br>Wilmington, DE  19899-1709<br>johnsone@pepperlaw.com<br>mcmillaj@pepperlaw.com<br><br>Maura L. Rees<br>Dylan J. Liddiard<br>Holly B. Baudler<br>Anthony J Weibell<br>WILSON SONSINI GOODRICH & ROSATI, PC<br>650 Page Mill Road<br>Palo Alto, CA  94304<br>mrees@wsgr.com<br>dliddiard@wsgr.com<br>hbaudler@wsgr.com<br>aweibell@wsgr.com |

| COUNSEL FOR SIMPLEXITY, LLC D/B/A WIREFLY | Karen Jacobs Louden<br>Jennifer Ying<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE 19899-1347<br>klouden@mnat.com<br>jying@mnat.com |
|---|---|

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, <br> *Plaintiff*, <br><br> v. <br><br> THE NEW YORK TIMES COMPANY, a New York Corporation, <br> *Defendant*. | Case No. 10 C 4387 <br> John W. Darrah, District Judge <br> Jeffrey T. Gilbert, Magistrate Jude |
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, <br> *Plaintiff*, <br><br> v. <br><br> G4 MEDIA, LLC, a Delaware Limited Liability Company, <br> *Defendant*. | Case No. 11 C 7395 <br> John W. Darrah, District Judge <br> Jeffrey T. Gilbert, Magistrate Jude |
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, <br> *Plaintiff*, <br><br> v. <br><br> CBS CORPORATION, a Delaware Corporation, <br> *Defendant*. | Case No. 11 C 7607 <br> John W. Darrah, District Judge <br> Jeffrey T. Gilbert, Magistrate Jude |

| | |
|---|---|
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, *Plaintiff*,<br><br>v.<br><br>BRAVO MEDIA, LLC, a New York Limited Liability Company, *Defendant*. | Case No. 11 C 7647<br>John W. Darrah, District Judge<br>Jeffrey T. Gilbert, Magistrate Jude |
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company, *Plaintiff*,<br><br>v.<br><br>J.C. PENNEY CORPORATION, INC., a Delaware Corporation, *Defendant*. | Case No. 11 C 9143<br>John W. Darrah, District Judge<br>Jeffrey T. Gilbert, Magistrate Jude |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Modify the Default Protective Order filed by Defendants The New York Times Company, G4 Media, LLC, CBS Corporation, Bravo Media, and J.C. Penney Corporation, Inc. (collectively "Defendants").[1] Defendants argue that they face potential serious injury from the continued participation of Plaintiff Helferich Patent Licensing LLC's ("HPL") counsel in patent prosecutions and reexaminations of the patents that cover Defendants' technologies at issue in this case, after HPL's counsel has examined the

---

[1] Each of Defendants filed the same Motion to Modify the Default Protective Order entered in their respective cases. For Defendant New York Times, the docket entry for the Motion is [221], for G4 Media, LLC [82], CBS Corporation [76], Bravo Media [79], and J.C. Penney Corporation, Inc. [91].

2

Defendants' confidential information produced during discovery in this case. Defendants have filed the instant Motion to Modify the Default Protective Order entered under Local Patent Rule ("LPR") 1.4 and LPR Appendix B to add a prosecution bar that will prevent any HPL attorney who has reviewed Defendants' confidential information from prosecuting patents with claims written to cover Defendants' technologies.

HPL has filed five lawsuits alleging patent infringement by Defendants, which have been coordinated before this Court. Pursuant to LPR 1.4, the default protective order found in LPR Appendix B took effect when each Defendant filed its initial disclosures. *See* LPR 1.4. The default protective order prohibits disclosure of information designated Confidential or Highly Confidential absent written permission from the producer or the court. The default protective order, however, does not include a prosecution bar preventing opposing counsel from participating in any patent prosecutions or reexaminations before the United States Patent and Trademark Office ("PTO") on subjects related to the litigation.

