# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EON CORP. IP HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | )   C.A. No. 10-812-RGA |
| | ) |
| v. | )   **JURY TRIAL DEMANDED** |
| | ) |
| FLO TV INCORPORATED, *et al.*, | )   **PUBLIC VERSION** |
| | ) |
| Defendants. | ) |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT OF INVALIDITY

OF COUNSEL:

Henry Gutman
Victor Cole
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Tel:  (212) 455-2000

Jeffrey E. Ostrow
Harrison J. Frahn IV
Jeffrey E. Danley
Michael A. Quick
SIMPSON THACHER & BARTLETT LLP
2475 Hanover Street
Palo Alto, California 94063
Tel:  (650) 251-5000

Dated:  November 1, 2013
Public Version Dated: November 8, 2013
1128621 / 36087

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendants*
*Flo TV Incorporated and Qualcomm, Inc.*

*Filed on Behalf of Defendants Sprint Nextel*
*Corporation, HTC America, Inc., Simplexity,*
*LLC d/b/a Wirefly, United States Cellular*
*Corporation, MobiTV Inc., Motorola Mobility*
*LLC and LG Electronics MobileComm USA*
*Inc.*

# TABLE OF CONTENTS

I.      NATURE AND STAGE OF PROCEEDINGS .................................................... 1

II.     SUMMARY OF ARGUMENT ........................................................................... 1

III.    STATEMENT OF FACTS ................................................................................. 3

   1.   The '757 Patent ........................................................................................... 3

   2.   Amendments Made By EON During Reexamination ......................................... 4

   3.   The Computer-Implemented Terms at Issue ....................................................... 4

   Term 13: "means under control of said replaceable software means for indicating
        acknowledging shipment of an order from a remote station" (Claim 7) ............................. 5

   Term 15: "means controlled by replaceable software means operable with said
        operation control system for . . . reconfiguring the operating modes by adding or
        changing features and introducing new menus" (Claims 1-6, 8-10).................................. 5

   Term 16: "means responsive to said self contained software for establishing a mode of
        operation for selection of one of a plurality of authorized television program
        channels" (Claim 8)................................................................................................ 5

   Term 17: "means establishing a first menu directed to different interactively selectable
        program theme subsets available from said authorized television program
        channels" (Claim 8)................................................................................................ 5

   Term 18: "means for causing selected themes to automatically display a second menu"
        (Claim 8) ............................................................................................................. 6

   Term 19: "means controlled by replaceable software means operable with said
        operation control system for establishing and controlling a mode of operation that
        records historical operating data of the local subscriber's data processing station"
        (Claim 9) ............................................................................................................. 6

   Term 20: "means controlled by replaceable software means operable with said
        operat[ion] control system for establishing and controlling fiscal transactions with
        a further local station" (Claim 10) ....................................................................... 6

   Term 21: "means for establishing an accounting mode of operation for maintaining and
        reporting fiscal transactions incurred in the operation of the local subscriber's data
        processing station" (Claim 10)........................................................................... 7

IV.     LEGAL STANDARDS...................................................................................... 7

V.      ARGUMENT ................................................................................................. 10

1.   All Computer-Implemented Terms Are Governed by 35 U.S.C. § 112, ¶ 6...................... 10

2.   Term 13 Requires a Computer and an Algorithm............................................................. 11

3.   No Corresponding Algorithm Is Disclosed for Any Computer-Implemented Terms........ 13

    a.   EON's Argument that The Computer-Implemented Terms Could Be
    Performed by a General Purpose Computer Without Specialized Software is
    Barred by Prosecution History Estoppel .................................................................. 14

    b.   EON Provides No Evidence that Any Computer-Implemented Claim Terms
    Could Be Performed by a General Purpose Computer Without Specialized
    Software................................................................................................................... 15

VI.   **CONCLUSION**......................................................................................................... **20**

# TABLE OF AUTHORITIES

**Cases**

*ACTV, Inc. v. Walt Disney Co.*,
    346 F.3d 1082 (Fed. Cir. 2003)..................................................................... 8

*Alcatel USA Sourcing, Inc. v. Microsoft Corp.*,
    No. 6:06-cv-499, 2008 WL 3914889 (E.D. Tex. Aug. 21, 2008)...................................... 13

*Altris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003)..................................................................... 7

*Apex Inc. v. Raritan Computer, Inc.*,
    325 F.3d 1364 (Fed. Cir. 2003)................................................................. 8, 11

*Applera Corp. v. Micromass UK Ltd.*,
    204 F. Supp. 2d 724 (D. Del. 2002)............................................................... 14

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d I 328 (Fed. Cir. 2008).................................................................. 8, 9

*Biomedino, LLC v. Waters Techs. Corp.*,
    490 F.3d 946 (Fed. Cir. 2007).................................................................. 7, 10

*Blackboard, Inc. v. Desire2Learn, Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009).............................................................. 8, 9, 10

*Datamize, LLC v. Plumtree Software, Inc.*,
    417 F.3d 1342 (Fed. Cir. 2005)..................................................................... 7

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
    412 F.3d 1291 (Fed. Cir. 2005)..................................................................... 9

*Encyclopedia Britannica, Inc. v. Alpine Elecs., Inc.*,
    355 F. App'x 389 (Fed. Cir. 2009) ................................................................. 9

*Ergo Licensing, LLC v. CareFusion 303, Inc.*,
    673 F.3d 1361 (Fed. Cir. 2012).................................................................. 9, 10

