## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 10-812-RGA |
| | § | |
| v. | § | JURY TRIAL REQUESTED |
| | § | |
| FLO TV INCORPORATED; et al. | § | |
| | § | |
| Defendants. | § | **(PUBLIC VERSION)** |

**OPENING BRIEF IN SUPPORT OF PLAINTIFF EON'S DAUBERT MOTION
TO EXCLUDE THE EXPERT REPORT OF JACK D. GRIMES, PH.D.
ON THE INVALIDITY OF U.S. PATENT NO. 5,663,757
AND PRECLUDE RELATED TESTIMONY**

*Of Counsel:*

Daniel R. Scardino
Steven P. Tepera
Craig S. Jepson
Chad P. Ennis
John L. Hendricks
Mark W. Halderman
Rola Daaboul
Jason W. Deats
Dominique G. Stafford
Joshua G. Jones
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
stepera@reedscardino.com
cjepson@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mhalderman@reedscardino.com
rdaaboul@reedscardino.com
jdeats@reedscardino.com
dstafford@reedscardino.com
jjones@reedscardino.com

*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
FOX ROTHSCHILD LLP
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel: (302) 622-4211
Fax: (302) 656-8920

**ATTORNEYS FOR PLAINTIFF
EON CORP. IP HOLDINGS, LLC**

Dated: November 1, 2013
Public Version Dated: November 8, 2013

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     LEGAL STANDARD.................................................................................................. 1

      A.      Motions to Exclude Based Upon Unreliable Opinions.......................................... 1

      B.      Anticipation Expert Analysis Requires Three Distinct Steps. ............................... 3

      C.      Obviousness Expert Opinions Require Analysis With Articulated Reasoning. ..... 3

III.    ARGUMENT ............................................................................................................... 4

      A.      The Grimes Report Should Not Be Considered For Purposes of Anticipation. ..... 4

          1.      The Grimes Report Lacks Interpretation of Each Claim Element. ............. 4

          2.      The Grimes Report Fails to Explain How Each Claim Element is
                  Allegedly Disclosed in the Prior Art.......................................................... 6

          3.      The Sections of the Grimes Report on the Telaction Television System
                  Is Unreliable Because It Is Inconsistent with the Principles of
                  Anticipation Law. .................................................................................... 12

      D.      The Grimes Report Should Not Be Considered for Purposes of Obviousness..... 14

IV.     CONCLUSION.......................................................................................................... 15

## TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                        **Page(s)**

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    509 U.S. 579 (1993)...................................................................................................2

*Elcock v. Kmart Corp.,*
    233 F.3d 734 (3d Cir. 2000)...................................................................................2

*Elder v. Tanner,*
    205 F.R.D. 190 (E.D. Tex. 2001).............................................................................3

*Finisar Corp. v. DirecTV Group, Inc.,*
    523 F.3d 1323 (Fed. Cir. 2008).............................................................................12

*Gen. Elec. Co. v. Joiner,*
    522 U.S. 136 (1997).................................................................................................2

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.,*
    676 F.3d 1063 (Fed. Cir. 2012)..............................................................................4

*In re Kahn,*
    441 F.3d 977 (Fed. Cir. 2006)............................................................................4, 15

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994).......................................................................................1

*Innogenetics, N.V. v. Abbott Labs.,*
    512 F.3d 1363 (Fed. Cir. 2008)...........................................................................4, 15

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC,*
    381 F.3d 1142 (Fed. Cir. 2004)........................................................................3, 4, 6

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007).................................................................................................4

*Micro Chem., Inc. v. Lextron, Inc.,*
    317 F.3d 1387 (Fed.Cir.2003)..................................................................................1

*Oxford Gene Tech. Ltd. v. Mergen Ltd.,*
    345 F. Supp. 2d 431 (D. Del. 2004).................................................................1, 2, 3

*Pineda v. Ford Motor Co.,*
    520 F.3d 237 (3d Cir. 2008).....................................................................................2

*Schumer v. Lab. Computer Sys., Inc.,*
    308 F.3d 1304 (Fed. Cir. 2002)...........................................................................6, 12

*Scripps Clinic & Research Found. v. Genentech, Inc.,*
    927 F.2d 1565 (Fed. Cir. 1998)................................................................................3

*Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.,*
    No. 05-2433-JWL, 2007 WL 2572417 (D. Kan. Sept. 4, 2007)................................3

*Sundance, Inc. v. DeMonte Fabricating Ltd.,*
    550 F.3d 1356 (Fed. Cir. 2008)...............................................................................2

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.,*
    522 F.3d 1348 (Fed. Cir. 2008)..............................................................................13

## FEDERAL STATUTES

35 U.S.C. § 102............................................................................................................12

## RULES

Federal Rule of Civil Procedure 26(a) .....................................................................1, 4

Federal Rule of Evidence Rule 702 .........................................................................1, 2

