## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| EON CORP. IP HOLDINGS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 10-812-RGA |
| v. | § | |
| | § | JURY TRIAL REQUESTED |
| FLO TV INCORPORATED; et al. | § | |
| | § | |
| Defendants. | § | |

## EON'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SINGLE TRIAL

*Of Counsel:*

Daniel R. Scardino
Steven P. Tepera
Craig S. Jepson
Chad Ennis
John L. Hendricks
Mark W. Halderman
Rola Daaboul
Jason W. Deats
Dominique G. Stafford
Joshua G. Jones
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
stepera@reedscardino.com
cjepson@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mhalderman@reedscardino.com
rdaaboul@reedscardino.com
jdeats@reedscardino.com
dstafford@reedscardino.com
jjones@reedscardino.com

*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
FOX ROTHSCHILD LLP
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel:  (302) 622-4211
Fax:  (302) 656-8920

**ATTORNEYS FOR PLAINTIFF**
**EON CORP. IP HOLDINGS, LLC**

Date:  January 7, 2014

## I.   NATURE OF THE PROCEEDINGS AND INTRODUCTION

EON filed this case on September 23, 2010, against several Defendants alleging infringement of U.S. Patent No. 5,663,757 (the "'757 patent").   After three years of pretrial practice, the trial is scheduled to begin on March 24, 2014.   EON moves that this action proceed as a single trial pursuant to Federal Rule of Civil Procedure 42(a)(1)[1].   Holding a single trial would be more efficient and a better expenditure of both judicial and the parties' resources than separate trials.   Beyond the standard overlapping issues of validity present in all patent cases, in this case, many of the same accused products are put together, manufactured, used or sold by more than one of the Defendants in the case, and those activities (which constitute direct infringement of the patent-in-suit under 35 USC § 271) are induced by other Defendants and still other Defendants contribute to the same direct infringement.   Therefore, the case against any particular Defendant necessarily involves common elements of proof and overlaps with the case against other Defendants.   Should separate trials be held, it will be impossible to avoid subjecting some of the Defendants to multiple trials and presenting the same witnesses and documents again and again.

## II.   FACTS

In order to understand the overlap, the position of the various parties must be understood. The claims of the patent-in-suit are directed at "data processing stations", which are subscriber

---

[1] The case has already been bifurcated as to liability and damages.   This motion does not address this initial substantive bifurcation. However, the risk of inconsistent judgments on liability (discussed below) if each Defendant has its own trial is exacerbated where, as here, damages and liability are bifurcated:   What if one Defendant is found to infringe by inducing the direct infringement of another Defendant, but the direct infringer is found by a separate jury in a separate trial not to directly infringe? At the damages phase, will the indirect infringer be allowed to re-litigate the issue of direct infringement that was already lost in the first trial because a separate jury in another trial found no infringement?

units, for use in a wireless communication network.[2]   The accused infringing subscriber units are generally known today as smartphones or tablets, and may generally be described as wireless subscriber units with video and interconnectivity capabilities.   Although there are seven defendants in the case, each has a role in making, importing, selling, and marketing the infringing products.   Defendants' acts of infringement are tightly bound and each Defendant is jointly and severally liable with one or more other Defendants for the same acts of infringement. Below is a brief, high-level description of each Defendant's role in the infringement.

A.  **The Infringing Ecosystem**

The Defendants in this case are not separate and distinct infringers.   They are all participating in an infringing ecosystem, whereby each Defendant's contribution or inducement ultimately results in direct infringement by other Defendants or subscribers who use the Defendants' products and services.   Because they are participating in an infringing ecosystem, most of the claims in this case involve issues of joint and several liability where more than one Defendant must be held to account for each act of infringement and each harm to EON.

**Sprint and U.S. Cellular (the "carriers" or "Network Operators"), and Simplexity** – Sprint, U.S. Cellular, and Simplexity each directly infringe the '757 patent by selling certain Motorola, HTC, and LG subscriber units and providing subscription network services, including the mobile television service provided via MobiTV.   *See* Third Amended Complaint, D.I. 243, ¶30, 34, 39.   Certain of the Motorola, HTC and LG subscriber units provided by Sprint, U.S.

---

[2] The '757 Patent describes the claimed "data processing station" as a "response unit" (Fig. 1), "customized interactive video subscriber's stations" (Col. 3, Ln. 42-43), "local response unit station at subscriber's location" (Col. 3, Ln. 56-27), "local subscriber's units or stations" (Col. 3, Ln. 47), and a "local subscriber's unit" (Col. 3, Ln. 63).

