IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

EON CORP. IP HOLDINGS, LLC,　　　§
　　　　　　　　　　　　　　　　§
　　　　　　　　　　Plaintiff,　　§　　Civil Action No. 10-812-RGA
　　　　　　　　　　　　　　　　§
v.　　　　　　　　　　　　　　　§
　　　　　　　　　　　　　　　　§
FLO TV INCORPORATED; *et al.*　　§
　　　　　　　　　　　　　　　　§　　**PUBLIC REDACTED VERSION**
　　　　　　　　　Defendants.　　§
　　　　　　　　　　　　　　　　§

## <u>EON'S ANSWERING BRIEF IN OPPOSITION TO FLO TV'S</u>
## <u>MOTION FOR ATTORNEYS' FEES</u>

*Of Counsel:*

Daniel R. Scardino
Steven P. Tepera
Chad P. Ennis
John L. Hendricks
Matthew Murrell
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
stepera@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mmurrell@reedscardino.com

*/s/ Gregory B. Williams*
　Gregory B. Williams (#4195)
　Wali W. Rushdan II (#5796)
　FOX ROTHSCHILD LLP
　Email: gwilliams@foxrothschild.com
　　　　wrushdan@foxrothschild.com
　Citizens Bank Center
　919 N. Market Street, Suite 300
　Wilmington, DE 19801
　Tel:  (302) 622-4211
　Fax:  (302) 656-8920

**ATTORNEYS FOR PLAINTIFF**
**EON CORP. IP HOLDINGS, LLC**

Date:  April 7, 2014
Public Redacted Version Date: April 14, 2014

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..............................................................................................................1

II.     CONTROLLING FEDERAL CIRCUIT LAW RESTRICTS AN ATTORNEY FEES
        AWARD   TO   "EXCEPTIONAL"   CASES   AND   HEAVILY   FAVORS
        PATENTEES. ....................................................................................................................1

III.    DEFENDANT HAS FAILED TO DEMONSTRATE THAT EON'S ATTORNEYS
        ENGAGED IN MISCONDUCT........................................................................................2

IV.     DEFENDANT HAS FAILED TO DEMONSTRATE THAT EON'S CASE WAS
        PURSUED IN SUBJECTIVE BAD FAITH OR OBJECTIVELY BASELESS................8

V.      POTENTIAL EFFECTS OF EON'S APPEAL OF THE JUDGMENT. ...........................16

VI.     CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
  393 F.3d 1378 (Fed. Cir. 2005)..................................................................2, 10

*Cambridge Products, Ltd. v. Penn. Nutrients, Inc.*,
  962 F.2d 1048 (Fed. Cir. 1992)...........................................................................3

*Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*,
  711 F.3d 1341 (Fed. Cir. 2013)....................................................................11, 14

*Chrimar Sys., Inc. v. Foundry Networks, Inc.*,
  06-13936, 2013 WL 5526332 (E.D. Mich. Oct. 8, 2013)..................................7, 11

*CNH Am. LLC v. Kinze Mfg., Inc.*,
  809 F. Supp. 2d 280 (D. Del. 2011).....................................................................2

*Digitech Image Techs., LLC v. Newegg, Inc.*,
  No. 8:12-CV-01688-ODW, 2013 WL 5604283 (C.D. Cal. Oct. 11, 2013).....................11, 14

*Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*,
  524 F.3d 1254 (Fed. Cir. 2008)..........................................................................11

*EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*,
  No. 13-cv-910, ECF No. 38, at 2 (D. Del. Nov. 17, 2011).........................................5

*EON Corp. IP Holdings, LLC v. LG Elecs. Mobilecomm USA, Inc.*,
  No. 6:12-cv-00941-LED-JDL, ECF No. 82 (E.D. Tex. Mar. 18, 2014)...............................14

*Eon-Net LP v. Flagstar Bancorp*,
  653 F.3d 1314 (Fed. Cir. 2011)..................................................................3, 5, 10

*Forest Labs., Inc. v. Abbott Labs.*,
  339 F.3d 1324 (Fed. Cir. 2003)...........................................................................2

*Samsung Elecs. Co., Ltd. v. Rambus, Inc.*,
  523 F.3d 1374 (Fed. Cir. 2008)...........................................................................6

*Globetrotter Software, Inc. v. Elan Comp. Group, Inc.*,
  362 F.3d 1367 (Fed. Cir. 2004)....................................................................8, 10