It is not disputed that Defendants raised the issue of a prosecution bar early in the litigation in early 2011 and that HPL objected, arguing that a prosecution bar is unwarranted. Defendants, however, did not seek a modification to the default protective order for at least two years after they first raised the issue and more than one year after the stay in this litigation was lifted and extensive discovery began to proceed, including Defendants' production of nearly two hundred thousand pages of documents most of which were designated "Confidential" or "Highly Confidential." Defendants also during the same time filed multiple patent reexamination proceedings in the PTO. HPL's counsel, particularly Steven Lisa and Jon Kappes who are specifically identified in Defendants' motion, have continued to participate extensively in this

3

litigation and the patent prosecutions and reexaminations on HPL's behalf, including the prosecution of patents closely related to the matters at issue in this lawsuit. All of the proceedings – before this Court and the PTO – are advanced and nearing important stages for Markman or prior art decisions.

Defendants' counsel six months ago sought a prosecution bar in related litigation pending in the District Court of Arizona. *See Helferich Patant Licensing, LLC v. Suns Legacy Partners, LLC*, No.2:11-cv-02304 (D.Ariz.). After the parties' briefed the issue, Judge Neil Wake denied Defendants' motion seeking to impose a prosecution bar against HPL's counsel. Instead, Judge Wake modified the protective order to require that "[HPL] not rely on highly confidential information disclosed by defendants in this litigation in any proceeding before the PTO." *See Helferich Patant Licensing, LLC v. Suns Legacy Partners, LLC*, 12/5/12 Order, at * 7 ("Judge Wake 12/5/12 Order").

Defendants now seek to modify the default protective order in this case to add a prosecution bar that Defendants argue will protect them from any inadvertent misuse of their confidential information. Specifically, Defendants request the amendment of the default protective order to add a prosecution bar that would prevent HPL's counsel from participating in the prosecution of patents whose claims cover technologies disclosed in the course of this lawsuit, for a period of two years from the conclusion of this lawsuit. HPL opposes the imposition of any modification to the default protective order to add a prosecution bar.

Because the question of a prosecution bar "is an issue unique to patent law," the question is governed by Federal Circuit law. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377 (Fed. Cir. 2010). The Federal Circuit explained in *Deutsche Bank* that the burden is on the

4

moving party to show good cause for modification of the protective order. *Id.* at 1378. The

question of what constitutes "good cause" generally requires a movant to show "a sound basis or

legitimate need to take judicial action." *Trading Techs. Int'l Inc. v. GL Consultants, Inc.*, 2011

WL 148252, at *2 (N.D. Ill. Jan. 18, 2011) (quoting *Wiggins v. Burge*, 173 F.R.D. 226, 229

(N.D. Ill. 1997)). Courts have recognized that a narrowly tailored patent prosecution bar may be

necessary when there is risk of disclosure and does not require that a disclosure actually has

occurred.  As the Federal Circuit explained in *Deutsche Bank*:

> There may be circumstances in which even the most rigorous efforts of the recipient
> of such information to preserve confidentiality in compliance with the provisions of
> such a protective order may not prevent inadvertent compromise. As aptly stated by
> the District of Columbia Circuit: "[I]t is very difficult for the human mind to
> compartmentalize and selectively suppress information once learned, no matter how
> well-intentioned the effort may be to do so.

*Deutsche Bank*, 605 F.3d at 1378 (quoting *FTC v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir.

1980)).

The party seeking a patent prosecution bar bears the burden to first show that there is an

"unacceptable" risk of inadvertent disclosure of confidential information. *U.S. Steel Corp. v.*

*United States*, 730 F.2d 1465 (Fed. Cir. 1984).  To determine whether there is such an

unacceptable risk, a court should examine the extent to which counsel is involved in

"competitive decisionmaking" with its client. *Id.*  The Federal Circuit has defined competitive

decisionmaking as "a counsel's activities, association, and relationship with a client that are such

as to involve counsel's advice and participation in any or all of the client's decisions (pricing,

product design, etc.) made in light of similar or corresponding information about a competitor."