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003)..................................................................... 14

*Finisar Corp. v. DirectTV Group, Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008).................................................................. 8, 9

*Function Media, LLC v. Google, Inc.*,
    708 F.3d 1310 (Fed. Cir. 2013)..................................................................... 8

*Genzyme Corp. v. Atrium Med. Corp.*,
    212 F. Supp. 2d 292 (D. Del. 2002) .................................................................. 10

*Harris Corp. v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005) ................................................................... 2, 13

*Ibormeith IP, LLC v. Mercedes-Benz USA*,
    No. 10-cv-5378 (Fed. Cir. Oct. 22, 2013) .................................................... 12

*In re Aoyama*,
    656 F.3d 1293 (Fed. Cir. 2011) ....................................................................... 8

*In re Katz Interactive Call Processing Patent Litig.*,
    639 F.3d 1303 (Fed. Cir 2011) ............................................................... 2, 3, 9

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) .................................................................. 7, 8

*Netgear, Inc. v. Ruckus Wireless, Inc.*,
    CV 10-999-SLR, 2013 WL 5436641 (D. Del. Sept. 30, 2013) ....................... 10

*Noah Sys., Inc. v. Intuit Inc.*,
    675 F.3d 1302 (Fed. Cir. 2012) ................................................................ 2, 18

*Oddi v. Ford Motor Co.*,
    234 F.3d 136 (3d Cir. 2000 .......................................................................... 20

*Rodime PLC v. Seagate Tech., Inc.*,
    174 F.3d 1294 (Fed. Cir. 1999) ................................................................ 7, 11

*TriMed, Inc. v. Stryker Corp.*,
    514 F.3d 1256 (Fed. Cir. 2008) .................................................................. 7-8

*Wang Labs. v. Mitsubishi Elecs. Am., Inc.*,
    103 F.3d 1571 (Fed. Cir. 1997) ..................................................................... 14

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*,
    239 F.3d 1225 (Fed. Cir. 2001) ...................................................................... 7

## Statutes and Rules

35 U.S.C. § 112 ............................................................................................ passim

## Federal Rules

Fed. R. Civ. P. 56(a) ...................................................................................... 7

## I.      NATURE AND STAGE OF PROCEEDINGS

Plaintiff EON Corp. IP Holdings, LLC ("EON") filed this action on September 23, 2010

against 17 defendants, asserting infringement of all ten claims of U.S. Patent No. 5,663,757 (the

"'757 patent"); nine defendants remain in this action ("Defendants").  Fact discovery closed on

June 21, 2013.  Defendants served an invalidity expert report on July 26, 2013 (the "Grimes

Report").  EON served its infringement expert report on July 26, 2013 (the "Klausner

Infringement Report") and its rebuttal report on validity on September 3, 2013 (the "Klausner

Validity Report").  Expert discovery closed on September 30, 2013.  D.I. 303.  Defendants and

EON filed a Joint Claim Construction Brief on April 30, 2013 D.I. 400 and a claim construction

hearing is scheduled for January 8, 2014.[1]  Trial is set to begin in March 2014.  D.I. 303.

Defendants have moved for summary judgment of invalidity on the grounds that all

claims of the '757 patent are invalid as indefinite under 35 U.S.C. § 112.[2]  This is Defendants'

opening brief in support of that motion.

## II.      SUMMARY OF ARGUMENT

The claims of the '757 patent are invalid under 35 U.S.C. § 112, ¶ 6 for failure to disclose

the required corresponding structure.  In particular, as set forth in the parties' joint claim

construction chart (D.I. 344) and joint claim construction brief (D.I. 400), Defendants contend

that Terms 13 and 15-21 are computer-implemented means-plus-function terms (the "Computer-

---

[1]    In its May 15, 2013 Order, the Court deferred holding a *Markman* hearing until after summary judgment briefing is completed.  D.I. 438.

[2]    The '757 patent claims are also invalid as anticipated and obvious in light of multiple prior art references and for lack of enablement.  Defendants do not raise these issues on summary judgment, but reserve these issues for trial.

Implemented Terms").[3] *See* Declaration of David Moore ("Moore Decl.") Ex. 1 ('757 patent).[4]

EON agrees that Terms 13 and 18-21 are subject to the provisions of § 112 ¶ 6,[5] and further

agrees that to the extent § 112, ¶ 6 applies to all the Computer-Implemented Terms, the principal

structure is a microprocessor.[6] *See* D.I. 344 at 11, 13-15. Accordingly, the central issue for the

Court on this motion is the application of the Federal Circuit's holding that "computer-

implemented means-plus-function terms are indefinite unless the specification discloses an

algorithm to perform the function associated with the limitation." *Noah Sys., Inc. v. Intuit Inc.*,

675 F.3d 1302, 1318-19 (Fed. Cir. 2012).

As the Federal Circuit has explained, "[t]he corresponding structure for a § 112 ¶ 6 claim

for a computer-implemented function is the algorithm disclosed in the specification." *Harris*

*Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1249 (Fed. Cir. 2005). As EON concedes, however, the

'757 patent fails to disclose an algorithm for any of these Computer-Implemented Terms. *See*

D.I. 400 at Terms 13 and 15-21. In an attempt to rectify this fatal deficiency, EON purports to

rely on the narrow exception articulated in *In re Katz Interactive Call Processing Patent*

*Litigation* that no algorithm need be disclosed where the function in question "can be achieved

by any general purpose computer *without* special programming." 639 F.3d 1303, 1316 (Fed.