## I.      INTRODUCTION

In the Expert Report of Jack D. Grimes, Ph.D. on the Invalidity of U.S. Patent No. 5,663,757 (the "Grimes Report"), Dr. Grimes disregards the legal standards of anticipation and obviousness to offer nothing more than a mantra of rote, boilerplate language with hundreds of pages of block quotes and diagrams of prior art.  For purposes of anticipation, Dr. Grimes offers no interpretation of the claim elements or explanation of where each and every claim limitation is disclosed in the prior art and makes overly broad disclosures that conflict with anticipation law.    Moreover, Dr. Grimes' mechanical, conclusory phrases offered for obviousness neglect any articulated reasoning to show motivation to combine the prior art references with a reasonable expectation of success for doing so.  Because of these defects, the Grimes Report is unreliable, thus failing to present scientific or specialized knowledge that will assist the trier of fact as Rule 702 requires.  For this reason, EON respectfully requests that the Court exclude the Grimes Report and preclude Dr. Grimes from offering related testimony at trial.

## II.     LEGAL STANDARD

### A.      <u>Motions to Exclude Based Upon Unreliable Opinions.</u>

Motions to exclude expert testimony are committed to the court's discretion.  *See In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 749 (3d Cir. 1994); *Oxford Gene Tech. Ltd. v. Mergen Ltd.,* 345 F. Supp. 2d 431, 434 (D. Del. 2004).  Admissibility of expert testimony in a patent suit is governed by the law of the regional circuit in which the district court resides.  *Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1390–91 (Fed.Cir.2003).

Federal Rule of Civil Procedure 26(a)(2)(B) requires expert reports to contain "a complete statement of all opinions the witness will express and the basis and reasons for them . . . [and] the facts or data considered by the witness in forming them."  Fed. R. Civ. P. 26(a)(B).

1

Under Rule 702, the district court has the obligation to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993); *see also Sundance, Inc. v. DeMonte Fabricating Ltd.,* 550 F.3d 1356, 1360 (Fed. Cir. 2008) ("[C]ourts are charged with a 'gatekeeping role,' the objective of which is to ensure that expert testimony admitted into evidence is both reliable and relevant."); *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir. 2008). Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Federal Rule of Evidence 702. This "requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Daubert,* 509 U.S. at 591-92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). "The subject of an expert's testimony must be grounded in the methods and procedures of science and based on more than a subjective belief or speculation." *Oxford Gene,* 345 F. Supp. 2d at 434 (citations omitted) (excluding expert's conclusions of patent invalidity based on anticipation and obviousness in finding his opinions unreliable under *Daubert* and therefore not useful to the trier of fact). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit evidence that is connected to existing data only be the ipse dixit of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Elcock v. Kmart Corp.,* 233 F.3d 734, 749 (3d Cir. 2000). The party offering the expert testimony has the burden of proving admissibility. *See Daubert,* 509 U.S. at 592 n.10.

2

### B.     Anticipation Expert Analysis Requires Three Distinct Steps.

Expert testimony concerning anticipation "must identify each claim element, state the witnesses' interpretation of the claim element, and explain *in detail* how each claim element is disclosed in the prior art reference." *Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC,* 381 F.3d 1142, 1152 (Fed. Cir. 2004) (emphasis added) ((citing *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315–16 (Fed. Cir. 2002)).   Where an expert "simply omit[s] that essential analytical step," his "opinion on anticipation is fundamentally flawed."   *Oxford Gene,* 345 F. Supp. 2d at 437 (finding expert's report regarding anticipation "wholly and irretrievably inadequate" where expert "omitted that essential analytical step" by "not identify[ing] which specific claim limitations of the [patent-in-suit] are or are not disclosed in the [prior art]"); *Sprint Commc'ns Co., L.P. v. Vonage Holdings Corp.,* No. 05-2433-JWL, 2007 WL 2572417, at *2 (D. Kan. Sept. 4, 2007) (holding that a mere summary of an expert's testimony in the form of a conclusory statement without analytical support is insufficient to lay the proper foundation for the admission of that testimony.); *Elder v. Tanner,* 205 F.R.D. 190, 193-94 (E.D. Tex. 2001) (excluding patent experts' conclusory opinions regarding infringement, anticipation, and obviousness which contained no discussion of their thought processes because their testimony would not assist the trier of fact in determining the case).   For anticipation, "[t]here must be *no difference* between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention."   *Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1576 (Fed. Cir. 1998) (emphasis added).

### C.     Obviousness Expert Opinions Require Analysis With Articulated Reasoning.

To establish obviousness, the defendant "must 'demonstrate by clear and convincing evidence that a skilled artisan would have had a reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a

3

reasonable expectation of success from doing so.'" *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1068–69 (Fed. Cir. 2012) (quoting *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 994 (Fed. Cir. 2009)). A party must provide "more than conclusory statements; instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness." *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("To facilitate review, this analysis should be made explicit."). In other words, "some kind of motivation must be shown from some source, so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one to achieve the patented method." *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir. 2008) (citations omitted) (affirming district court's exclusion of expert report that "merely list[ed] a number of prior art references and then conclude[d] with the stock phrase 'to one skilled in the art it would have been obvious to perform the [claimed method]'" to hold that expert report failed to satisfy the requirements of Federal Rule of Civil Procedure 26(a)). An expert report that fails to "state how or why a person skilled in the art would have found the claims of the [patent-in-suit] obvious in light of some combination of those particular [prior art] references" is "not [] helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness." *Id.* at 1373.