Cellular, and Simplexity contain Qualcomm chipsets.[3]  Simplexity, through its Wirefly website, sells phones designed to be used on the Sprint network and that are the same make and model of the subscriber units that EON accuses Sprint of selling directly to its customers.[4]  Sprint and U.S. Cellular also induce their customers, and the manufacturers, to install software such as MobiTV, YouTube, and Facebook and configure the subscriber units in such a way as to infringe the claims of the patent-in-suit.[5]

**Motorola, LG, and HTC (the "manufacturers")** – Motorola, LG, and HTC each directly infringe the '757 patent by manufacturing and selling the accused infringing subscriber units and each indirectly infringes by contributing to or inducing direct infringement by Sprint (and its customers), U.S. Cellular (and its customers) and Simplexity (and its customers).[6]  The accused infringing subscriber units are branded by both the network operator and the particular manufacturer.  So, for example, there are LG Sprint phones and LG U.S. Cellular phones.[7]  The subscriber units manufactured by these parties all contain either the Android or Windows operating system and either ship with or are compatible with MobiTV's wireless television

---

[3] *See e.g.* HTC Arrive for Sprint, Ex. A; Spec. Sheet for LG Optimus S, Ex. B; XT603 CDMA (Motorola Admiral) Level 3 Circuit Descriptions, Ex. C (description of Qualcomm MSM8655 chip on page 19).
[4] *See e.g.* HTC Arrive for Sprint, Ex. A.
[5] *See e.g.* HTC Arrive for Sprint, Ex. A; U.S. Cellular Mobile TV, Ex. D.
[6] *See e.g.* HTC Arrive for Sprint, Ex. A; LG Rumor Reflex Key Features, Ex. E; Motorola Electrify OEM User Interface and Marketing Material Requirements, Ex. F; EON's Third Amended Complaint, D.I. #243.
[7] *See e.g.* Spec Sheet for LG Optimus S, Ex. B; LT Tritan Quick Start Guide, Ex. G.

service.[8]   Many of these same accused subscriber units contain chipsets manufactured and sold by Qualcomm.[9]

**MobiTV** – MobiTV provides a mobile television service that comes pre-installed on many accused infringing subscriber units created by the manufacturers and sold for use on the Sprint and U.S. Cellular networks.[10]   On the Sprint subscriber units (regardless of manufacturer) the software is known as Sprint TV and on U.S. Cellular subscriber units (regardless of manufacturer) the software is known as U.S. Cellular Mobile TV.[11]   No matter its name, the MobiTV product is virtually the same across all manufacturers and network operators.

**Qualcomm** – Qualcomm manufactures chipsets and sells them for integration into subscriber units built by each manufacturer for each network operator.[12]   These chipsets contribute to and induce direct infringement by Motorola, HTC, LG, Sprint (and its customers), U.S. Cellular (and its customers) and Simplexity (and its customers) by facilitating the viewing of video content on subscriber units through services such as the mobile television service provided by MobiTV.

**FloTV** – FloTV is a mobile video service that provides video content to mobile devices. This service contributes to and induces direct infringement by LG (and its customers). LG

---

[8] *See e.g.* HTC Arrive for Sprint, Ex. A; LG Rumor Reflex Key Features, Ex. E; Motorola Electrify OEM User Interface and Marketing Material Requirements, Ex. F.

[9] *See e.g.* HTC Arrive for Sprint, Ex. A; Spec Sheet for LG Optimus S, Ex. B; XT603 CDMA (Motorola Admiral) Level 3 Circuit Descriptions, Ex. C (description of Qualcomm MSM8655 chip on page 19).

[10] *See e.g.* LG Rumor Reflex Key Features, Ex. E; HTC Arrive for Sprint, Ex. A; Electrify OEM User Interface and Marketing Material Requirements, Ex. F.

[11] *See e.g.* HTC Arrive for Sprint, Ex. A; U.S. Cellular Mobile TV, Ex. D.

[12]  *See e.g.* HTC Arrive for Sprint, Ex. A; Spec Sheet for LG Optimus S, Ex. B; XT603 CDMA (Motorola Admiral) Level 3 Circuit Descriptions, Ex. C (description of Qualcomm MSM8655 chip on page 19).

manufactured five devices equipped to host FloTV content, the LG Agora, LG Arena, LG Invision, LG Vu, and LG Vu Plus.[13] FloTV is a wholly owned subsidiary of Qualcomm.