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
  687 F.3d 1300 (Fed. Cir. 2012)..................................................................2, 8, 11

*Hycor Corp. v. Schlueter Co.*,
  740 F.2d 1529 (Fed. Cir. 1984)...........................................................................3

*In re Katz*,
  639 F.3d 1303 (Fed. Cir. 2011)..................................................................................12

*Kilopass Tech., Inc. v. Sidense Corp.*,
  738 F.3d 1302 (Fed. Cir. 2013).............................................................................3, 9

*MarcTec, LLC v. Johnson & Johnson*,
  664 F.3d 907 (Fed. Cir. 2012)...........................................................................1–5, 14

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988)...................................................................................3

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
  635 F.3d 539 (Fed. Cir. 2011).............................................................................3, 5

*Rambus Inc. v. Infineon Techs. Ag*,
  318 F.3d 1081 (Fed. Cir. 2003)...........................................................................3, 5

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
  CIV.A. 07-753-LPS, 2011 WL 810003 (D. Del. Mar. 3, 2011) ...........................16

*Serio-US Ind. v. Plastic Recovery Techs. Corp.*,
  459 F.3d 1311 (Fed. Cir. 2006)........................................................................1, 2, 3

*Site Update Solutions, LLC v. Accor N. Am., Inc.*,
  No. 11-3306 PSG, 2013 WL 2238626 (N.D. Cal. May 21, 2013) .......................10

*Warner-Lambert Co. v. Apotex Corp.*,
  No. 98 C 4293, 2003 WL 22887861 (N.D. Ill. Dec. 4, 2003) ..............................14

**FEDERAL STATUTES**

35 U.S.C. § 101 ..............................................................................................................12

35 U.S.C. § 282 ..............................................................................................................11

35 U.S.C. § 285................................................................................1, 2, 7, 12, 16, 17

**RULES**

Fed. R. Civ. P. 11 ...........................................................................................................1, 3

Fed. R. Civ. P. 68 ...............................................................................................................6

## I.       INTRODUCTION

The Court should deny FLO TV's motion for attorney fees because FLO TV has failed to demonstrate that this case is "exceptional" pursuant to 35 U.S.C. § 285.   Under controlling Federal Circuit law, FLO TV must demonstrate by clear and convincing evidence either that EON's attorneys engaged in litigation misconduct or that EON pursued a case that was objectively baseless and in subjective bad faith.   FLO TV fails to demonstrate either requirement, and, therefore, FLO's motion should be denied.

## II.      CONTROLLING FEDERAL CIRCUIT LAW RESTRICTS AN ATTORNEY FEES AWARD TO "EXCEPTIONAL" CASES AND HEAVILY FAVORS PATENTEES.

Under 35 U.S.C. § 285, the Court "has discretion to award reasonable attorney fees to a prevailing party in a patent case if the court determines that the case is 'exceptional.'" *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 915 (Fed. Cir. 2012).   The determination is governed by two steps.   "First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional." *Id.* (citing *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003)).   If, and only if, it makes that determination, then it must "determine whether an award of attorney fees is justified." *Id.* at 916.

Under the "exceptional" standard, a party seeking attorney fees must demonstrate "some material, inappropriate conduct related to the matter in litigation, such as . . . fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Ind. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321–22 (Fed. Cir. 2006).   As the Federal Circuit has noted, an award of attorney fees under § 285 is not intended to be an "ordinary thing in patent cases" and should be limited to circumstances in which it is necessary to prevent "a gross

1

injustice" or bad faith litigation. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003); *see also CNH Am. LLC v. Kinze Mfg., Inc.*, 809 F. Supp. 2d 280, 295 (D. Del. 2011).

The bar to demonstrate that a patentee should pay attorney fees is especially high. "Absent misconduct in the litigation or in securing the patent, a trial court *may only* sanction the patentee if both the litigation is brought in subjective bad faith and the litigation is objectively baseless." *Serio-US Indus.*, 459 F.3d at 1322 (emphasis added); *see also Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1308 (Fed. Cir. 2012) ("It is established law under section 285 that absent misconduct in the course of the litigation or in securing the patent, sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless."); *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005) (same). "Where . . . the alleged infringer prevails in the underlying action, factors relevant to determining whether a case is exceptional include 'the closeness of the question, pre-filing investigation and discussions with the defendant, and litigation behavior.'" *Marctec, LLC*, 664 F.3d at 916; *see also Serio-US Indus.*, 459 F.3d at 1322 (noting that "the closeness of the question" and "litigation behavior" may be considered). As the Federal Circuit openly and repeatedly admits, the law specifically favors patentees: "There is a presumption that the assertion of infringement of a duly granted patent is made in good faith." *Brooks Furniture*, 393 F.3d at 1382.