*Id.* at 1468, n.3.

It is clear that HPL's counsel is involved in competitive decisionmaking and participates extensively in prosecuting new patent claims and defending patent reexaminations, crafting patent applications, negotiating licenses for the patents, and litigating HPL's patent rights in federal court. HPL does not argue otherwise in its opposition to Defendants' motion. Because of HPL's counsel's extensive responsibilities and the scope of their roles in this litigation and the reexamination proceedings before the PTO, the Court agrees with Judge Wake, for the purpose of this motion, that under the *Deutsche Bank* standard there is an unacceptable risk of inadvertent disclosure in this litigation. *See* Judge Wake 12/5/12 Order, at *5.

A finding that there is an unacceptable risk of disclosure, however, does not end the inquiry and is not enough to justify the issuance of a patent prosecution bar. *See Deutsche Bank*, 605 F.3d at 1380. In *Deutsche Bank*, the Federal Circuit held that, even if the Court finds that the risk of misuse is unacceptably high, the Court still must weigh that risk against the harm that may occur from imposition of a prosecution bar, especially the prejudice from denying the patentee access to the counsel of its choice. 605 F.3d at 1380-81. In balancing these conflicting interests, a district court has broad discretion to decide what degree of protection is required. *Id.* at 1380 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).

HPL argues that the prejudice of the proposed prosecution bar to HPL would be enormous. According to HPL, Defendants belatedly seek to modify the protective order to add a prosecution bar at the most critical stage of these proceedings and when a modification to the protective order currently in place would create an unfair tactical advantage for Defendants and be severely prejudicial to HPL, particularly in its ability to defend the reexamination and

6

post-grant review PTO proceedings initiated by Defendants. Defendants disagree and argue that HPL and its counsel will not suffer any injury or prejudice as a result of the proposed prosecution bar because, as Defendants assert, the bar sought is narrow and thus will negate any resultant harm. Specifically, Defendants seek a bar that would prevent HPL's counsel from prosecuting patent claims that cover the technologies described in the Defendants' confidential technologies and that counsel would only be prevented from participating in the drafting of claims that would cover the confidential information that they reviewed.

The Court recognizes that Defendants raise a legitimate concern that their confidential information could be competitively misused and that such use would be improper. The risk of competitive misuse of Defendants' confidential information, however, is outweighed by the significant harm HPL would suffer if HPL were denied the counsel of its choice in both its patent prosecution and the reexaminations. HPL's counsel has been representing HPL in litigation in this Court and before the PTO for years, including the multiple rounds of reexaminations filed by Defendants in this case. Defendants raised the issue of a prosecution bar almost two years ago but did not seek relief from this Court until now.

While the Court does not find that Defendants waived the argument as counsel for HPL argues, the delay does raise some question as to the propriety of entering a prosecution bar this late in the litigation when Defendants initially raised the issue with HPL's counsel almost two years ago but did nothing to follow through when HPL objected. The playing field would have been more level had Defendants sought relief from the Court on this issue prior to the production of Defendants's documents. If the Court had modified the default protective order to include a prosecution bar at that time, HPL's counsel could have made a more informed decision about

which of HPL's counsel should be reviewing Defendants' documents so as to shield some of HPL's attorneys from any prosecution bar that may have been entered at the time.

Defendants did not front the issue at the outset, however, and now HPL would suffer even more prejudice by not having its chosen counsel so late in the litigation both in this Court and in the patent examinations before the PTO. As the district court in *Xerox Corp. v. Google*, 270 F.R.D. 182 (D. Del. 2010) recognized:

> [P]laintiff's trial counsel have acquired expertise in the patents-in-suit as well as the relationship between plaintiff's claim language and the prior art. Forcing plaintiff to rely on less knowledgeable counsel during reexamination would thus increase costs and duplicate effort. Plaintiff also has a legitimate interest in formulating a coherent and consistent litigation strategy. While a parallel reexamination proceeding may not formally be part of this litigation, choices made before the PTO nonetheless have consequences in this court. The validity of reexamined and amended claims, for example, will ultimately have to be explained and defended before a jury in this litigation. Trial counsel are better suited to assess claim language to this end than reexamination counsel, who practice before the PTO and do not try cases to a jury. Additionally, because reexamination (especially inter partes reexamination) is an increasingly important venue for challenging a patent's validity, preventing trial counsel exposed to defendants' confidential information from fully participating in reexamination proceedings would force plaintiff to split its resources between two fronts of the same war.