---

[3]   Term 13 appears in Claim 7 of the '757 patent; Term 15 appears in Claims 1-6 and 8-10; Terms 16, 17 and 18 appear in Claim 8; Term 19 appears in Claim 9; and Terms 20-21 appear in Claim 10.

[4]   Unless otherwise noted, "Ex. ___" refers to the corresponding exhibit attached to the Declaration of David Moore, filed concurrently herewith.

[5]   As discussed below, EON has failed to rebut the presumption that Terms 15-17 are governed by §112, ¶ 6 based on the use of the word "means."

[6]   With respect to Term 13, EON argues that the corresponding structure is "messages displayed on viewing screen 11 in Figs. 2, 3, and 5" (D.I. 344 at 11), but as discussed below, the figures that EON points to confirm that the "messages" are generated by a microprocessor.

Cir. 2011) (emphasis added).  However, the *Katz* exception cannot apply here, because in

obtaining allowance of the claims, the inventor and EON argued to the PTO that at least some of

these Computer-Implemented Terms introduced novel functionality not disclosed in the prior art

or offered by any computer or software programs at the time of the invention.[7] ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

Tellingly, the components to which EON points as allegedly satisfying these computer-

implemented functions are not "general purpose computers," but rather specialized software

applications (which require specialized programming) running on specialized integrated circuits.

Accordingly, because these means-plus-function terms appear in each of the independent claims

of the '757 patent and require computer-implemented functions requiring specialized

programming that is not disclosed, all claims of the '757 patent are invalid for failure to comply

with the requirements of § 112, ¶ 6.

## III.   STATEMENT OF FACTS

### 1.   The '757 Patent

The '757 patent was filed on March 25, 1991 and issued on September 2, 1997.[8]  It is

entitled "Software Controlled Multi-Mode Interactive TV Systems" and lists Fernando Morales

of Reston, VA, as its sole inventor.  The '757 patent contains ten claims that require a variety of

---

[7] ████████████████████████████████████████████████████████

████████████████████████████████████████████████████

[8]   Following two reexamination proceedings, the PTO issued reexamination certificates on
August 14, 2012 and October 21, 2013.

computer-implemented functions. *See* Ex. 1 ('757 Patent). Although the parties dispute whether

all of the terms at issue are means-plus-function terms governed by § 112, ¶ 6, they agree that to

the extent this provision applies, the principal corresponding structure is a microprocessor. D.I.

400 at 78, 84, 86-87, 90, 92, 96.

### 2.  Amendments EON Made During Reexamination

In May 2011, a first reexamination of the '757 Patent was initiated.[9]  During that first

reexamination, EON amended independent claims 1, 8, 9 and 10 to overcome a prior art rejection

by adding the following computer-implemented, means-plus-function element (Term 15) to

independent claims 1 and 8:

> *means controlled by said replaceable software means operable*
> *with said operation control system for reconfiguring the operating*
> *modes by adding or changing features and introducing new menus.*

Ex. 1 ('757 patent, Aug. 14, 2012 Reexamination Certificate) at 2:7-10; 4:19-22.  Independent

claims 9 and 10 were similarly amended to require that the "means controlled by replaceable

software means" element included the function of "reconfiguring the operating modes by adding

or changing features and introducing new menus." *Id.* at 5:5-6; 6:27-29.

### 3.  The Computer-Implemented Terms at Issue

Of the seven Computer-Implemented Terms, the parties agree that Terms 13 and 18-21

are means-plus-function terms governed by § 112, ¶ 6.  The parties also agree on the respective

function, with the exception of Term 17.  Defendants contend that each term is invalid for failing

to disclose an algorithm.  D.I. 400 at 73, 78, 84, 86-87, 90, 92, 96.

---

[9]  A second reexamination was initiated on September 14, 2012, but no claim amendments
were made during that reexamination.  The PTO issued a second reexamination certificate on
October 21, 2013.  D.I. 611, Ex. A.

**Term 13: "means under control of said replaceable software means for indicating acknowledging shipment of an order from a remote station" (Claim 7)**

The parties agree that § 112, ¶ 6 applies to this term and that the function is "indicating acknowledging shipment of an order from a remote station." D.I. 400 at 73.  EON contends that the structure is "messages displayed on viewing screen 11 in Figs. 2, 3, and 5." *Id.*

**Term 15: "means controlled by replaceable software means operable with said operation control system for . . . reconfiguring the operating modes by adding or changing features and introducing new menus" (Claims 1-6, 8-10)**

The parties dispute whether this term is governed by § 112, ¶ 6.  If it applies, the parties agree that the function is "reconfiguring the operating modes by adding or changing features and introducing new menus." D.I. 400 at 78.  To the extent § 112, ¶ 6 applies, EON admits that the corresponding structure is "software controlled programmable microprocessor data processing system 27." *Id.*

**Term 16: "means responsive to said self contained software for establishing a mode of operation for selection of one of a plurality of authorized television program channels" (Claim 8)**

The parties dispute whether this term is governed by § 112, ¶ 6.  If § 112, ¶ 6 applies, the parties agree that the function is "establishing a mode of operation for selection of one of a plurality of authorized television program channels." D.I. 400 at 84.  To the extent § 112, ¶ 6 applies, EON admits that the corresponding structure is "Microprocessor 35 and menus shown in Figs. 3-5." *Id.*

**Term 17: "means establishing a first menu directed to different interactively selectable program theme subsets available from said authorized television program channels" (Claim 8)**

The parties dispute whether this term is governed by § 112, ¶ 6.  If it applies, the parties also dispute the corresponding function.  EON's proposed function is "establishing a first menu directed to different interactively selectable program theme subsets," while Defendants argue

that the function is "establishing a first menu directed to different interactively selectable

program theme subsets available from said authorized television program channels." D.I. 400 at

86.  To the extent § 112, ¶ 6 applies, EON admits that the corresponding structure is

"Microprocessor 35 and program control software (Figs. 3-5)." *Id.* at 87.