## III.   ARGUMENT

### A.   <u>The Grimes Report Should Not Be Considered For Purposes of Anticipation.</u>

#### 1.   **The Grimes Report Lacks Interpretation of Each Claim Element.**

The Grimes report fails to provide interpretation that would enable a juror to understand what must be disclosed in the prior art for purposes of anticipation. *Koito*, 381 F.3d at 1152 (stating requirement that expert testimony on anticipation must "state the witnesses'

4

interpretation of the claim element"). Instead of providing a basis for the jury to understand each claim element, Dr. Grimes' charts employ the same formulaic method for each claim: (1) he identifies the '757 claim by placing it in the left side of the chart; (2) on the right side of the chart, he includes a conclusory statement that the prior art anticipates the '757 claim element "under all proposed constructions"; and (3) he inserts block language or a diagram directly from the prior art beneath the conclusory statement.

For example, 1(h) in the Young '455 chart provides an exemplary illustration of Dr. Grimes' "identification without interpretation" method. In that chart, Dr. Grimes identifies the '757 claim element on the left side of the chart by quoting it: "subscriber manual control means for interactive participation and operation of said operation control system over an authorized range of optional features." On the right hand side, he states that the Young '455 patent anticipates this element by employing the perfunctory "Young '455 discloses," then directly quotes the '757 claim language again, and follows with the boilerplate phrase "under all proposed constructions." *See* Grimes Report (attached as Exhibit A), Grimes Young '455 Chart (Ex. 3), at 21-22.

| [1h] subscriber manual control means for interactive participation and operation of said operation control system over an authorized range of optional features, | Young '455 discloses "subscriber manual control means for interactive participation and operation of said operation control system over an authorized range of optional features," under all proposed constructions.<br><br>The analysis of claim elements 1a, 1b, 1c, 1d, 1e, 1f and 1g above are incorporated by reference as if fully set forth herein.<br><br>Young '455 discloses, "After processing embedded data in a broadcast, the microprocessor (5) generates a cue for display on TV receiver (60). Remote control receiver (20) receives a command from a remote controller (22) from a viewer input in response to the cue." [Abstract, Young '455].<br><br>"The viewer responds to the cue by pushing a key on a remote controller, by a switch on the apparatus, by making a loud sound, or by any other means that will activate the system to store the supplemental data in memory." [C2:41-44, Young '455].<br><br>"An entry table is provided on-screen requesting the user to enter a cable channel number corresponding to each |

Nowhere does Dr. Grimes provide a basis for a juror to understand the claim element. Despite the fact that Defendants propose that the function of 1(h) requires a structure consisting of a remote control unit with joystick and selection pushbutton switch, Dr. Grimes offers no

guidance or clarification so that the jury is aware the claim element allegedly requires such structures. *See* Exhibit A, Appendix B at 2 (setting forth Defendants' proposed constructions).

Indeed, throughout his report, Dr. Grimes entirely neglects to explain or conceptualize how such "proposed constructions" translate to the quoted claim elements. *See, e.g.,* Exhibit A, Grimes Smith '480 Chart (Ex. 2), at 10 (Dr. Grimes quotes the '757 Patent to state that the prior art anticipates the '757 claim element "under all proposed constructions" but fails to provide Defendants' proposed construction that 1(k) requires memory cards, chips, or discs containing software that can be plugged into external software slots and an interface between the microprocessor and the external software slots.); *see* Exhibit A, Appendix B at 4-5.   Without providing a basis for understanding what the claim element requires, Dr. Grimes is essentially asking the jury to provide its own interpretation of the claim element for purposes of evaluating whether the disclosed prior art anticipates each respective claim.   Accordingly, Dr. Grimes' failure to interpret the claim elements renders his opinion unhelpful and insufficient for purposes of evaluating anticipation at trial.

**2.      The Grimes Report Fails to Explain How Each Claim Element is Allegedly Disclosed in the Prior Art.**

The Grimes Report neglects to "explain *in detail* how each claim element is disclosed in the prior art reference," rendering his testimony insufficient for purposes of anticipation. *Koito,* 381 F.3d at 1152 (emphasis added) (citations omitted); *Schumer,* 308 F.3d at 1315–16 (stating requirement and noting that "testimony is insufficient if it is merely conclusory").   The expert's *own* analysis is necessary to show the relationship between the prior art and each and every limitation in the patent-at-issue, as the prior art must disclose the elements "in the same way" as the claim.   *Net MoneyIN,* 545 F.3d 1359, 1370 (Fed. Cir. 2008).   Generally speaking, Dr. Grimes' fatal errors fall in two basic categories:   1) a complete lack of explanation for

connecting a designated '757 claim element with the prior art; or 2) one or two sentences of analysis without pointing out how most—or all—of the claim limitations are disclosed in the prior art.  In either case, Dr. Grimes neglects the explanation necessary to enable the jury to draw connections between each and every claim limitation and the piece of disclosed prior art.