Looking at two representative devices demonstrates the overlapping liability of the infringement allegations in this case. An HTC Arrive is manufactured by HTC, sold by both Sprint and Simplexity,[14] contains Sprint TV,[15] and a Qualcomm chipset.[16] Defendants HTC, Sprint, Simplexity, MobiTV, and Qualcomm are all necessary in order to have a trial on this device. Another exemplary device is the Motorola Electrify. This phone is manufactured by Motorola, sold by U.S. Cellular, and contains U.S. Cellular Mobile TV (provided by MobiTV).[17] For a trial where this device is in issue, Motorola, U.S. Cellular, and MobiTV would all be necessary parties. There is not a single device at issue in this case that does not involve multiple Defendants consistent with these two examples.

## III.    **ARGUMENT**

The Defendants in this matter have not contested that they were properly joined in a single action under FRCP 20. The question for the Court is whether the issues in the case should be further divided for trial beyond the previously imposed bifurcation of liability and damages.

Here, because of the Defendants are jointly and severally liable for the same acts of infringement, separate trials would not be feasible or efficient. The well-established law related to indirect infringement and the remedies for it holds that indirect infringers are jointly and severally liable with direct infringers for the harm caused the patentee by each act of infringement. *See Aro Mfg. Co., Inc.* v. *Convertible Top Replacement Co., Inc.,* 377 U.S. 476,

---

[13] *See e.g.* FloTV Device Evolution, Ex. H.
[14] *See*  HTC Arrive for Sprint, Ex. A.
[15] *Id.* at pg. 2.
[16] *Id.* at pg. 3.
[17] *See* U.S. Cellular Mobile TV, Ex. D.

500 (1964). In *Aro,* the Supreme Court characterized a contributory infringer as "a species of joint-tortfeasor, who is held liable because he has contributed with another to the causing of a single harm to the plaintiff."[18] If EON proves that the Defendants are jointly and severally liable for the infringement alleged by EON, then as joint tortfeasors each Defendant will be liable to recompense EON for the harm suffered, up to a full single recovery.[19]   Because the Defendants are jointly and severally liable for the same acts of infringement, separate trials will require

---

[18] *See id.; see also Hewlett-Packard Co.* v. *Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed. Cir. 1990) (holding that indirect infringement "liability [is] under a theory of joint tortfeasance, wherein one who intentionally cause[s], or aid[s] and abet[s], the commission of a tort by another [is] jointly and severally liable with the primary tortfeasor"); *Glenayre Elecs. Inc.* v. *Jackson,* 443 F.3d 851, 872 (Fed. Cir. 2006) ("***Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee.***") (emphasis added); *Shockley v. Arcan, Inc.,* 248 F.3d 1349, 1364 (Fed. Cir. 2001) ("Furthermore, other courts, including the Supreme Court, have held that parties that make and sell an infringing device are joint tortfeasors with parties that purchase an infringing device for use or resale."); *Birdsell* v. *Shaliol,* 112 U.S. 485, 488-89 (1884).

[19] *See* Chisum on Patents § 20.03(7)(b)(iv) ("In many instances the appropriate measure of monetary relief against an indirect infringer (i. *e.* one who contributes to or induces infringement) will be the same as that against the direct infringer."); *Water Techs. Corp.* v. *Calco, Ltd.,* 850 F.2d 660, 669 (Fed. Cir. 1988) ("[A]lthough Gartner's liability as a direct infringer may be *de minimis,* we see no reason to hold him liable for less than all damages attributable to Calco's infringing sales on the basis of his inducement of direct infringement."). *FMC Corp. v. Upright, Inc.,* 816 F. Supp. 1455, 1461 (N.D. Ca. 1993), aff'd 21 F. 3d 1073 ((Fed. Cir. 1994) ("A contributory infringer, like any joint tortfeasor, is responsible for the full extent of the harm suffered by the plaintiff. Like any tortfeasor, defendants are liable not only for the portion of the harm they caused, but also the portion of the harm caused by the direct infringer.") (citing *Syntex (U.S.A.) Inc. v. Paragon Optical Inc.,* 7 USPQ2d 1001, 1040 (D. Ariz. 1987)); *Chisum on Patents* §20.03[7][b][iii]. *See also Conopco, Inc.* v. *May Dept. Stores Co.,* 797 F. Supp. 740 (E.D. Mo. 1992) (holding that "retailer which was a defendant on patent infringement claim along with manufacturer was properly held jointly and severally liable, despite argument that conduct of various defendants could be quantified and apportioned with respect to each defendant."); *Chemtron, Inc. v. Aqua Prods., Inc.,* 830 F. Supp. 314, 316 (E.D. Va. 1993) (finding no federal right of contribution under patent law); *Construction Tech., Inc. v. Lockformer Co.,* 781 F. Supp. 195, 201-02 (S.D.N.Y. 1990*)* (holding that no federal right of contribution exists against settling co-defendant); *Motorola, Inc. v. Varo, Inc.,* 656 F. Supp. 716*,* 717-18 (N.D. Tex. 1986) (holding that the patent law defines who is a contributory infringer and that Congress did not intend to provide alleged patent infringer with a claim for contribution ); *Linksmart Wireless Tech., LLC v. T-Mobile USA, Inc.,* Case No. 2:08-cv-264-df-ce, 2010 WL 3816679, *3 (E.D. Tex. Sept. 2, 2010) (stating that no claims for contribution may arise under U.S. patent laws).