## III.   DEFENDANT HAS FAILED TO DEMONSTRATE THAT EON'S ATTORNEYS ENGAGED IN MISCONDUCT.

To begin, FLO TV is only entitled to attorney fees through one of three categories under which a patentee's case may be deemed "exceptional": patent prosecution misconduct, litigation misconduct, and frivolous litigation. *See Highmark*, 687 F.3d at 1308 (noting the three categories); *Serio-US Ind.*, 459 F.3d at 1322 (same). Given that FLO TV is not alleging the '757

2

Patent's inventors and prosecutors engaged in misconduct before the PTO, Defendant is only entitled to attorney fees if it demonstrates by clear and convincing evidence that either (1) EON's attorneys engaged in litigation misconduct, or (2) the litigation was frivolous, that is that "the litigation was brought in subjective bad faith and the litigation is objectively baseless." *See Serio-US Indus.*, 459 F.3d at 1322. Indeed, in *MarcTec*, the very case that Defendant repeatedly relies upon, the Federal Circuit noted that the misconduct and frivolousness grounds were "separate and independent" bases for an attorney fees award. 664 F.3d at 919. Defendant confuses the concepts and muddles the applicable case law.

"Misconduct" is a term of art that connotes unethical and/or illegal behavior by the attorneys during litigation: "Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011). The application of the "misconduct" standard by the Federal Circuit bears out this strict definition of unethical behavior, which notes that a finding of misconduct is possible in cases where attorneys (1) commit fraud; (2) make "multiple, repeated misrepresentations" to the court; (3) "blatantly mislead[] the PTO"; (4) "destroy[] relevant documents prior to the initiation of the lawsuit"; and (5) engage in conduct that would be sanctionable under Fed. R. Civ. P. 11. *See, e.g.*, *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1315 (Fed. Cir. 2013); *MarcTec*, 664 F.3d at 919–20; *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1325 (Fed. Cir. 2011); *Old Reliable*, 635 F.3d at 549; *Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1105–06 (Fed. Cir. 2003); *Cambridge Products, Ltd. v. Penn. Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992); *Mathis v. Spears*, 857 F.2d 749, 752, 755 (Fed. Cir. 1988); *Hycor Corp. v. Schlueter Co.*, 740 F.2d 1529, 1538–39 (Fed. Cir. 1984).

In its briefing regarding litigation misconduct, Defendant asserts that EON's attorneys committed litigation misconduct because EON's attorneys allegedly knew that the maximum damages case against FLO TV was nominal, because those attorneys refused to engage in reasonable settlement negotiations with FLO TV, and because EON's attorneys engaged in various discovery strategies that prolonged the litigation.  (D.I. 912, at 7–9.)  Defendants label this behavior a "textbook" case of litigation misconduct and cite *MarcTec*, 664 F.3d 907, as an analogous case.  But FLO TV fails both legally and factually to approach a persuasive argument.

First, Defendant's attempt to label this a "textbook" case of litigation misconduct is a gross mischaracterization of the law on misconduct.  As EON has set forth above, the litigation-misconduct cases center on unethical, sanctionable behavior like fraud and misrepresentation.  Defendant's best case—*MarcTec*—is a far cry from the instant facts and, in fact, clearly favors EON.   In that case, the Federal Circuit upheld the district court's award of attorney fees for litigation misconduct because MarcTec's attorneys engaged in "numerous" improper litigation tactics:

> MarcTec engaged in litigation misconduct when it: (1) misrepresented both the law of claim construction and the constructions ultimately adopted by the court; and (2) introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto.