270 F.R.D. at 185 (internal citations and footnotes omitted). Similarly, this Court is not convinced that the risk of disclosure, even though it may be high, outweighs the prejudice from denying HPL access to its chosen counsel. The District Court in Arizona also found in favor of HPL on this very point:

> Counsel for [HPL], including Mr. Kappes and Mr. Lisa, have represented [HPL] both in litigation and before the PTO for many years and are deeply familiar with the patents at issue here. Depriving [HPL] of the specialized representation that its counsel can provide in this case would force them to rely on less knowledgeable counsel, either in this litigation or before the PTO, and "thus increase costs and duplicate effort." *Xerox*, 270 F.R.D. at 185. Because that harm outweighs the

speculative risk of inadvertent disclosure, Defendants have not met their burden of establishing good cause for a patent prosecution bar.

Judge Wake 12/5/12 Order, at *3.

In conclusion, Defendants have failed to show good cause to modify the default protective order to add a prosecution bar. The Court concludes that the risk of inadvertent or competitive use of Defendants' confidential information by HPL's counsel is outweighed by the significant harm that HPL would suffer if it were denied the full benefit of its chosen counsel, particularly at this stage in the litigation in this case and given the status of the reexaminations before the PTO. The Court, however, recognizes, as did the District Court in Arizona, that "[t]he risk that any confidential information could be used in future patent claims or reexamination can be mitigated without the harm of a prosecution bar by adding specific protection against such use in the protection bar in this case." Judge Wake 12/5/12 Order, at *4. To that end, this Court adopts the same requirement used by the District Court in Arizona to modify the default protective order and require that HPL not rely on highly confidential information disclosed by Defendants in this case in any proceeding before the PTO. The Court notes that such a restriction may be implicit in the default confidentiality order, but it does not hurt to make it explicit.

Accordingly, the Motion to Modify the Default Protective Order is denied. The parties, however, shall submit a revised protective order that is consistent with the modified protective order entered in the related Arizona case. The modified protective order should be submitted electronically to Magistrate Judge Gilbert's Proposed_Order_Gilbert@ilnd.uscourts.gov for the Court's review and so that it can be entered electronically.

9

It is so ordered.

Dated: June 21, 2013

_____
Jeffrey T. Gilbert
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I hereby certify that on August 13 , 2013, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 13, 2013, upon the following in the manner indicated:

Gregory B. Williams, Esquire                     *VIA ELECTRONIC MAIL*
FOX ROTHSCHILD LLP
919 North Market Street, Suite 1300
Wilmington, DE  19801
*Attorneys for Plaintiff*

Daniel R. Scardino, Esquire                      *VIA ELECTRONIC MAIL*
Craig S. Jepson, Esquire
Chad P. Ennis, Esquire
Steven P. Tepera, Esquire
John L. Hendricks, Esquire
Mark Halderman, Esquire
Rola Daaboul, Esquire
Jason W. Deats, Esquire
Dominique G. Stafford, Esquire
Joshua G. Jones, Esquire
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
*Attorneys for Plaintiff*

Richard L. Horwitz, Esquire                      *VIA ELECTRONIC MAIL*
David E. Moore, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801
*Attorneys for FLO TV Incorporated and Qualcomm, Inc.*

Harrison J. Frahn, Esquire       *VIA ELECTRONIC MAIL*
Jeffrey E. Ostrow, Esquire
Jeffrey E. Danley, Esquire
Michael A. Quick, Esquire
SIMPSON THACHER & BARTLETT
2475 Hanover Street
Palo Alto, CA  94063
*Attorneys for FLO TV Incorporated and Qualcomm, Inc.*