> **Term 18: "means for causing selected themes to automatically display a second menu" (Claim 8)**

The parties agree that § 112, ¶ 6 applies to this term and that the claimed function is

"causing selected themes to automatically display a second menu." D.I. 400 at 90.  EON admits

that the corresponding structure is "Microprocessor 35 and program control software (Figs. 3-

5)." *Id.*  Additionally, during the first reexamination, EON argued that this term performs

"reconfiguring first and second menus of a hierarchical theme/program." Ex. 4 (Nov. 29, 2011

Amendment and Response to Office Action) at 14 (discussing claim 8).

> **Term 19: "means controlled by replaceable software means operable with said operation control system for establishing and controlling a mode of operation that records historical operating data of the local subscriber's data processing station" (Claim 9)**

The parties agree that § 112, ¶ 6 applies to this term and that the claimed function is

"establishing and controlling a mode of operation that records historical operating data of the

local subscriber's data processing station." D.I. 400 at 92.  EON admits that the corresponding

structure is "microprocessor 35 and system control 8 (Fig. 3)." *Id.*

> **Term 20: "means controlled by replaceable software means operable with said operat[ion] control system for establishing and controlling fiscal transactions with a further local station" (Claim 10)**

The parties agree that § 112, ¶ 6 applies to this term and that the claimed function is

"establishing and controlling fiscal transactions with a further local station." D.I. 400 at 92.

EON admits that the corresponding structure is "microprocessor 35 and system control 8 (Fig.

3)." *Id.*

**Term 21: "means for establishing an accounting mode of operation for maintaining and reporting fiscal transactions incurred in the operation of the local subscriber's data processing station" (Claim 10)**

The parties agree that § 112, ¶ 6 applies to this term and that the claimed function is "establishing an accounting mode of operation for maintaining and reporting fiscal transactions incurred in the operation of the local subscriber's data processing station." D.I. 400 at 96. EON admits that the corresponding structure is "microprocessor 35 and system control 8 (Fig. 3)." *Id.*

## IV.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a claim is indefinite is an issue of law. *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005). Likewise, whether a claim term is governed by 35 U.S.C. § 112, ¶ 6, is an issue of law. *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1231 (Fed. Cir. 2001). "When a claim uses the term 'means' to describe a limitation, a presumption inheres that the inventor used the term to invoke § 112, ¶ 6." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 950 (Fed. Cir. 2007); *see also Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008) ("A claim element that contains the word 'means' and recites a function is presumed to be drafted in means-plus-function format under 35 U.S.C. § 112 ¶ 6"). "This presumption can be rebutted when the claim, in addition to the functional language, recites structure sufficient to perform the claimed function in its entirety." *Biomedino*, 490 F.3d at 950 (quoting *Altris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1375 (Fed. Cir. 2003)); *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999). "Sufficient structure exists when the claim language specifies the exact structure that performs the functions in question without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure." *TriMed, Inc. v. Stryker Corp.*,

514 F.3d 1256, 1259-60 (Fed. Cir. 2008). The party opposing application of the means-plus-

function presumption bears the burden of rebutting it. *See Apex Inc. v. Raritan Computer, Inc.*,

325 F.3d 1364, 1372 (Fed. Cir. 2003) ("If the party who must bring forth evidence fails to

proffer sufficient evidence to meet its burden, the presumption, either for or against the

application of § 112, ¶ 6, prevails").

Once the Court determines that 35 U.S.C. § 112, ¶ 6 applies, it must identify the claimed

function and the corresponding structure. *In re Aoyama*, 656 F.3d 1293, 1296-97 (Fed. Cir.

2011) (construction of means-plus-function claim terms is an issue of law); *ACTV, Inc. v. Walt

Disney Co.*, 346 F.3d 1082, 1087 (Fed. Cir. 2003) (same). Importantly, § 112, ¶ 6 also requires

that "the specification must contain sufficient descriptive text by which a person of skill in the

field of the invention would know and understand what structure corresponds to the means."

*Function Media, LLC v. Google, Inc.*, 708 F.3d 1310, 1317 (Fed. Cir. 2013). As the Federal

Circuit has explained, "structure disclosed in the specification is 'corresponding' structure only if

the specification or prosecution history clearly links or associates that structure to the function

recited in the claim." *Aoyama*, 656 F.3d at 1297.

Where the corresponding structure is a computer, § 112, ¶ 6 requires the specification to

disclose the algorithm for performing the claimed function. *See Net MoneyIN*, 545 F.3d at 1367;

*Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383-84 (Fed. Cir. 2009) (structure is the

special purpose computer, or microprocessor, programmed to carry out an algorithm). As such,

"[t]he corresponding structure for a § 112 § 6 claim for a computer implemented function is the

*algorithm* disclosed in the specification." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,

521 F.3d I 328, 1333 (Fed. Cir. 2008) (citation omitted). Cursory references to software,

"without providing some detail about the means to accomplish the function is not enough."

*Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1340-41 (Fed. Cir. 2008).  The

description of the algorithm must do more than recite the function to be performed: it must

describe how the function is to be performed.  *Blackboard*, 574 F.3d at 1382-83 (holding claims

indefinite where "[t]he specification contains no description of the structure or the process that

the access control manager uses to perform the 'assigning' function.").  Because § 112, ¶ 6 is a

disclosure requirement, even "the testimony of one of ordinary skill in the art cannot supplant the

total absence of structure from the specification."  *Default Proof Credit Card Sys., Inc. v. Home

Depot U.S.A., Inc.*, 412 F.3d 1291, 1302 (Fed. Cir. 2005).[10]

A narrow exception to this rule was set forth in *In re Katz Interactive Call Processing

Patent Litigation*, 639 F.3d 1303, 1316 (Fed. Cir. 2011), which held that it is "not necessary to

disclose more structure than the general purpose processor" where the function in question "can

be achieved by any general purpose computer without special programming."  However, this

holding is limited to only those terms whose functions consist of the most basic operations of a

general purpose processor—"processing," "receiving," and "storing"—without any additional

limitations or conditions that would require specific programming.  *Id.* at 1315-16.  In contrast,

where a function included processing and coupling calls "based on a condition," the court found

the claims "clearly indefinite" for failing to disclose an algorithm for the conditional function.

*Id.* at 1315.  The Federal Circuit has since explained that special programming is required any

time a function "requires more than merely plugging in a general-purpose computer."  *Ergo*

---

[10]  Indeed, as the Federal Circuit has cautioned, the proper inquiry is not whether one of
ordinary skill *could* write a computer program to achieve the claimed function.  Rather, the
specification must disclose the actual algorithm or programming instructions.  *Aristocrat Techs.*,
521 F.3d at 1333-34; *Encyclopedia Britannica, Inc. v. Alpine Elecs., Inc.*, 355 F. App'x 389,
393-94 (Fed. Cir. 2009).

*Licensing LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012) (algorithm

required for function of "controlling the adjusting means"). *See also Netgear, Inc. v. Ruckus*

*Wireless, Inc.*, C.A. No. 10-999-SLR, 2013 WL 5436641 (D. Del. Sept. 30, 2013) (Ex. 5)

(algorithm required to "analyze" messages).

## V.    ARGUMENT

### 1.    All of the Computer-Implemented Terms Are Governed by § 112, ¶ 6

The parties agree that Terms 13 and 18-21 are governed by §112, ¶ 6.  Defendants further

contend that Terms 15-17 are also governed by §112, ¶ 6 because all three use the term "means"

and none recite any structure, let alone "structure sufficient to perform the claimed function in its

entirety." *Biomedino*, 490 F.3d at 950.  EON admits that these claims do not disclose sufficient

structure because EON's own proposed constructions under §112, ¶ 6 refer to the specification—

and not to the claim language itself—to locate a corresponding structure.  *See, e.g.*, D.I. 400 at 78

(EON's proposed structure for Term 15 is "software controlled programmable microprocessor

data processing system 27" from Figure 3 of the '757 patent).

EON's sole argument that "the use of the word 'means' here is simply a consequence of

the patent drafter's fondness for the term—not an invocation of § 112, ¶ 6" (D.I. 400 at 79) is

unavailing.  EON cites no evidence to support this argument, and indeed,  EON's "fondness" is

belied by its concession that Terms 13 and 18-21, which similarly use "means" language are

governed by § 112, ¶ 6.  *See* D.I. 400 at 73, 90, 92, 96 (Terms 13 and 18-21).[11]

---

[11]    EON's reliance on *Genzyme Corp. v. Atrium Med. Corp.*, 212 F. Supp. 2d 292 (D. Del. 2002)
as the foundation of its "fondness" argument is misplaced.  The court in *Genzyme* – after
determining that § 112, ¶ 6 did not apply because no corresponding function was disclosed –
mentioned in a footnote that there was added support for not applying § 112, ¶ 6 because the
patent drafter referred to the same elements of the invention with and without the word "means."
*Id.* at 309-310 & n.10.  Regardless of whether such an argument can provide the sole basis for

None of EON's experts have provided any analysis as to why § 112, ¶ 6 should not apply to these terms.  In fact, EON's claim construction expert readily "presumed" that these terms were subject to § 112, ¶ 6 for purposes of his analysis.  D.I. 401-7 (Sauer Decl.) ¶ 8. ██████

████████████████████████████████████████████████████████████████

██████████████████████  Because EON cannot rebut the presumption that follows from the use of the term "means," Terms 13 and 15-21 are each governed by § 112, ¶ 6.  *Rodime*, 174 F.3d at 1302; *Apex*, 325 F.3d at 1372.