### a. *Type 1 Error: No Analysis At All.*

Representative of Dr. Grimes' first type of error is exemplified in 1(b) of the Young '455 chart.  In that chart, Dr. Grimes follows the three steps outlined above: (1) He identifies the '757 claim element by quoting it: "an operation control system in said data processing station for controlling video signals, system operating modes and interactive communications available to the subscriber."; (2) He makes a conclusory statement that the Young '455 patent anticipates this element by employing the mechanical "Young '455 discloses" and then directly quoting the '757 claim language; (3) Finally, Dr. Grimes inserts eleven paragraphs from the prior art.  *See* Exhibit A, Grimes Young '455 Chart (Ex. 3), at 3–5.

| [1b] an operation control system in said data processing station for controlling video signals, system operating modes and interactive communications available to the subscriber, | Young '455 discloses, "an operation control system in said data processing station for controlling video signals, system operating modes and interactive communications available to the subscriber," under all proposed constructions. |
|---|---|
| | The analysis of claim element 1a is incorporated by reference as if fully set forth herein. |
| | Young '455 discloses, "The output of the teletext receiver 4 is connected to a microprocessor 5. Microprocessor output 11 is connected to a video display generator 10, used to create text for television receiver 60. Video switcher 15 connects the display generator 10 output 17 to the TV receiver 60 to display a message from the microprocessor 5. |
| | The microprocessor 5 has a random access memory 9 and a system clock/calendar 6. After processing the embedded data, the microprocessor 5 generates a cue by outputting a symbol or message to the display generator 10 for display on TV receiver 60. Remote control receiver 20 receives a command from a remote controller 22 from a viewer input in response to the cue. Remote control receiver 20 is connected to an input line 21 and supplies a control signal to cause the microprocessor to store the embedded data in memory 9. The microprocessor then issues a message to the display generator 10 as an acknowledgement of the viewer input."  [C3:7-27, Young '455]. |
| | "Accordingly, it is an object of this invention to provide a system and process which will allow a viewer to select interactively to receive supplemental information related to material in a television broadcast." [C1:52-55, Young '455]. |
| | "It is a further object of the invention to provide such a system and process which will allow viewers to select |

The entirety of Dr. Grimes' *own* analysis totals twenty-six words: "Young '455 discloses . . . under all proposed constructions"; "The analysis of claim element 1a is incorporated by

reference as if fully set forth herein"; and "Young '455 discloses." The rest of Dr. Grimes' "analysis" is a quotation of '757 claim element 1(b) and nearly fifty lines of text and a diagram from the Young patents.

This method leaves the fact-finder to determine—without help from Dr. Grimes—how the '757 1(b) limitations read on the Young '455 patent because Dr. Grimes fails to point out the "operation control system," the "data processing station," or how the "operation control system" "control[s] video signals, system operating modes and interactive communications available to the subscriber" in the Young '455 patent. This mechanical, nonexplanatory method can be seen throughout the Young '455 chart, as nearly every '757 claim element contains no analysis from Dr. Grimes beyond a conclusory statement, an incorporation by reference statement, and a disclosure of a portion of the prior art. *See, e.g.*, Exhibit A, Grimes Young '455 Chart (Ex. 3), at 5–11 (analyzing '757 claim element 1(c) with thirty-six perfunctory words of analysis to introduce over 100 lines of text and three diagrams from the prior art); *id.* at 11–14 ('757 claim element 1(d)); *id.* at 14–16 ('757 claim element 1(e)); *id.* at 32–33 ('757 claim element 2).

This error also spreads throughout the other charts:

| Grimes Prior Art Chart | Type 1 Error: No Analysis At All |
|---|---|
| Smith '480 Chart (Ex. 2), at 5 | nothing more than boilerplate language and prior art with no attempt to draw connections between the claim limitations of 1(d) or 1(e) and Smith '480 |
| Smith '480 Chart (Ex. 2), at 12-13 | no analysis and no connections between the limitations of 1(k) and prior art |
| Smith '480 Chart (Ex. 2), at 12-13 | no analysis for claims 2, 3, or 4 |
| Martinez '036 (Ex. 4), at 7-8, 17-19 | no analysis to demonstrate how the claim limitation of Claims 1(d), 2, 3 or 4 are disclosed |
| GameLine System Chart (Ex. 6), at 16-18 | performs no analysis of his own to demonstrate that the system contains each and every limitation in 1(e) |

| Grimes Prior Art Chart | Type 1 Error: No Analysis At All |
|---|---|
| QUBE Chart (Ex. 8), at 21 – 26 | no analysis to explain how the claim limitations of 2, 3, 4, or 5 are met |
| Nintendo FCNS Chart (Ex. 7), at 31-32, 36-42 | offers no explanation on how the Nintendo FCNS discloses the limitations in claim element 1(k) or Claims 2, 3, or 4 |