presenting the exact same infringing act to multiple juries and may result in inconsistent findings and confusion.

Pursuant to Federal Rule of Civil Procedure 42(b), the Court "may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." By default, a single action should proceed in a single trial and the burden is on the party seeking severance to show that bifurcation of joint tortfeasors into separate liability trials is appropriate. *SenoRx v. Hologic, Inc.,* 920 F. Supp. 2d 565, 567-8 (D. Del. 2013) (noting that bifurcation is the "exception, not the rule" in patent cases). The Court has broad discretion in determining whether separate trials are appropriate. Pursuant to its discretion, this District has considered a number of factors in making this determination; in short, "the court should 'balance considerations of efficiency, expense, and fairness.'" *Outten v. Wilmington Trust Corp.*, 281 F.R.D. 193, 197 (D. Del. 2012) (quoting *Resnik v. Woertz*, 774 F. Supp. 2d 614, 624 (D. Del. 2011)); *see also Myers*, 2013 WL 3853181, at *1 ("In exercising this discretion, the Court balances 'the risk of prejudice and confusion wrought by consolidation against the risk of inconsistent rulings on common factual and legal questions, the burden on the parties and the court, the length of time, and the relative expense of proceeding with separate lawsuits if they are not consolidated.'" (quoting *Nat'l Ass'n of Mortgage Brokers v. Bd. of Governors of Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 286 (D.D.C. 2011))). Specifically, that determination includes considerations of judicial efficiency, the parties' resources, and fairness to the parties:

> When exercising [their] broad discretion [to consolidate or bifurcate trials], courts should consider whether bifurcation will avoid prejudice, conserve judicial resources, and enhance juror comprehension of the issues presented in the case. In deciding whether one trial or separate trials will best serve the above factors, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation.

*SenoRx*, 920 F. Supp. at 568 (internal citations omitted).

If two or more trials involve substantial legal and factual overlap, then the first factor—judicial efficiency—favors a joint trial.  As this District recently noted, "the more that two bifurcated trials would tread the same legal and evidentiary ground, the less it can be said that bifurcation would serve judicial efficiency."  *Id.* at 569.  The same consideration—substantial overlap of factual and legal issues—applies to the second factor, the parties' resources.  Another court in this District consolidated two cases for trial, reasoning, *inter alia*, that the cases "involve multiple common questions of fact and law, including the relationships among the parties."  *MIG Investments LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 515 (D. Del. 2012).  That court reasoned that consolidating based upon the factual and legal overlap in the cases "save the parties and the Court time and resources."  *Id.*  Thus, an analysis of the first two factors—the Court's and the parties' resources—requires comparing "the savings of time and effort gained through consolidation . . . against the inconvenience, delay or expense that might result from simultaneous disposition of the separate actions."  *Outten*, 281 F.R.D. at 196–97 (internal quotation marks omitted) (alteration in original) (quoting *Waste Distillation Tech., Inc. v. Pan Am. Res., Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991)).

In examining the third factor—fairness to the parties, or what "would best serve the administration of justice"—courts in this District have examined specific indicia of fairness, including "the risk of inconsistent results" and "the potential for jury confusion."  *Eastman Chem. Co. v. AlphaPet Inc.*, C.A. Nos. 09–971–LPS–CJB, 11–702–LPS, 2011 WL 7121180, at *6–*8 (D. Del. Dec. 29, 2011).  The risk of inconsistent results, like the analysis of judicial and party resources, is especially important if there is overlap with legal and factual issues, where two juries could return conflicting results on similar issues.  That is balanced with the potential

for juror confusion, which could occur if there were little overlap between the trials if they were separate.