*Id.* at 919–20.  Here, Defendant attempts to equate EON's discovery strategy with the expert-witness issue in *MarcTec*, but the analogy fails.  There is no evidence—and Defendant does not assert—that EON's attorneys engaged in any misrepresentation to the Court.  In addition, assuming *arguendo* that Defendant's factual assertions are true, those assertions do not even approach the totality of unethical behavior regarding expert witnesses in *MarcTec*:

> [t]he district court found that MarcTec relied upon inadmissible expert testimony that was "untested and untestable" and did not

4

> meet the scientific reliability standards set forth in *Daubert*. . . .
> Although we agree with MarcTec that exclusion of expert
> testimony under *Daubert* does not automatically trigger a finding
> of litigation misconduct, and in most cases likely would not do so,
> we find that the circumstances of this case were sufficiently
> egregious to support an award of attorney fees.

*Id.* at 920.  The litigation misconduct bar is high, and Defendant does not provide the Court with any law or cases that the behavior it alleges approaches that standard.  Defendant's other cases suffer the same fate.   In *Eon-Net LP*, the Federal Circuit upheld a finding of litigation misconduct where attorneys destroyed documents, intentionally failed to create a document-retention plan, failed to engage in the claim construction in good faith, and "displayed a 'lack of regard for the judicial system.'" 653 F.3d at 1325.[1]   In *Rambus*, the Federal Circuit upheld a finding of litigation misconduct where attorneys destroyed documents, failed to log documents in the privilege log, and sponsored false and misleading testimony.   318 F.3d at 1105–06.  Defendants have utterly no legal support that the alleged behavior of EON's attorneys approaches this type of litigation misconduct.



---

[1] Eon-Net LP is in *no way* affiliated with plaintiff here, EON Corp. IP Holdings, LLC, its parent, EON Corporation (aka TV Answer, Inc.), or any of their current or former owners, managers, officers, directors, or affiliates.  *See* Plaintiff EON Corp. IP Holdings, LLC's Answering Brief In Opposition To Defendants Motion To Dismiss The Complaint, Or In The Alternative, For A More Definite Statement  *EON Corp. IP Holdings, LLC v. AT&T Mobility LLC*,  No. 13-cv-910, ECF No. 38, at 2 & n.2 (D. Del. Nov. 17, 2011).

[2] Further demonstrating FLO's misunderstanding of the law, refusing to engage in settlement does not make a case exceptional.  *Old Reliable*, 635 F.3d at 549–50 ("the refusal to make or accept an offer of settlement is not, in and of itself, sufficient to establish litigation misconduct").  Notwithstanding that fact, EON's counsel attempted to engage FLO TV in settlement discussions.  *See* Ex. A, Decl. T. Reed.



FLO TV also makes much of EON's behavior during discovery, contradictorily accusing EON of doing too much—requesting a large number of documents and responses—while simultaneously doing too little (*e.g.*, depositions were too short, EON's expert's report was not long enough, etc.) (D.I. 912, at 7–8.) Legally, these activities do not constitute litigation misconduct.[6] In addition, FLO TV's account of discovery is not accurate. EON's infringement

---

[3] The evidence FLO TV itself submits in support of its motion treat FLO TV and Qualcomm as one. *See* Ex. 3 to Mot. for Attorney's Fees (demanding dismissal of claims against "FLO TV Incorporated and Qualcomm Incorporated (collectively 'Qualcomm')."

[4] FLO's attorneys also failed to take advantage of several mechanisms that would have reduced their costs, like a Rule 68 offer of judgment. *See, e.g., Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 523 F.3d 1374, 1377 (Fed. Cir. 2008).

[5] ████████████████████████████████████████████████████████████████████████████

[6] Indeed, as Federal Circuit Chief Judge Rader noted in a 2011 speech, in patent cases ".0074% of the documents produced actually made their way onto the trial exhibit list—less than one document in ten thousand." *See* Ex. C, C.J. Randall Rader, *The State of Patent Litigation*, Speech at the 2011 E.D. Tex. Jud. Conf., Sept. 27. 2011, http://memberconnections.com/olc/filelib/LVFC/cpages/9008/Library/The%20State%20of%20Patent%20Litigati on%20w%20Ediscovery%20Model%20Order.pdf. Thus, the use of few discovery documents in patent cases is ordinary—not exceptional. Further, it was FLO TV, not EON, that controlled how many documents it produced, which included numerous irrelevant documents—an attempt to "bury the lead" and send EON combing through the haystack for a needle.

expert repeatedly relies on evidence obtained from FLO TV, including testimony obtained from FLO TV's 30(b)(6) witness, in his Expert Report. *See, e.g.*, Ex. B, Decl. S. Tepera, at Ex. B-1, ███████████████████████████████. Further, the overwhelming majority of the FLO TV production occurred prior to FLO TV's suggested date that dismissal of the suit was required, at a time when even FLO TV concedes the litigation would not have been inappropriate.[7]