Henry B. Gutman, Esquire       *VIA ELECTRONIC MAIL*
Victor Cole, Esquire
Courtney A. Welshimer, Esquire
Daniel L. Kaplan, Esquire
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY  10017
*Attorneys for FLO TV Incorporated and Qualcomm, Inc.*

Brian E. Farnan, Esquire       *VIA ELECTRONIC MAIL*
FARNAN LLP
919 North Market Street
Wilmington, DE  19801
*Attorneys for MobiTV, Inc.*

Daralyn Durie, Esquire       *VIA ELECTRONIC MAIL*
Laura E. Miller, Esquire
DURIE TANGRI
217 Leidesdorff Street
San Francisco, CA  94111
*Attorneys for MobiTV, Inc.*

Philip A. Rovner, Esquire       *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza, P.O. Box 951
Wilmington, DE  19899
*Attorneys for Kyocera Communications Inc.*

Jose L. Patino, Esquire       *VIA ELECTRONIC MAIL*
Nicola A. Pisano, Esquire
Justin E. Gray, Esquire
FOLEY & LARDNER LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130
*Attorneys for Kyocera Communications Inc.*

Daniel J. Bergeson, Esquire                                   *VIA ELECTRONIC MAIL*
Jaideep Venkatesan, Esquire
BERGESON, LLP
303 Almaden Boulevard, Suite 500
San Jose, CA  95110-2712
*Attorneys for LetsTalk.com, Inc.*

Gregory P. Williams, Esquire                                  *VIA ELECTRONIC MAIL*
Steven J. Fineman, Esquire
Katharine C. Lester, Esquire
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for U.S. Cellular Corporation*

Richard J. O'Brien, Esquire                                   *VIA ELECTRONIC MAIL*
Robert D. Leighton, Esquire
Justin B. Weiner, Esquire
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL  60603
*Attorneys for U.S. Cellular Corporation*

Thomas L. Halkowski, Esquire                                  *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
*Attorneys for LG Electronics MobileComm USA, Inc.*

Karen Jacobs Louden, Esquire                                  *VIA ELECTRONIC MAIL*
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
Wilmington, DE  19801
*Attorneys for Sprint Nextel Corporation and HTC
America, Inc.*

Heidi Keefe, Esquire                                          *VIA ELECTRONIC MAIL*
Mark Weinstein, Esquire
Kyle Chen, Esquire
Dena Chen, Esquire
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94306
*Attorneys for HTC America, Inc.*

Edmond D. Johnson, Esquire                              *VIA ELECTRONIC MAIL*
James G. McMillan, III, Esquire
PEPPER HAMILTON LLP
1313 North Market Street, Suite 5100
Wilmington, DE  19801
*Attorneys for GoTV Networks, Inc.*

Maura L. Rees, Esquire                                  *VIA ELECTRONIC MAIL*
Dylan J. Liddiard, Esquire
Holly B. Baudler, Esquire
Anthony J. Weibell, Esquire
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alta, CA  94304
*Attorneys for GoTV Networks, Inc.*

Thomas W. Sankey                                        *VIA ELECTRONIC MAIL*
Diana M. Sangalli
Wesley W. Yuan
DUANE MORRIS LLP
1330 Post Oak Boulevard, Suite 800
Houston, TX 77056
*Attorneys for AT&T Mobility LLC*

Alison M. Haddock                                       *VIA ELECTRONIC MAIL*
DUANE MORRIS LLP
1075 Peachtree Street NE, Suite 2000
Atlanta, GA 30309
*Attorneys for AT&T Mobility LLC*

Joseph A. Powers                                        *VIA ELECTRONIC MAIL*
DUANE MORRIS LLP
30 South 17th Street
Philadelphia, PA 19103
*Attorneys for AT&T Mobility LLC*

*/s/ Jack B. Blumenfeld*
_____

Jack B. Blumenfeld (#1014)