### 2.  Term 13 Requires a Computer and an Algorithm

The parties agree that Term 13 is a means-plus-function term governed by §112, ¶ 6 and that the claimed function is "indicating acknowledging of shipment of an order from a remote station."  D.I. 400 at 73.  EON argues that the corresponding structure for Term 13 is "messages displayed on viewing screen 11 in Figs. 2, 3, and 5" and  that "a person skilled in the art would recognize message capability provided by viewing screen 11 in Figures 2, 3 and 5, to be capable of performing the 'indicating' function."  *Id.*  This argument misses the point.  The question is not whether screen 11 is capable of "displaying" a shipping acknowledgement, but rather *how* the screen determines when to display it, i.e., what structure generates such a message in the first instance.  Although EON's proposed structure does not explicitly include a microprocessor, the figures on which EON relies to disclose its structure make clear that the "messages displayed on a viewing screen" are generated by a microprocessor.  For example, Figure 3 illustrates a microprocessor in conjunction with controlling the output displayed on the screen 11:

---

rejecting a means-plus-function construction, EON provides no basis, other than frequency of use, for rejecting the drafter's choice of the word "means."  In fact, it cannot apply here, because there is no disclosure in the claims of the structure to provide the claimed function.



'757 patent, Fig. 3 (emphasis added).

The Federal Circuit recently rejected a nearly identical argument by the plaintiff in

*Ibormeith IP, LLC v. Mercedes-Benz USA*, No. 10-cv-5378 (Fed. Cir. Oct. 22, 2013) (Ex. 7).

There, the asserted patent claimed an automotive "sleepiness monitor" that monitored the driver

and issued an alert when the driver became tired.  Just as EON argues that the shipment

notifications are displayed by a monitor, the plaintiff in *Ibormeith* argued that "no algorithm is

required for the 'providing a warning indication' function because that function is intended to be

carried out by a visual display panel (hardware) and not the computations means."  *Id.* at 6.  In

rejecting that argument, the district court held that the claims were invalid because the

specification failed to disclose "*how* the monitor determines when the computation of [inputs]

leads to the issuance of a warning."  *Id.* (emphasis added).  The Federal Circuit affirmed, finding

that the patent's failure to disclose an algorithm meant a person of ordinary skill "would need to

devise his or her own method for determining driver drowsiness based on the factors generally

discussed in Tables 10, 11 and 12."  *Id.* at 11.

Here, EON discloses only a result (displaying a message acknowledging shipment) and invites the reader to devise a structure to determine that shipment has occurred, generate an acknowledgement, and determine how to display it. Accordingly, as *Ibormeith* makes clear, this term is indefinite for failing to disclose an algorithm for carrying out the claimed function.

### 3. No Corresponding Algorithm Is Disclosed for Any Computer-Implemented Terms

Because EON agrees that a microprocessor is the principal structure for each of Terms 15-21 (and as explained above, also Term 13), they are computer-implemented means-plus-function terms requiring the disclosure of an algorithm to perform the claimed functions.[12] EON agrees with Defendants that the '757 patent does not disclose any algorithms, *see* D.I. 400 at Terms 13 and 15-21, but argues instead that no algorithm need be disclosed because all these functions could purportedly be performed by an off-the-shelf general purpose computer without any special programming. EON's argument fails both legally and factually. Legally, EON is estopped from arguing that any computer at the time of the invention could achieve the claimed functionality because it argued just the opposite to the PTO during reexamination to have the claims allowed. And the facts EON relies upon confirm that the claimed functions required specialized software.

---

[12]   Additionally, an algorithm is required even when a microprocessor or computer is identified as only *part* of the overall structure for performing the recited function of a means-plus-function element. *See Harris Corp.*, 417 F.3d at 1254 (holding that the corresponding structure for a means-plus-function claim included a first processor for performing a first part of an algorithm and a second processor for performing a second part of the algorithm); *Alcatel USA Sourcing, Inc. v. Microsoft Corp.*, No. 6:06-cv-499, 2008 WL 3914889, at *17-18 (E.D. Tex. Aug. 21, 2008) (recognizing that the "corresponding structure for a means-plus-function claim limitation with a computer-implemented function is limited to the algorithm disclosed in the specification," and holding that the corresponding structure included "message processor 406 using locator module 408 that uses a lookup table stored in mass memory 410.").

a.   **EON's Argument that the Computer-Implemented Terms Could Be Performed by a General Purpose Computer without Specialized Software Is Barred by Prosecution History Estoppel**

As a threshold matter, EON is estopped from arguing that the claims do not require special software to achieve the claimed functionality based on the claim amendments and arguments it made before the PTO during the first reexamination.

The doctrine of prosecution history estoppel prevents "a patentee from regaining, through litigation, coverage of subject matter relinquished during prosecution of the application of the patent." *Wang Labs. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577–78 (Fed. Cir. 1997), *cert. denied*, 522 U.S. 818 (Oct. 06, 1997).   Arguments made to obtain the reallowance of claims during reexamination may also give rise to prosecution history estoppel. *Applera Corp. v. Micromass UK Ltd.*, 204 F. Supp. 2d 724, 773 (D. Del. 2002) (citing *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996)).   Prosecution history estoppel is a question of law for the court. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1367-68 (Fed. Cir. 2003), *cert. denied*, 541 U.S. 988 (Apr. 19, 2004).