**b.**    ***Type 2 Error:  Negligible Analysis With No Connection to Disclosed Prior Art.***

Grimes' second type of error is his failure to link a disclosure to a claim limitation.  The limitations of the claims are long and typically disclose several distinct limitations.  Grimes states that the prior art discloses "x" but never links the "x" to the A, B, or C of the claim limitations.  For example, in Grimes analysis of '757 claim element 1(a), Dr. Grimes includes a few sentences of his own analysis but still fails to show where each and every limitation of claim element 1(a) is disclosed in Young '455.  *See* Exhibit A, Grimes Young '455 Chart (Ex. 3), at 1-3. The first sentence is a general description of the Young '455 patent: "U.S Patent No. 4,977,455 ('Young '455') describes a VCR interactive television schedule controller and will be referred to herein as the 'Young '455.'"  *Id.* at 1.   The second sentence is the boilerplate conclusory statement that "Young '455 discloses, [the 1(a) claim language] . . ., under all proposed constructions."  *Id.* The third sentence parrots the first, summarizing the invention: "Young '455 discloses an interactive television system."  *Id.*

Assuming that Dr. Grimes is correct in asserting that the invention is "an interactive television system," or more specifically, "a VCR interactive television schedule controller," there is no connection between that analysis and the limitations in 1(a).  *Id.* at 1-3.  Specifically, Dr. Grimes fails to point out "a local subscriber's processing station," "a wireless television program communication network," or "coupling together a set of interactive subscriber television receiver stations," leaving the fact-finder to dig through more than forty lines of text from the

Young patents to determine—on his or her own—whether each of those limitations is included. *Id.* at 1-3.

Throughout the other charts, Dr. Grimes makes the same mistake:

| Grimes Prior Art Chart | Type 2 Error: Negligible Analysis With No Connection to Disclosed Prior Art. |
|---|---|
| '480 Chart (Ex. 2), at 1-2 | draws no connections between the limitations in 1(a) and Smith '480 |
| '480 Chart (Ex. 2), at 4 | posits that Smith '480 "includes an in-home subscriber apparatus" with several features but fails to connect those portions of Smith '480 with any limitations in element 1(c) |
| Martinez '036 (Ex. 4), at 1–5 | attempts to point out a local subscriber's data processing station but neglects the other claim limitations of 1(a) |
| Martinez '036 (Ex. 4), at 5–7 | attempts to disclose "a subscriber TV 12 with a video display screen" but neglects to identify the "program control means" and "television program channel selection means" limitations |
| Martinez '036 (Ex. 4), at 14-15 | totality of Dr. Grimes' anticipation analysis is that "Martinez '036 discloses conventional microprocessor control" but no demonstration of how "conventional microprocessor control" relates to all of the 1(k) limitations |
| GameLine System Chart (Ex. 6), at 1-2 | fails to connect his descriptions of GameLine with the 1(a) limitations by not attempting to show specifically how the "interactive" "game playing system" discloses "a local subscriber's data processing station," "a wireless television program communication network," or "coupling together a set of interactive subscriber television receiver stations" |
| GameLine System Chart (Ex. 6), at 12-16 | contends that the system "includes sources of television program control channels" without explaining how the disclosed prior art contains anything that could be reasonably construed to meet the claim limitations of 1(d) |
| QUBE Chart (Ex. 8), at 1 | contends that QUBE is "an interactive hardware and software system providing bi-directional communication network capability for subscriber television receivers" but fails to |

| Grimes Prior Art Chart | Type 2 Error: Negligible Analysis With No Connection to Disclosed Prior Art. |
|---|---|
| | connect that explanation of QUBE to any of 1(a)'s limitations |
| QUBE Chart (Ex. 8), at 2-3 | fails to connect QUBE's "operating modes with subscriber interaction" to 1(b)'s "operation control system" limitation |
| QUBE Chart (Ex. 8), at 8-9 | contends that QUBE discloses a "programmable computer" in the form of a Pioneer d864C microprocessor and includes an unlabeled photo allegedly showing that processor but does not analyze 1(e)'s other limitations that the programmable computer be "interconnected with said television receiver and said operation control system" |
| QUBE Chart (Ex. 8), at 15-18 | fails to point out that QUBE's "self contained software which is used to control the operation of the QUBE" constitutes "replaceable software means" to meet the other limitations in 1(k) |
| Nintendo FCNS Chart (Ex. 7), at 1-3 | fails to connect the limitations in 1(a) with disclosed prior art diagrams and neglects to explain how the diagrams disclose "a wireless television program communication network" or "coupling together a set of interactive subscriber television receiver stations" |
| Nintendo FCNS Chart (Ex. 7), at 3-7 | notes that Nintendo FCNS "discloses an operation control system" but fails to point out which element or elements in the disclosed diagrams constitute the operation control system or substantiates the other limitations in 1(b) |
| Nintendo FCNS Chart (Ex. 7), at 28-31 | asserts that Nintendo FCNS discloses "self contained software programs" in the form of "communication cartridges" and discloses pages of diagrams but provides no analysis as to the other limitations in 1(j) such as "operating mode options individually authorized to the subscriber" |

Dr. Grimes' level of generality is insufficient for purposes of demonstrating anticipation.