As the following analysis demonstrates, all of these factors favor one consolidated trial on liability in this case. Judicial efficiency and the parties' resources would be effectively used if this case is not divided into separate trials because there is substantial overlap between the factual and legal issues that would create vast redundancies from trial to trial. This is magnified where, as here, nearly all Defendants have joined nearly every filing before the Court. For the same reasons, multiple trials risks vast unfairness to EON, as the risk of inconsistent results greatly increases if each Defendant gets a bite at the same argument in front of different juries.

**A.  Holding A Single Trial In This Matter Will Conserve Judicial Resources.**

Given the overlapping products and issues in this case and the joint and several liability among the Defendants for certain individual acts of infringement, trying the case in a single trial will conserve judicial resources. If multiple trials were held, many of the same witnesses would be called to testify multiple times. For example, in a trial against Sprint, witnesses from each of the manufacturers would be necessary, in addition to witnesses from Qualcomm, and MobiTV. Many of the same witnesses would be necessary for a trial against U.S. Cellular. Of course, those witnesses would also need to attend the trial of the particular Defendant they represent.

The Defendants have issued several joint expert reports on infringement so having multiple trials would also require those expert witnesses to testify multiple times. All Defendants share a common validity expert, Jack Grimes, who would be required in every trial. The three manufacturers also share an infringement expert, Alan Bovik. Sprint, U.S. Cellular, and Simplexity share Andy Lippmann as an infringement expert. Breaking the case up into multiple trials would require these experts – and EON's expert who is designated for all parties

and all infringement and validity issues – to testify multiple times on the same subject matter presenting the same background and infringement allegations again and again.

Multiple trials would also require the same documents to be used again and again. For example, HTC documents concerning the accused subscriber units would be necessary in trials with HTC, Sprint, U.S. Cellular, Simplexity, and Qualcomm. The same is true for the other manufacturers' documents. Likewise, MobiTV and Qualcomm documents would be needed in trials against any manufacturer or network operator.

Multiple liability trials in this matter are the opposite of conserving judicial resources. Multiple liability trials would waste judicial resources. The most efficient use of judicial resources is a single trial.

### B. There Is No Prejudice In Trying Defendants Together; Trying Them Separately Is Prejudicial To EON.

There is no prejudice in trying Defendants together. EON views each Defendant with equal culpability in the infringement. And EON has yet to see any evidence that Defendants view any particular Defendant as a mastermind or the most culpable in the infringement. So it does not appear that the bad acts of one Defendant would affect the impressions of other Defendants in front of the jury. The accused features of the products at issue in this case are very similar and primarily based upon the subscriber units' use of software such as MobiTV. So, for example, the infringement issues for an HTC phone running Android with Sprint TV would be nearly identical to issues presented by a Motorola phone running Android with U.S. Cellular Mobile TV. The parties have proceeded amicably with consolidated discovery, so there the risk of revealing highly confidential information between Defendants is low.

Courts in this District have recognized that plaintiffs will be prejudiced by separate trials. *See SenoRX,* 920 F.Supp.2d at 568-9 (noting the prejudice resulting from the "inevitable delay,

and resulting prejudice… of two separate trials") (internal citations omitted).   Having unnecessary, serial trials that do not resolve any party's liability is a drain on EON's resources and is highly prejudicial.  EON has already been subjected to a lengthening of the case due to the bifurcation of liability and damages.   It should not be forced to suffer further economic prejudice.

### C. Having All of the Responsible Parties Present At the Trial Will Promote Fairness to the Parties

As discussed above, Defendants have overlapping roles in creating, marketing, and selling the accused subscriber units.  The technology in this case is not particularly complex and the more difficult damages issues have already been bifurcated.  The case concerns the operation of subscriber units that will be familiar to many jurors.  Having each party present at trial to explain and defend their role would present the jury with the entire picture and promote understanding.  A single trial avoids the issues created by having empty chairs at the defense table where responsible parties should be found.

Further, given the overlap between the products and parties, there is a high risk of inconsistent results.  The case involves subscriber units that are substantially similar for purposes of infringement, but may be sold, manufactured, or use components made by different combinations of Defendants, depending upon the subscriber unit in question.  For example, an infringing HTC Arrive is sold by HTC, Sprint, and Simplexity[20] and contains software provided by MobiTV and hardware provided by Qualcomm.[21]  Because of the tightly bound issues, virtually any outcome where one party infringes and another does not would be inconsistent.  For example, if HTC subscriber units are found to infringe on U.S. Cellular's network then they should also infringe on Sprint's network because, with respect to the claims of the patent-in-suit,

---

[20] *See e.g.* HTC Arrive for Sprint, Ex. A.
[21] *Id.*

the devices are virtually identical.  But if U.S. Cellular, Sprint and HTC each have separate trials then one may be found liable for infringement of a device while the others are not.  If subscriber units with MobiTV software infringe, then they should infringe regardless of manufacturer or carrier.  The differences across subscriber units, with respect to the claims of the patent-in-suit, are not meaningful.  Of course, with multiple trials, there is also the danger of inconsistent invalidity verdicts.  The best way to ensure consistent results is to hold a single trial.