Finally, FLO TV notes that EON has been a litigant in several patent suits prior to and concurrent with the present suit but again fails to provide *any* legal support that multiple suits supports a finding of litigation misconduct. Moreover, Qualcomm (FLO TV's parent) itself is a plaintiff in twenty-six cases in the Southern District of California alone. *See* Ex. B, Decl. S. Tepera, at Ex. B-2, Pacer Results for S.D. Cal. FLO TV does not show any reason, and none is apparent, that involvement in multiple patent litigation suits justifies a finding of vexatious litigation. Other courts addressing similar smear campaigns have found that assertion of patent rights in multiple suits does not justify the inference of vexatious litigation, particularly where, as here, the other litigation resulted in licenses. *See, e.g.*, *Chrimar Sys., Inc. v. Foundry Networks, Inc.*, 06-13936, 2013 WL 5526332, at *8–9 (E.D. Mich. Oct. 8, 2013).

In short, Defendant comes nowhere close to meeting the bar for litigation misconduct because FLO TV both fails to demonstrate that this is an "exceptional" case under § 285 and fails to provide the Court with clear and convincing evidence that would demonstrate that this case approaches the controlling standard.

---

[7] 26,000 of the 28,000 pages that FLO TV produced—93%—were produced by November 2011, a year before FLO TV alleges the damages case against it became small enough to render further pursuit of the case "exceptional." *See* Ex. B, Decl. S. Tepera, at Ex. B-3, Corresp. of Nov. 7, 2011 (transmitting documents up to FLOTV0026206); *id.* at Ex. B-4, Corresp. of June 10, 2013 (transmitting documents up to FLOTV0028142).

IV.   **DEFENDANT HAS FAILED TO DEMONSTRATE THAT EON'S CASE WAS PURSUED IN SUBJECTIVE BAD FAITH OR OBJECTIVELY BASELESS.**

In addition, Defendant utterly fails to provide any evidence—leave alone clear and convincing evidence—that (1) "the litigation [was] brought in subjective bad faith"; or that (2) "the litigation is objectively baseless." *See Highmark*, 687 F.3d at 1308.

a.   **FLO TV has failed to provide clear and convincing evidence that EON's case was brought in subjective bad faith.**

To show bad faith in a patentee's actions, a defendant "must offer clear and convincing evidence that [patentee] *had no reasonable basis* to believe that the [accused infringing device] infringed [patentee's] patents." *Globetrotter Software, Inc. v. Elan Comp. Group, Inc.,* 362 F.3d 1367, 1377 (Fed. Cir. 2004). Further, "a claim is brought in subjective bad faith if the objective unreasonableness of the claim 'was either known or so obvious that it should have been known' by the patentee." *Highmark,* 687 F.3d at 1312 (citing *In re Seagate Tech.*, 497 F.3d 1360, 1371 (Fed. Cir. 2007)).   To be clear, "even where infringement allegations are objectively unreasonable, a patentee may have reason to believe that its allegations are supportable so as to negate a finding of bad faith." *Id.* at 1313.   There can be no bad faith where the information is "objectively accurate."   *Globetrotter Software,* 362 F.3d at 1377.

To begin, EON had a good faith basis to believe that the accused devices violated its patent based on its pre-filing due diligence and the settlements it procured from several Defendants in this litigation before the patent was ultimately found invalid.   Ex. A, Decl. T. Reed.   FLO TV provides little evidence—much less clear and convincing evidence—that EON's belief in its infringement theories was unreasonable, and offers no evidence contradicting these indicia of reasonable belief.