During the first reexamination, the PTO rejected all claims of the '757 patent, finding that the "replaceable software means" was disclosed by prior art. Ex. 8 (Sept. 29, 2011 Office Action).   In response, EON amended independent claims 9 and 10 to additionally require that the software means "reconfigur[e] the operating modes by adding or changing features and introducing new menus." Ex. 4 (Nov. 29, 2011 Amendment).   After the PTO allowed claims 9-10, as amended, EON added a similar limitation to independent claims 1 and 8. Ex. 9 (May 24, 2012 Amendment) (adding Term 15 "means controlled by said replaceable software means operable with said operation control system for reconfiguring the operating modes by adding or changing features and introducing new menus").   The PTO allowed the amended claims. Ex. 10 (June 22, 2012 Notice).   Having amended the claims and argued to the PTO that these

14

computer-implemented functions distinguished the '757 patent from the prior art to gain

allowance, EON cannot now argue the opposite and claim that the very same functions could be

performed by any general purpose computer without any specialized software, which would

make them well-known in the art at the time of the invention.

**b. EON Provides No Evidence that Any Computer-Implemented Claim Terms Could Be Performed by a General Purpose Computer Without Specialized Software**

Even if estoppel did not apply, EON's arguments still fail.  In an attempt to show that no

special programming was required, █████████████████████████████





Specialized programming would thus be required because the claimed functions are not generic, off-the-shelf computer functions (such as processing, receiving and storing)—rather, they are specialized tasks unique to EON's purported invention:

- "reconfiguring the operating modes," "adding or changing features," and "introducing new menus" (Term 15);

- "establishing a mode of operation for selection of one of a plurality of authorized television program channels" (Term 16);

- "establishing a first menu directed to different interactively selectable program theme subsets available from said authorized television program channels" (Term 17);

- "causing selected themes to automatically display a second menu" (Term 18);

- "establishing and controlling a mode of operation that records historical operating data of the local subscriber's data processing station" (Term 19);

- "establishing and controlling fiscal transactions with a further local station" (Term 20); and

- "establishing an accounting mode of operation" and "maintaining and reporting fiscal transactions incurred in the operation of the local subscriber's data processing station" (Term 21).



and the Federal Circuit has previously held that manipulating financial transaction data—similar to the functions claimed in Terms 20 and 21—requires disclosure of an algorithm. *Noah Sys.*, 675 F.3d at 1315. In addition, and as EON argued to the PTO during the first reexamination, the claimed function of "reconfiguring the operating modes by adding or changing features and introducing new menus" (Term 15) clearly requires specialty software that goes beyond the basic and well-known-in-the-art "processing, receiving, and storing" capabilities of a general purpose computer. *See* Section V.3.a., *supra*.

---

[13]   Indeed, the products EON has accused in this action do not use "general purpose computers," as understood by one of ordinary skill.  Rather, the accused devices use highly-specialized



chipsets known as "Application-Specific Integrated Circuits" (ASICs), which in turn rely on specialized software (protocol stacks, operating systems and applications) to allegedly implement the claim limitations at issue.  It is telling that each device EON accuses relies on both specialized software and specialized hardware to implement the functionality that EON asserts requires neither.

██████████████████

██████████████████

Mr. Klausner's speculation is insufficient to defeat Defendants' motion for summary judgment. *See, e.g., Blackboard Inc.*, 574 F.3d at 1385 ("A patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function.  To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function.") (internal citation omitted).  In short, his "opinion" is nothing more than *ipse dixit* that lacks any factual support or analysis, and should be disregarded. *Cf. Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d. Cir. 2000) (excluding expert opinion as ipse dixit and noting that "[a]n expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation.") (internal quotation marks and citation omitted).

Because the patent does not disclose any algorithm for any of these terms, each should be found indefinite. *See Netgear v. Ruckus*, C. A. No. 10-999, slip op. at *11 (Ex. 5) (claim term which requires selection of alternatives based on a condition was invalid because no algorithm was disclosed).  EON has not cited, and cannot cite, to any evidence showing that any of the disputed functions could be performed by a general purpose computer, and indeed, the inventor's testimony and the prosecution history prove just the opposite.  Accordingly, because the '757 patent fails to disclose any algorithms, each of the Computer-Implemented Terms should be found invalid.

## VI.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court find that claims 1-10 of the '757 patent are invalid for failing to comply with 35 U.S.C. § 112, ¶ 6.

POTTER ANDERSON & CORROON, LLP

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com
*Attorneys for Defendants FLO TV*
*Incorporated and Qualcomm Inc.*

FARNAN LLP

/s/ Brian Farnan
Brian Farnan (#4089)
919 North Market Street
12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
*Attorneys for Defendant MobiTV Inc.*

FISH & RICHARDSON, P.C.

/s/ Thomas Lee Halkowski
Thomas Lee Halkowski (#4099)
222 Delaware Avenue
17th Floor
Wilmington, DE 19801
(302) 652-5070
halkowski@fr.com
*Attorneys for Defendant LG Electronics*
*MobileComm USA Inc.*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jennifer Ying
Karen Jacobs (#2881)
Jennifer Ying (#5550)
Megan E. Dellinger (#5739)
1201 North Market Street P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
kjacobs@mnat.com
jying@mnat.com
mdellinger@mnat.com
*Attorneys for Defendants Sprint Nextel*
*Corporation, HTC America, Inc., and Simplexity,*
*LLC d/b/a Wirefly*

RICHARDS, LAYTON & FINGER, P.A.