*See Net MoneyIN*, 545 F.3d at 1370 ("the 'arranged as in the claim' requirement applies to all

11

claims and refers to the need for an anticipatory reference to show all limitations of the claims arranged or combined in the same way as recited in the claims"); *Finisar Corp. v. DirecTV Group, Inc.,* 523 F.3d 1323, 1334–35 (Fed. Cir. 2008) (emphasizing that "disclosure of each element is not quite enough" for anticipation); *Schumer*, 308 F.3d at 1315–16 ("testimony is insufficient if it is merely conclusory").   Without expert analysis to show that the prior art's limitations are "arranged as in the claim," a juror is left with only his or her own speculations as to where "each and every limitation" is disclosed in the referenced prior art.   *See Net MoneyIN*, 545 F.3d at 1370.   Because the expert's explanation is critical, Dr. Grimes' rote language followed by paragraphs, oftentimes pages, of prior art is entirely unhelpful for the trier of fact and therefore should be excluded.

> ### 3.      The Sections of the Grimes Report on the Telaction Television System Is Unreliable Because It Is Inconsistent with the Principles of Anticipation Law.

Dr. Grimes contends that the Telaction Television System as it was in public use is anticipatory prior art yet attempts to claim the two patents underlying the Telaction Television System, Pocock '094 and Pocock '125, to show that the Telaction Television System anticipates the '757 Patent under 35 U.S.C. §102. *Compare* Exhibit A, at 34 ("Telaction Television System was an interactive television system developed by Cableshare and sold or publicly used in the United States."), *with* Grimes Telaction Television System Chart (Ex. 5) (Throughout his ninety-nine-page Telaction chart, Dr. Grimes repeatedly cites to both Pocock '094 and Pocock '125, attempting to argue that *together* the two documents anticipate the '757 Patent).   As a matter of anticipation law, Dr. Grimes is barred from claiming the breadth of all of the limitations in each piece of prior art that underpins the Telaction Television System and instead is restricted to the limitations of the Telaction Television System as it was in public use.   *See* 35 U.S.C. §102(a)(1) (2012) (specifies that the *single* piece of prior art may be a patent, a description in a printed

12

publication, or an invention in public use.); *see also Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.,* 522 F.3d 1348, 1356 (Fed. Cir. 2008) ("Determining whether a patent claim is invalid for prior public use under section 102(b) requires comparing the claim *to the alleged public use*.").[1]

As indicated by Dr. Grimes' own sources that demonstrate the Telaction Television System in public use, the Telaction Television System as used in public is *not* the invention described by Dr. Grimes in his Telaction Chart. *See* Jim Sulski*, Telaction Gets Ready to Open Doors of Its Electronic Mall,* Chicago Tribune, Oct. 16, 1987 (describes a system comprised of a television and a telephone enabling the viewer to "log[] on to the system by dialing the phone number shown on the screen" and "communicate with the Telaction system via phone lines and his or her telephone's Touch-Tone keypad" where "[t]he channel will be offered free to cable viewers (as part of the basic cable package) and *requires no additional equipment* in the viewer's home.") (emphasis added). This is different than what was described in the Pocock patents that claim a "system . . . [that] allows the subscribers to select which products or services they will view from their televisions by use of *in-home subscriber apparatus.*" Exhibit A, Grimes Telaction Television System Chart (Ex. 5), at 1.

Since Dr. Grimes identified the Telaction Television System in public use as that piece of prior art—and not either Pocock patent—he is limited "to the alleged public use" of the Telaction Television System. *Cf. Zenith*, 522 F.3d at 1356. That use is the telephone–television embodiment described in the Chicago Tribune and the YouTube video—Dr. Grimes' own sources. Because Dr. Grimes' disclosure of two patents as an attempted representation of the Telaction Television System is impermissible under anticipation law, his opinion is based on

---

[1] Note that the opinion's citation to "section 102(b)" refers to the same "public use" provision found today at § 102(a), as that language was moved in 2011 after this opinion was written. *See* Leahy–Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284, 285–86 (2011).

flawed methodology.  As such, the Telaction sections of the Grimes Report are unreliable and therefore should be excluded.