### D. Trying All Defendants Together Is The Only Way To Achieve A Final Disposition Of The Litigation As To Any One Defendant.

"In deciding whether one trial or separate trials will best serve the above factors, the major consideration is directed toward the choice most likely to result in a just final disposition of the litigation." *SenoRx, Inc. v. Hologic*, Inc., 920 F. Supp. 2d at 568.  The only trial plan that would result in final disposition of the liability phase of the litigation would be to hold a single trial with all Defendants.  As discussed above, the parties' liability overlaps and is tightly wound together.  Any particular accused device will necessarily implicate multiple Defendants.  In order to fully resolve the claims against HTC, for example, EON needs to prove each of its accused subscriber units infringes.  One exemplary accused device that, by name, implicates HTC is the HTC Arrive.  But this device also implicates Sprint (the device is configured to work on the Sprint network and is sold by Sprint), Simplexity (the device is sold by Simplexity), MobiTV (the device is compatible with Sprint TV), and Qualcomm (the device contains a Qualcomm chipset).[22]  Take another HTC device – the HTC Hero S.  This device implicates a different set of defendants – HTC, U.S. Cellular, MobiTV, and Qualcomm – because that device is sold by U.S. Cellular and offered on its network, is used by MobiTV for their streaming video service,

---

[22] *See e.g.* HTC Arrive for Sprint, Ex. A.

and contains a Qualcomm chipset.[23]  In order to have a full trial on both of these HTC products (and resolve HTC's liability), all of the non-manufacturer Defendants would have to be present at the trial.  But if Sprint is involved in the trial – as is necessary – then the other manufacturers in addition to HTC would need to be involved in order to fully resolve the claims against Sprint and to prevent a second Sprint trial.  Motorola and LG would, therefore, need to be involved.  .

This same analysis applies regardless of which party is selected first.  For example, if U.S. Cellular is chosen, then the three handset manufacturers would be necessary to resolve the claims.  MobiTV and Qualcomm would also be required due to their contribution of components to the accused subscriber units.  But to fully resolve the claims against any of the three manufacturers or MobiTV and Qualcomm, Sprint would also need to be involved because its infringing activities significantly overlap with those Defendants.  If Sprint were in the trial, then Simplexity would also need to participate because it sells many of the accused Sprint subscriber units.  Like the first example, which started with a manufacturer, starting with a network operator leads to the same result: all Defendants must be involved in the trial because of the overlapping nature of the indirect and direct infringement claims against them.  Removing any Defendant – save Sprint or Simplexity – from this trial would result in a verdict that would leave some U.S. Cellular subscriber units without resolution.  On the other hand, having separate trials for Sprint or Simplexity would require the handset manufacturers (HTC, Motorola and LG), Qualcomm and MobiTV to participate multiple trials because they induce and contribute to Sprint's direct infringement.

---

[23] *See e.g.* HTC Hero S Tech Specs, Ex. I; HTC Kingdom Feature Sheet, Ex. J; U.S. Cellular Mobile TV, Ex. D.

### E.  The Leahy-Smith America Invents Act Supports EON's Position

The AIA, inter alia, changed how patent trials could be consolidated, preventing multiple alleged but unrelated infringers from being tried together (or consolidated into the same case) if their only common nexus was infringement of that patent.  *See* 35 U.S.C. § 299.  However, as the plain language and the legislative history of the AIA demonstrates, it was not intended to prevent the consolidation of multiple actions against separate Defendants who engaged in overlapping infringing conduct, like Defendants in this case.  The AIA specifically left in place consolidated trials where the alleged infringement by multiple parties arose out of the same transaction or occurrence:

> "[P]arties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, only if (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process."[24]

As the analysis above demonstrates, several groups of Defendants worked in conjunction to infringe the patent-in-suit.  Defendants are not a disparate group that the AIA intended for separate trials.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, EON requests that this Court order that a single trial be held with respect to Defendants Sprint, U.S. Cellular, Simplexity, Motorola, HTC, LG, MobiTV, FloTV and Qualcomm to begin March 24, 2014.