8

Instead, FLO TV appears to largely ignore the subjective intent element, relying on the "'primacy of objective evidence over assertions of subjective good faith'" as though to excuse its lack of analysis on the element.  (D.I. 912, at 9 (quoting *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1311 (Fed. Cir. 2013).)[8]  FLO TV's analysis appears to center on EON's alleged litigation tactics, which FLO argues drove up its litigation costs.  But its analysis does not identify a single motion that was useless, a single discovery request that was frivolous, or a single procedure that was improper.  The record itself reflects no activity that could support a finding of subjective bad faith—EON did not engage in excessive motion practice against FLO TV, did not commit impropriety regarding any evidence or witnesses, and stayed well within the ethical and legal bounds of what a patentee may do in asserting claims of infringement. Moreover, FLO TV itself was able to leverage the fact that it is owned by another litigant in this case, Qualcomm, to lessen litigation expenses.  It is curious that FLO TV lambasts the "millions" that it incurred in litigation costs—without any proof of those costs—when the two parties together were able to rely on the same counsel, same subpoenas, same motions, and same witnesses.  *See, e.g.*, Mot. for Pro Hac Vice Admission for Counsel for Qualcomm and FLO TV (D.I. 54); Subpoena for F. Morales on behalf of Qualcomm and FLO TV (D.I. 391); Mot. for S.J. of Invalidity by Qualcomm and FLO TV (D.I. 708).

FLO TV also leans heavily on the argument that the alleged nominal damages that EON could have recovered demonstrate that EON pursued the case in subjective bad faith.  However, the amount of damages is simply not a factor in the legal test for subjective bad faith, which

---

[8] Despite Defendant's attempt to confuse the operative legal test, *Kilopass* still utilizes the two-part test EON quotes above: "'Absent misconduct in the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.'"  738 F.3d at 1308–09 (quoting *Brooks Furniture*, 393 F.3d at 1381).  The passage quoted by Defendant is commentary by the *Kilopass* court on how to weigh evidence of "subjective good faith" in the case that a party has provided demonstrative evidence of subjective bad faith, which Defendant has failed to provide here.

turns on the reasonability of the patentee's belief of *infringement*, not damages.  *See Globetrotter Software*, 362 F.3d at 1377.  FLO TV again points to *Eon-Net LP*, 653 F.3d 1314, as authority to tie the cost of patent litigation with bad faith.  But the court in that case only analyzed the cost of litigation because the underlying *infringement* assertions were without factual basis: in fact, the plaintiff in *Eon-Net* ultimately *stipulated* that the defendant did not infringe.  *Id*. at 1320.  Indeed, the Northern District of California distinguished the case on that fact in *Site Update Solutions, LLC v. Accor N. Am., Inc.*, No. 11-3306 PSG, 2013 WL 2238626 (N.D. Cal. May 21, 2013).  In *Site Update*, the Court found the case was not exceptional because there, unlike in *Eon-Net*, the infringement case was not objectively baseless.  *Id*. at *14.

Further, in *Eon-Net*, the Federal Circuit noted that the case had indicia of extortion as Eon-Net's history had shown the company leveraged the high cost of patent litigation through claim construction to gain a nuisance value settlement before the claim construction occurred.  Because the pattern showed settlement would happen before claim construction, "Eon-Net's baseless infringement allegations remained unexposed."  *Eon-Net*, 653 F.3d at 1326–27.  Those facts are simply disanalogous here.  There has been no finding that Defendant does not infringe the patent or that EON's allegations of infringement lacked factual support; instead, the resolution of the case turned on a complicated area of recently developed case law regarding the construction of computer-implemented claim terms.  It cannot be said that EON subjectively knew its duly issued and presumably valid patent would be found invalid for indefiniteness.

### b.  FLO TV has failed to provide clear and convincing evidence that EON's case was objectively baseless.

Where the first requirement of subjective bad faith is not met, a court need not consider whether the objectively baseless standard is met. *See Brooks Furniture,* 393 F.3d at 1381 ("Since we conclude that the first requirement (subjective bad faith) is not satisfied here, we need not

decide whether the second (objectively baseless) standard was met."). However, if the subjective

bad faith element is met, the defendant must then demonstrate that "the infringement allegations

[are] such that no reasonable litigant could reasonably expect success on the merits" to satisfy

the objective baselessness standard  *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 711 F.3d 1341,

1346 (Fed. Cir. 2013); *see Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH,* 524 F.3d

1254, 1260 (Fed. Cir. 2008) ("To be objectively baseless, the infringement allegations must be

such that no reasonable litigant could reasonably expect success on the merits." (internal

quotation omitted)).