/s/ Steven J. Fineman
Steven J. Fineman (#4025)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
*Attorneys for Defendant United States Cellular*
*Corporation*

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Jennifer Ying
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
jying@mnat.com
*Attorneys for Defendant Motorola Mobility LLC*

Dated:  November 1, 2013
Public Version Dated: November 8, 2013
1128621 / 36087

21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E, Moore, hereby certify that on November 8, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 8, 2013, the attached document was Electronically Mailed to the following person(s):

Gregory B. Williams
Fox Rothschild LLP
919 N. Market Street, Suite 1300
Wilmington, DE  19801
gwilliams@foxrothschild.com
*Attorneys for EON Corp. IP Holdings, LLC*

Cabrach J, Connor
Daniel R. Scardino
Steven P. Tepera
Craig S. Jepson
Chad P. Ennis
John L. Hendricks
Mark Halderman
Rola Daaboul
Dominique G. Stafford
Jason W. Deats
Joshua G. Jones
Reed & Scardino LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
jjohnson@reedscardino.com
cconnor@reedscardino.com
dscardino@reedscardino.com
stepera@reedscardino.com
cjepson@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mhalderman@reedscardino.com
rdaaboul@reedscardino.com
dstafford@reedscardino.com
jdeats@reedscardino.com
jjones@reedscardino.com
mailto:jmoles@reedscardino.com*Attorneys for EON Corp. IP Holdings, LLC*

Edmond D. Johnson
James G. McMillan, III
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, DE  19899-1709
johnsone@pepperlaw.com
mcmillanj@pepperlaw.com
*Attorneys for GoTV Networks, Inc.*

Maura L. Rees
Dylan J. Liddiard
Anthony J. Weibell
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304
mrees@wsgr.com
dliddiard@wsgr.com
aweibell@wsgr.com
*Attorneys for GoTV Networks, Inc.*

Heidi Keefe
Mark Weinstein
Kyle Chen
Lam K. Nguyen
Dena Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA  94306
HTC-EON@cooley.com
kyle.chen@cooley.com
hkeefe@cooley.com
mweinstein@cooley.com
lfass@cooley.com
lnguyen@cooley.com
dchen@cooley.com
*Attorneys for HTC America*

Philip A. Rovner
Jonathan A. Choa
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
P. O. Box 951
Wilmington, DE  19899
provner@potteranderson.com
jchoa@potteranderson.com
*Attorneys for Kyocera Communications Inc.*

Jose L. Patino
Nicola A. Pisano
Justin E. Gray
Foley & Lardner LLP
3579 Valley Centre Drive, Suite 300
San Diego, CA  92130
jpatino@foley.com
npisano@foley.com
jegray@foley.com
*Attorneys for Kyocera Communications Inc.*

Steven J. Balick
Lauren E. Maguire
Andrew C. Mayo
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, DE 19899
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
amayo@ashby-geddes.com
*Attorneys for LetsTalk.com, Inc.*

Daniel J. Bergeson
Jaideep Venkatesan
Bergeson, LLP
303 Almaden Blvd., Suite 500
San Jose, CA  95110-2712
dbergeson@be-law.com
jvenkatesan@be-law.com
*Attorneys for LetsTalk.com, Inc.*

Brian E. Farnan
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
bfarnan@farnanlaw.com
*Attorneys for MobiTV, Inc.*

Jack B. Blumenfeld
Karen Jacobs Louden
Jennifer Ying
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
Wilmington, DE 19899
jblumenfeld@mnat.com
klouden@mnat.com
jying@mnat.com
*Attorneys for Motorola Mobility, Inc., Sprint*
*Nextel Corporation, HTC America, and*
*Wirefly, Corp.*

Steven D. Moore
Kilpatrick Townsend & Stockton LLP
Eighth Floor, Two Embarcadero Center
San Francisco, CA  94111
Smoore@kilpatricktownsend.com
*Attorneys for Motorola Mobility LLC*

Thomas Lee Halkowski
Fish & Richardson P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899-1114
halkowski@fr.com
*Attorneys for LG Electronics MobileComm*
*USA, Inc.*

Daralyn J. Durie
Laura E. Miller
Durie Tangri
217 Leidesdorff Street
San Francisco, CA  94111
ddurie@durietangri.com
lmiller@durietangri.com
*Attorneys for MobiTV, Inc.*

William H. Boice
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA  30309
Bboice@kilpatricktownsend.com
*Attorneys for Motorola Mobility LLC*

Carl Sanders
James L. Howard
Caroline K. Wray
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC  27101
csanders@kilpatricktownsend.com
jhoward@kilpatricktownsend.com
cwray@kilpatricktownsend.com
*Attorneys for Motorola Mobility LLC*

Gregory P. Williams
Steven J. Fineman
Richards, Layton & Finger, PA
One Rodney Square
920 N. King Street
Wilmington, DE  19801
Williams@rlf.com
fineman@rlf.com
*Attorneys for U.S. Cellular Corporation*

Richard A. Sterba
FISH & RICHARDSON P.C.
1425 K Street, NW
11th Floor
Washington, DC 20005
sterba@fr.com

*Attorneys for LG Electronics MobileComm
USA, Inc.*

Richard J. O'Brien
Robert D. Leighton
Sidley Austin LLP
One South Searborn
Chicago, IL  60603
robrien@sidley.com
rleighton@sidley.com
*Attorneys for U.S. Cellular Corporation*

By:   /s/ David E. Moore
      Richard L. Horwitz
      David E. Moore
      Bindu A. Palapura
      POTTER ANDERSON & CORROON LLP
      Tel:  (302) 984-6000
      rhorwitz@potteranderson.com
       dmoore@potteranderson.com
      bpalapura@potteranderson.com

990333/36087