### D.    The Grimes Report Should Not Be Considered for Purposes of Obviousness

For obviousness, Dr. Grimes utilizes a mechanical script that basically does the following:  1) proposes a combination of prior art with a statement that the combination discloses the claimed element; 2) uses a boilerplate paragraph with the exact same language for all proposed combinations (set forth below); and 3) sometimes finishes with the sentence "This Claim is made obvious by Audebert '931 in combination with one or more of (the knowledge of one of ordinary skill in the art, [*insert prior art combinations*])."[2]  The boilerplate paragraph used for the proposed combinations is set forth below:

> One or ordinary skill in the art would have found the combination of [*insert prior art combination(s)*] obvious at least because adding [insert relevant patent claim element] yields predictable results.  These references and products come from the same field (interactive TV systems), relate to a common microprocessor technology and are directed at solving a common problem of [*insert description of function of patent claim element*].  The motivation to combine these references comes from many sources, including, but not limited to, the common field and the common technical challenges confronted in designing subscriber units that need to be easily modified to establish optional operating modes.  One of ordinary skill in the art would have understood the benefits of [*insert relevant patent claim element*] to establish optional operating modes more easily, to lower the cost of storing data, to improve security, to store subscriber preference and other data.  As a result, one of ordinary skill in the art would have been motivated to make these combinations because they provide, for example, these potential benefits associated with the ability to provide [*insert relevant patent claim element*].

---

[2]    Dr. Grimes uses this automated script throughout the Grimes Report.  *See, e.g.,* Exhibit A, Grimes Audebert '931 Chart (Ex. 1), at 10-12, 19-20, 21-22, 26, 29-30, 38; Grimes Smith '480 Chart (Ex. 2), at 13-15, 17-21, 32-33, 36-38; Grimes FCNS Nintendo Chart (Ex. 7), at 13-15, 59-60, 66-67.  In other places, Dr. Grimes does even less by only providing the proposed combination in a short, conclusory sentence and/or the recited sentence "This Claim is made obvious by Audebert '931 in combination with one or more of (the knowledge of one of ordinary skill in the art, [insert prior art combinations])."  *See, e.g.,* Exhibit A, Grimes QUBE System Chart (Ex. 8), at 22, 38; Grimes GameLine System, at 38, 40; Grimes Telaction Television System Chart (Ex. 5), at 51, 58.

This automated script is a nice recitation of obviousness law but disregards the "articulated reasoning" necessary to show motivation or reason to combine the teaching of the prior art. *In re Kahn,* 441 F.3d at 988. Merely restating the same statements for each and every proposed combination does not provide explicit analysis "so that the jury can understand why a person of ordinary skill would have thought of either combining two or more references or modifying one to achieve the patented method." *Innogenetics,* 512 F.3d at 1373-74 (affirming district court's exclusion of expert report that "merely list[ed] a number of prior art references and then conclude[d] with the stock phrase 'to one skilled in the art it would have been obvious to perform the [claimed method]'"). Because Dr. Grimes' stock phrases offer no specialized knowledge to the trier of fact, the Grimes Report should be excluded.

## IV.   CONCLUSION

Based on the foregoing, EON requests that the Court exclude the Grimes Report and preclude Dr. Grimes from offering any related testimony at trial.

FOX ROTHSCHILD LLP
*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel: (302) 622-4211
Fax: (302) 656-8920
gwilliams@foxrothschild.com

**ATTORNEYS FOR PLAINTIFF
EON CORP. IP HOLDING, LLC**

*Of Counsel:*

Daniel R. Scardino
Steven P. Tepera
Craig S. Jepson
Chad Ennis
John L. Hendricks
Mark W. Halderman
Rola Daaboul
Jason W. Deats

Dominique G. Stafford
Joshua G. Jones
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
stepera@reedscardino.com
cjepson@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mhalderman@reedscardino.com
rdaaboul@reedscardino.com
jdeats@reedscardino.com
dstafford@reedscardino.com
jjones@reedscardino.com

Date:  November 1, 2013

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 1, 2013, true and correct copies of the foregoing were

served on all counsel or record via CM/ECF.

*/s/ Gregory B. Williams*
Gregory B. Williams

| COUNSEL FOR FLO TV INC. AND QUALCOMM, INC. | David Ellis Moore<br>Richard L. Horwitz<br>POTTER ANDERSON & CORROON, LLP<br>1313 N. Market Street<br>Hercules Plaza, 6th Flr.<br>Wilmington, DE  19899-0951<br>dmoore@potteranderson.com<br>rhorwitz@potteranderson.com<br><br>Henry B. Gutman<br>Victor Cole<br>Courtney Welshimer<br>Daniel L. Kaplan<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY  10017<br>hgutman@stblaw.com<br>vcole@stblaw.com<br>cwelshimer@stblaw.com<br>dkaplan@stblaw.com<br><br>Harrison J. Frahn<br>Jeffrey E. Ostrow<br>Jeffrey E. Danley<br>Michael A. Quick<br>SIMPSON THACHER & BARTLETT LLP<br>2475 Hanover Street<br>Palo Alto, CA  94304<br>hfrahn@stblaw.com<br>jostrow@stblaw.com<br>jdanley@stblaw.com<br>mquick@stblaw.com |
| COUNSEL FOR MOBITV, INC. | Brian E. Farnan                    (Lead Attorney)<br>FARNAN LLP<br>919 North Market Street, 12th Floor<br>Wilmington, DE  19801 |