---

[24] 35 U.S.C. § 299(a)(1)

Dated:  January 7, 2014

FOX ROTHSCHILD LLP
*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel:  (302) 622-4211
Fax:  (302) 656-8920
**ATTORNEYS FOR PLAINTIFF**
**EON CORP. IP HOLDING, LLC**

*Of Counsel:*

Daniel R. Scardino
Steven P. Tepera
Craig S. Jepson
Chad Ennis
John L. Hendricks
Mark W. Halderman
Rola Daaboul
Jason W. Deats
Dominique G. Stafford
Joshua G. Jones
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
stepera@reedscardino.com
cjepson@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mhalderman@reedscardino.com
rdaaboul@reedscardino.com
jdeats@reedscardino.com
dstafford@reedscardino.com
jjones@reedscardino.com

## CERTIFICATE OF SERVICE

I hereby certify that, on January 2, 2014, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court via CM/ECF, which will send electronic notification of such filing to all counsel of record below.

*/s/ Gregory B. Williams*

Gregory B. Williams

| | |
|---|---|
| **COUNSEL FOR FLO TV INC. AND QUALCOMM, INC.** | David Ellis Moore<br>Richard L. Horwitz<br>POTTER ANDERSON & CORROON, LLP<br>1313 N. Market Street<br>Hercules Plaza, 6th Flr.<br>Wilmington, DE  19899-0951<br>dmoore@potteranderson.com<br>rhorwitz@potteranderson.com |
| | Henry B. Gutman<br>Victor Cole<br>Daniel L. Kaplan<br>SIMPSON THACHER & BARTLETT LLP<br>425 Lexington Avenue<br>New York, NY  10017<br>hgutman@stblaw.com<br>vcole@stblaw.com<br>dkaplan@stblaw.com<br>Harrison J. Frahn<br>Jeffrey E. Ostrow<br>Jeffrey E. Danley<br>Michael A. Quick<br>SIMPSON THACHER & BARTLETT LLP<br>2475 Hanover Street<br>Palo Alto, CA  94304<br>hfrahn@stblaw.com<br>jostrow@stblaw.com<br>jdanley@stblaw.com<br>mquick@stblaw.com |
| **COUNSEL FOR MOBITV, INC.** | Brian E. Farnan                       (Lead Attorney)<br>FARNAN LLP<br>919 North Market Street, 12th Floor |

|  | Wilmington, DE  19801<br>bfarnan@farnanlaw.com |
|---|---|
|  | Daralyn J. Durie<br>Laura E. Miller<br>DURIE TANGRI<br>217 Leidesdorff Street<br>San Francisco, CA  94111<br>ddurie@durietangri.com<br>lmiller@durietangri.com |
| **COUNSEL FOR U.S. CELLULAR CORPORATION** | Steven J. Fineman                    (Lead Attorney)<br>RICHARDS, LAYTON & FINGER, PA<br>One Rodney Square<br>920 N. King Street<br>Wilmington, DE  19801<br>fineman@rlf.com |
|  | Richard J. O'Brien<br>Robert Leighton<br>SIDLEY AUSTIN LLP<br>One South Dearborn<br>Chicago, Illinois  60603<br>robrien@sidley.com<br>rleighton@sidley.com |
| **COUNSEL FOR LG ELECTRONICS MOBILECOMM USA, INC.** | Thomas Lee Halkowski         (Lead Attorney)<br>Richard A. Sterba (Admitted *pro hac vice*)<br>Andy Thomson (Admitted *pro hac vice*)<br>FISH & RICHARDSON, P.C.<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE  19899-1114<br>halkowski@fr.com<br>sterba@fr.com<br>andy.thomson@fr.com |
| **COUNSEL FOR  MOTOROLA  MOBILITY LLC** | Jack B. Blumenfeld                    (Lead Attorney)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE  19899<br>jblumenfeld@mnat.com<br>William H. Boice<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>1100 Peachtree St., NE, Ste. 2800<br>Atlanta, GA 30309<br>bboice@kilpatricktownsend.com |
|  | Steven D. Moore |