Even where a plaintiff is ultimately unsuccessful in its patent infringement suit, the

question is whether the plaintiff's position was so unreasonable that no reasonable litigant could

believe it would succeed. *Highmark,* 687 F.3d at 1312, 1315 (where there was no showing by

defendant that it would not infringe under an alternative construction of the asserted claim, the

court held that plaintiff's allegations of infringement were not objectively baseless); *Ilor,* 631

F.3d at 1380 (emphasizing that "simply being wrong about claim construction should not subject

a party to sanctions where the construction is not objectively baseless"). In fact, many courts

have noted that the resolution of a case on a determination of invalidity cuts against a finding

that the case was "objectively baseless" because the patentee is entitled to rely on the

presumption of validity of a patent under 35 U.S.C. § 282. *See, e.g.*, *Chrimar Sys., Inc. v.

Foundry Networks, Inc.*, No. 06-13936, 2013 WL 5526332 (E.D. Mich. Oct. 8, 2013) ("[T]he

[asserted] patent was presumptively valid and [plaintiff], as the patent owner, was entitled to rely

on that presumption when bringing suit. That [plaintiff] lost on validity militates against a

finding that the case was exceptional."); *Digitech Image Techs., LLC v. Newegg, Inc.*, No. 8:12-

CV-01688-ODW, 2013 WL 5604283 (C.D. Cal. Oct. 11, 2013) (holding in denying fees under §

11

285, "[t]he [asserted] Patent was issued by the United States Patent and Trademark Office and therefore presumed to be valid and contain patentable subject matter under 35 U.S.C. § 101. [The plaintiff] had no reason to suspect that the [asserted] Patent was invalid.").

As the Court is no doubt aware, validity in this case turned on a novel point of law involving a close legal question which has not yet been fully addressed by the Federal Circuit: whether the *Katz* exception applied to a patent written in functional language where some unexceptional programming may have been required by an entry level programmer.[9]  At the *Markman* and summary judgment hearing, the Court, the plaintiff, and the defendants agreed that the matter in dispute was not a matter of settled law.  The Court recognized that the Federal Circuit had not created a test by which litigants could determine whether "special programming" was required.



---

[9] To be valid, computer-implemented means-plus-function claims generally require the disclosure of an algorithm.  However, *In re Katz*, 639 F.3d 1303 (Fed. Cir. 2011) created an exception:  If a computer-implemented function was performable by a "general purpose computer without special programming," the patent need only disclose a computer as its corresponding structure.  The parties agreed that the patent's functional claims did not disclose an algorithm but disagreed as to whether the functions were performable be a general-purpose computer.



Defendant's counsel conceded that no line had been established regarding the level of programming required before an algorithm must be disclosed.



(*Id*. at 78:6–13 (emphasis added).)

In addition, as the Court is no doubt aware, it charged the parties to aid it in answering this close question, ordering an additional hearing, additional discovery subsequent to that hearing, and additional briefing.  (*See* D.I. 869 at 138:22–141:14, 879, 887, 891, 892, 896, 897.) After this extensive preparation, the Court eventually granted summary judgment, holding that the term "special" in "special programming"  meant commercially unavailable at the time of the

invention. (*See* D.I. 907, at 12.)  But dismissal of EON's case on summary judgment alone does not justify the finding of objective baselessness.  *See MarcTec*, 664 F.3d at 918.  On the contrary, the resolution of this case on a novel issue of invalidity law weighs against a finding of objective baselessness.  *See, e.g.*, *Warner-Lambert Co. v. Apotex Corp.*, No. 98 C 4293, 2003 WL 22887861 (N.D. Ill. Dec. 4, 2003) (refusing to find a case exceptional on the grounds that it was resolved on a novel issue of statutory construction); *Digitech Image Techs., LLC v. Newegg, Inc.*, No. 8:12-CV-01688-ODW, 2013 WL 5604283 (C.D. Cal. Oct. 11, 2013) (holding that the suit was not objectively baseless because the patent was invalidated "under a complex and evolving area of patent law").



FLO TV separately contends that the case was at least objectively baseless after November 2012 because of licenses that allegedly removed the majority of FLO TV-enabled devices from the case.  This argument fails for several reasons.  First, the argument is immaterial

because it fails to reckon with the correct legal determination—whether the *infringement* position was reasonable, not whether the amount of damages was sizeable. Second, FLO TV ignores a colossal problem in its theory—it pursued several counterclaims against EON that would have completely destroyed EON's substantial, and reasonable, economic interest in the patent-in-suit. Specifically, FLO TV counterclaimed against EON for a declaration (1) that EON did not have standing to sue anyone under the '757 Patent; (2) that FLO TV did not infringe; (3) that the '757 Patent was invalid; and (4) that the amendment to the '757 Patent granted intervening rights to otherwise-infringers. (D.I. 262.)[10] The first and third counterclaims would have had the effect of disposing all of EON's claims against all infringers. The fourth counterclaim would have disposed of some, if not all, of the damages owed by all infringers.