| | |
|---|---|
| | bfarnan@farnanlaw.com |
| | Daralyn J. Durie<br>Laura E. Miller<br>DURIE TANGRI<br>217 Leidesdorff Street<br>San Francisco, CA  94111<br>ddurie@durietangri.com<br>lmiller@durietangri.com |
| **COUNSEL FOR U.S. CELLULAR CORPORATION** | Steven J. Fineman                    (Lead Attorney)<br>Katharine C. Lester<br>RICHARDS, LAYTON & FINGER, PA<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE  19801<br>fineman@rlf.com<br>lester@rlf.com<br><br>Richard J. O'Brien<br>Robert Leighton<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, Illinois  60603<br>robrien@sidley.com<br>rleighton@sidley.com |
| **COUNSEL FOR LG ELECTRONICS MOBILECOMM USA, INC.** | Thomas Lee Halkowski          (Lead Attorney)<br>FISH & RICHARDSON, P.C.<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE  19899-1114<br>halkowski@fr.com |
| **COUNSEL FOR MOTOROLA MOBILITY LLC** | Jack B. Blumenfeld            (Lead Attorney)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE  19899<br>jblumenfeld@mnat.com<br>William H. Boice<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1100 Peachtree St., NE, Ste. 2800<br>Atlanta, GA 30309<br>bboice@kilpatricktownsend.com<br><br>Steven D. Moore<br>Carl Sanders<br>James L. Howard<br>Carolin K. Wray |

| | |
|---|---|
| | KILPATRICK TOWNSEND & STOCKTON LLP<br>100 1 West Fourth Street<br>Winston-Salem, NC 27101<br>stmoore@kilpatricktownsend.com<br>csanders@kilpatricktownsend.com<br>jihoward@kilpatricktownsend.com<br>cwray@kilpatricktownsend.com |
| **COUNSEL FOR SPRINT NEXTEL CORPORATION** | Karen Jacobs<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE 19899<br>kjacobs@mnat.com |
| **COUNSEL FOR HTC AMERICA, INC.** | Karen Jacobs                (Lead Attorney)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE 19899<br>kjacobs@mnat.com<br><br>Heidi L. Keefe<br>Kyle D. Chen<br>Dena Chen<br>Mark R. Weinstein<br>Lam K. Nguyen<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA 94306<br>hkeefe@cooley.com<br>kyle.chen@cooley.com<br>mweinstein@cooley.com<br>lnguyen@cooley.com<br>HTC-EON@cooley.com<br>dchen@cooley.com |
| **COUNSEL FOR KYOCERA COMMUNICATIONS, INC.** | Philip A. Rovner<br>Jonathan A. Choa<br>POTTER ANDERSON & CORROON LLP<br>1313 N. Market Street<br>Hercules Plaza, 6th Flr.<br>Wilmington, DE 19899<br>Tel.: (302) 984-6000<br>provner@potteranderson.com<br>jchoa@potteranderson.com<br><br>Jose L. Patino (*pro hac vice*)<br>Nicola A. Pisano (*pro hac vice*) |

| | |
|---|---|
| | Justin E. Gray (*pro hac vice*)<br>FOLEY & LARDNER LLP<br>3579 Valley Center Drive, Suite 300<br>San Diego, CA  92130<br>jpatino@foley.com<br>npisano@foley.com<br>jegray@foley.com |
| **COUNSEL FOR *LETSTALK.COM , INC.*** | Jaideep Venkatesan                  (Lead Attorney)<br>Daniel J. Bergeson                  (Lead Attorney)<br>BERGESON, LLP<br>303 Almaden Blvd., Suite 500<br>San Jose, CA  95110-2712<br>jvenkatesan@be-law.com<br>dbergeson@be-law.com<br><br>Lauren E. Maguire<br>Steven J. Balick<br>Andrew Colin Mayo<br>ASHBY & GEDDES, P.A.<br>500 Delaware Avenue, 8th Floor<br>Wilmington, DE  19899<br>lmaguire@ashby-geddes.com<br>sbalick@ashby-geddes.com<br>amayo@ashby-geddes.com |
| **COUNSEL FOR *GOTV NETWORKS , INC.*** | Edmond D. Johnson                  (Lead Attorney)<br>James G. McMillan, III<br>PEPPER HAMILTON LLP<br>1313 Market Street, Suite 5100<br>Wilmington, DE  19899-1709<br>johnsone@pepperlaw.com<br>mcmillaj@pepperlaw.com<br><br>Maura L. Rees<br>Dylan J. Liddiard<br>Holly B. Baudler<br>Anthony J Weibell<br>WILSON SONSINI GOODRICH & ROSATI, PC<br>650 Page Mill Road<br>Palo Alto, CA  94304<br>mrees@wsgr.com<br>dliddiard@wsgr.com<br>hbaudler@wsgr.com<br>aweibell@wsgr.com |

| | |
|---|---|
| **_COUNSEL FOR SIMPLEXITY, LLC D/B/A WIREFLY_** | Karen Jacobs<br>Jennifer Ying<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE 19899-1347<br>kjacobs@mnat.com<br>jying@mnat.com |