| | |
|---|---|
| | Carl Sanders<br>James L. Howard<br>Caroline K. Wray<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>100 1 West Fourth Street<br>Winston-Salem, NC  27101<br>stmoore@kilpatricktownsend.com<br>csanders@kilpatricktownsend.com<br>jihoward@kilpatricktownsend.com<br>cwray@kilpatricktownsend.com |
| **COUNSEL FOR SPRINT NEXTEL CORPORATION** | Karen Jacobs Louden<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE  19899<br>kjlefiling@mnat.com |
| **COUNSEL FOR HTC AMERICA, INC.** | Karen Jacobs Louden                    (Lead Attorney)<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 North Market Street<br>Wilmington, DE 19899<br>kjlefiling@mnat.com<br><br>Heidi L. Keefe<br>Kyle D. Chen<br>Mark R. Weinstein<br>Lam K. Nguyen<br>COOLEY LLP<br>3175 Hanover Street<br>Palo Alto, CA 94306<br>hkeefe@cooley.com<br>kyle.chen@cooley.com<br>mweinstein@cooley.com<br>lnguyen@cooley.com<br>HTC-EON@cooley.com |
| **COUNSEL FOR KYOCERA COMMUNICATIONS, INC.** | Philip A. Rovner<br>Jonathan A. Choa<br>POTTER ANDERSON & CORROON LLP<br>1313 N. Market Street<br>Hercules Plaza, 6th Flr.<br>Wilmington, DE  19899<br>Tel.:  (302) 984-6000<br>provner@potteranderson.com<br>jchoa@potteranderson.com<br><br>Jose L. Patino (*pro hac vice*) |

| | |
|---|---|
| | Nicola A. Pisano (*pro hac vice*)<br>Justin E. Gray (*pro hac vice*)<br>FOLEY & LARDNER LLP<br>3579 Valley Center Drive, Suite 300<br>San Diego, CA  92130<br>jpatino@foley.com<br>npisano@foley.com<br>jegray@foley.com |
| **COUNSEL FOR *LETSTALK.COM*, *INC.*** | Jaideep Venkatesan            (Lead Attorney)<br>Daniel J. Bergeson            (Lead Attorney)<br>BERGESON, LLP<br>303 Almaden Blvd., Suite 500<br>San Jose, CA  95110-2712<br>jvenkatesan@be-law.com<br>dbergeson@be-law.com<br><br>Lauren E. Maguire<br>Steven J. Balick<br>Andrew Colin Mayo<br>ASHBY & GEDDES, P.A.<br>500 Delaware Avenue, 8th Floor<br>Wilmington, DE  19899<br>lmaguire@ashby-geddes.com<br>sbalick@ashby-geddes.com<br>amayo@ashby-geddes.com |
| **COUNSEL FOR *GOTV NETWORKS*, *INC.*** | Edmond D. Johnson            (Lead Attorney)<br>James G. McMillan, III<br>PEPPER HAMILTON LLP<br>1313 Market Street, Suite 5100<br>Wilmington, DE  19899-1709<br>johnsone@pepperlaw.com<br>mcmillaj@pepperlaw.com<br><br>Maura L. Rees<br>Dylan J. Liddiard<br>Holly B. Baudler<br>Anthony J Weibell<br>WILSON SONSINI GOODRICH & ROSATI, PC<br>650 Page Mill Road<br>Palo Alto, CA  94304<br>mrees@wsgr.com<br>dliddiard@wsgr.com<br>hbaudler@wsgr.com<br>aweibell@wsgr.com |

| | |
|---|---|
| **COUNSEL FOR SIMPLEXITY, LLC D/B/A WIREFLY** | Karen Jacobs Louden<br>Jennifer Ying<br>MORRIS, NICHOLS, ARSHT & TUNNELL LLP<br>1201 N. Market Street<br>Wilmington, DE 19899-1347<br>klouden@mnat.com<br>jying@mnat.com |
| **COUNSEL FOR AT&T MOBILITY, LLC** | Thomas W. Sankey<br>Diana Sangalli<br>Wesley W. Yuan<br>DUANE MORRIS LLP<br>1300 Post Oak Boulevard, Suite 800<br>Houston, TX 77056-3166<br>Tel.: 713.402.3900<br>Fax: 713.402.3901<br>twsankey@duanemorris.com<br>dmsangalli@duanemorris.com<br>wwyuan@duanemorris.com<br><br>Joseph A. Powers<br>DUANE MORRIS LLP<br>30 South 17th Street<br>Philadelphia, PA 19103-4196<br>Tel.: 215.979.1842<br>Fax: 215.689.3797<br>japowers@duanemorris.com<br><br>Alison M. Haddock<br>DUANE MORRIS LLP<br>1075 Peachtree Street, N.E., Suite 2000<br>Atlanta, GA  30309-3929<br>Tel.: (404) 253-6932<br>Fax: (404) 393-4249<br>amhaddock@duanemorris.com<br><br>Jack B. Blumenfeld (#1014)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19899<br>(302) 658-9200<br>jblumenfeld@mnat.com |