Thus, FLO's counterclaims on behalf of all alleged infringers substantially increased the economic stakes of the litigation between EON and FLO TV, meaning that *even if* monetary value were a factor in objective baselessness, EON had every right to defend its ability to assert the patent-in-suit against any and all infringers. If FLO TV had prevailed on its counterclaims, EON would have lost not only its allegedly relatively small recovery from FLO TV, but also substantial damages claims from several defendants across litigations (*e.g.*, *EON Corp. IP Holdings, LLC v. AT&T Mobility*, No. 1:13-cv-00910 in the District of Delaware, *EON Corp. IP Holdings, LLC v. Apple Inc.*, No. 6:12-cv-00943 in the Eastern District of Texas).

Further, the incentive for FLO TV to litigate those counterclaims was high—it served as a second opportunity to invalidate the patent asserted against its parent Qualcomm, and it served to invalidate the patent asserted against AT&T, who had already made an indemnity claim against FLO TV for four years of infringement. *See* Br. in Support of Mot. to Enjoin at 8 (D.I.

---

[10] FLO TV asserted similar theories in a previous answer. (D.I. 109.)

358) ("AT&T tendered an indemnity demand to FLO TV that is based solely on EON's FLO-based '757 Infringement Claims.").

Finally, FLO TV's unsubstantiated claim that the damages against it were allegedly small is not proven by clear and convincing evidence and is simply incorrect.  FLO TV's liability in *this suit* might have been limited to the window described in FLO TV's motion, but that is not the end of the matter.  EON could recover against direct infringers, *e.g.*, AT&T, for the entire six-year period common in patent law.  That infringement included infringement caused by FLO TV's indirect infringement based upon AT&T's network.   Indeed, AT&T made an indemnification claim against FLO TV for that infringement.  Given FLO TV's four-year life from March 2007 to March 2011 (*see* D.I. 358 at 1), EON stood to recover and FLO TV stood to pay for *all* infringement by FLO TV through AT&T.  Accordingly, FLO TV's independent argument that the damages case against it demonstrates that the case was objectively baseless is utterly void of legal or factual support.

## V.       POTENTIAL EFFECTS OF EON'S APPEAL OF THE JUDGMENT.

As the Court is aware, EON has appealed both this case and the AT&T case to the Federal Circuit.  (D.I. 909.)  Courts have noted that they have discretion to defer the decision on an award of attorney fees while the matter is under appeal because the appeal may "result in the removal of the 'prevailing party' designation" required under 35 U.S.C. § 285.  *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, CIV.A. 07-753-LPS, 2011 WL 810003 (D. Del. Mar. 3, 2011).  Accordingly, should the Court find any basis to grant FLO TV's motion, it is appropriate to defer that decision until the appeal is final to ensure that the "prevailing party" designation does not shift.  Obviously, the inverse would not apply to the Court's decision to deny the motion.

16

## VI.    CONCLUSION

There is no evidentiary basis for a finding of exceptional case status under § 285; therefore, FLO TV's Motion for Attorney Fees should be denied.

Dated:  April 7, 2014

FOX ROTHSCHILD LLP

*/s/ Gregory B. Williams*
Gregory B. Williams (#4195)
Email: gwilliams@foxrothschild.com
Citizens Bank Center
919 N. Market Street, Suite 1300
Wilmington, DE 19899-2323
Tel:  (302) 622-4211
Fax:  (302) 656-8920

**ATTORNEY FOR PLAINTIFF**
**EON CORP. IP HOLDING, LLC**

*Of Counsel:*
Daniel Scardino
Steven P. Tepera
Chad Ennis
John L. Hendricks
Matthew Murrell
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX  78701
Tel.: (512) 474-2449
Fax: (512) 474-2622
dscardino@reedscardino.com
stepera@reedscardino.com
cennis@reedscardino.com
jhendricks@reedscardino.com
mmurrell@reedscardino.com

# EXHIBIT A-1

**THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY**

# EXHIBIT B-1

## *(Filed Under Seal)*

# THIS DOCUMENT HAS BEEN REDACTED IN ITS ENTIRETY